Daniel L. Kloberdanz, #012231
**KOZUB KLOBERDANZ**
7537 East McDonald Drive
Scottsdale, Arizona 85250
(480) 624-2700
dkloberdanz@bkl-az.com
*Attorney for Plaintiff Julie Levitch*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

JULIE LEVITCH, a single woman,

                Plaintiff,

vs.

MARICOPA COUNTY, ARIZONA; MARICOPA COUNTY SHERIFF'S OFFICE, A DIVISION OF MARICOPA COUNTY; PAUL PENZONE, IN HIS OFFICIAL CAPACITY AS SHERIFF OF MARICOPA COUNTY, ARIZONA; CITY OF PHOENIX, ARIZONA,

                Defendants.

**COMPLAINT**

Plaintiff Julie Levitch, a single woman, by and through her undersigned counsel, for her complaint against Defendants, and each of them, alleges as follows:

## PARTIES, VENUE AND JURISDICTION

1.    At all times relevant, Plaintiff was and is an unmarried woman and a resident of Maricopa County, Arizona, and a citizen of the United States of America.

2.    All of the events alleged in this Complaint occurred in the City of Phoenix, Arizona, located within Maricopa County, Arizona.

3.     At all times relevant, Defendant City of Phoenix, Arizona (the "City of Phoenix") is a municipality organized under the laws of Arizona. The City of Phoenix is a political subdivision formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes.

4.     At all times relevant, Defendant Maricopa County, Arizona ("Maricopa County") is a county organized under the laws of Arizona.  Maricopa County is a political subdivision formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes.

5.     At all times relevant, Defendant Maricopa County Sheriff Paul Penzone ("Penzone") was and is the Sheriff for Maricopa County, also known as the Maricopa County Sheriff's Office (the "MCSO"), which is a department or agency of Maricopa County.  The marital status of Sheriff Penzone is not known to Plaintiff. Therefore, Plaintiff alleges upon information and belief, Defendant Penzone and Defendant Jane Doe Penzone are, and were at all times relevant, a married couple acting for the behalf of their marital community.  Plaintiff brings this action against Penzone in his official capacities as the Sheriff of Maricopa County.

6.     Maricopa County is liable for the practices and policies of the MCSO and Sheriff Penzone, who upon information and belief, are the final decision makers for the law enforcement operations in Maricopa County, including the process and procedures alleged in this Complaint.

7.     Upon information and belief, all individual Defendants acted under color of law during the events described in this Complaint.  Upon information and belief, the City of Phoenix acted in concert with Maricopa County with respect to publishing booking photographs and other personal information on the official MCSO website, for certain persons who are arrested by the Phoenix Police Department and booked in the Maricopa County jail system.

8.     Specifically, Plaintiff alleges, upon information and belief, that Maricopa County and the City of Phoenix acted in concert and are jointly and severally liable for the acts of the County as set forth in this Complaint, including but not limited to the County's publishing of the mugshot and other personal information of Levitch, all done without any due process of law and in violation of her constitutional rights.

9.     This Court has jurisdiction over the subject matter of this Complaint under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and §1331 (federal question), §1343 (civil rights) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 and otherwise, in that Defendant City of Phoenix and Defendant Maricopa County are political subdivisions that are located in this jurisdiction, and the acts giving rise to this lawsuit occurred within the District of Arizona.

11.     Levitch brings this action against Maricopa County and the City of Phoenix, under various state and federal claims including, but not limited to, constitutional violations including those based on 42 U.S.C. §1983 *et seq*. and other due process rights and claims under federal and Arizona law.  These claims include lack of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), and slander.  Plaintiff also brings this action under §1983, which provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.  Plaintiff alleges that (1) she has been deprived of a right secured by the Constitution and the laws of the United States, and (2) the deprivation occurred under color of state law.

### NOTICE OF CLAIM

12.     Levitch has timely complied with the Notice of Claim provisions of A.R.S. §12-821.01, by serving a Notice of Claim upon both (1) Maricopa County including Sheriff Paul Penzone and the MCSO (collectively, the "County" or "Maricopa County"), and (2) the City of Phoenix.

13.     True and correct copies of Levitch' Notices of Claim (each, a "Notice of Claim") are attached to this Complaint as Exhibit "1" and Exhibit "2" respectively.  The factual and legal allegations contained in the attached Notices of Claim are hereby incorporated by reference.

14.     Each Notice of Claim was submitted on behalf of Levitch in relation to the actions described in the attached Notices by (1) the City of Phoenix, including but not limited to the Phoenix Police Department (collectively the "City" or the "City of Phoenix") and (2) Maricopa County, including but not limited to the MCSO and the Maricopa County Sheriff who operates the jail system including the booking of certain persons arrested by the City of Phoenix.

15.     Each Notice of Claim was submitted in relation to the violation of Levitch's civil rights and other federal and state causes of action against both the City and the County, as described in such Notices, which are incorporated herein by reference.

## FACTUAL BACKGROUND

16.     On the evening of August 22, 2020, Levitch was wrongfully arrested by the Phoenix Police Department and wrongfully charged for criminal damage for the already existing, broken window at the residence of her boyfriend, Daniel Kloberdanz, located in Phoenix, Arizona.  Specifically, Levitch was charged with "Criminal Damage – Defacing Property," a misdemeanor.  Levitch's criminal case number is #556170.

17.     Ultimately, Levitch's case was dismissed by the Phoenix Municipal Court, on November 19, 2020. Upon information and belief, the City of Phoenix agreed to dismiss the charges because they understood the charges had no merit.

-5-

Again, the factual allegations set forth in the attached Notices of Claim are hereby incorporated by reference.

18. Levitch was never read her Miranda rights by the City of Phoenix, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution. This violation is evidenced by the contents of the Phoenix Police Department police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix Police Department.

19. Levitch was unconscious, suffering from a heart arrhythmia, when the Phoenix Police were called to the scene by a neighbor who was not witness to any criminal activity. Rather than obtaining proper medical treatment for Levitch, which she desperately needed at that time, the City and/or County transported her to the Maricopa County 4th Avenue Jail, where she remained in custody under inhumane conditions and without proper medical care for over 16 hours. Levitch was also unnecessarily exposed to COVID because many of the personnel for both the City and the County that came into contact with Levitch were not wearing masks or otherwise following the then in effect rules and protocol of the City and the County, including during the time Levitch was being booked for her mugshot photograph.

20.     At the 4th Avenue Jail, Levitch, wearing only a thin pair of pajamas, was held in a solitary cell and not given a change of clothing or a blanket to cover herself, despite repeated requests. The cell she was held in lacked functioning plumbing, with sewage backing up into the toilet, preventing her access to potable water to drink. Dehydrated and continuing to suffer from an untreated, irregular heart rhythm, she again lost consciousness, falling to the floor, before personnel transported her in a wheelchair to the jail's medical center. There, she was forced to take a beta blocker medication that her cardiologist had specifically told her not to take due to her low blood pressure.

21.     While being processed in jail, Levitch was cavity searched by a staff member while another detainee stood nearby. This event occurred immediately before she was placed into an isolation cell.   Levitch was not told beforehand that she was going to be cavity searched, nor was she given an explanation as to why such a search was performed on her. In addition, while Levitch was being processed, the fingerprinting technician (whose name is not known to Levitch) jokingly touted to another staff member that Levitch was "his type" in clear earshot of Levitch while he was taking her fingerprints.

22.     Thus, Levitch is also a victim of sexual harassment and assault, in violation of state law and her constitutional rights.

23.     Levitch' mugshot (which included her full name and birthdate) was posted on the official Maricopa County Sheriff website either while she was in custody or within hours of her release.  The posting wrongfully implies to the public that Levitch is guilty of a crime.  The MCSO website does not even contain a disclaimer that the persons shown on the site are innocent until proven guilty.

24.     As of the date of the filing of this lawsuit, if one conducts an online search of the name "Julie Levitch," her mugshot appears near the top of the search results.  The damage to Levitch's reputation in the business community, as well as in her personal life, has been severely and permanently damaged as a result of the wrongful conduct of the City and the County.

25.     Upon information and belief, the County and the City were and continue to be aware that the online publishing of one's mugshot, regardless of a person's guilt or innocence, will result in permanent reputation damage, as well as exposing such person to blackmail and extortion by unscrupulous reputation management companies.

26.     As Levitch was of no risk to the community, there was no justifiable reason for the County to publish her mugshot photo online, including her name and birthdate.

# LEGAL BASIS FOR CLAIMS

## COUNT ONE
## (42 U.S.C. § 1983 - PEACE OFFICER LIABILITY)

27.    The Civil Rights Act, codified at 42 U.S.C. § 1983, provides as follows:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .*

28.    Levitch alleges that Defendants, jointly and severally, deprived Levitch of her constitutional rights, including those rights, privileges, and immunities secured by the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.    Specifically, the wrongful conduct of Defendants constitutes violations of Levitch's rights under the United States Constitution, including but not limited to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, in that Plaintiff was deprived of the privileges and immunities guaranteed to all citizens of the United States, was subjected to an illegal detention, was prosecuted without proper cause, and her rights were violated by the City and the County with an unconstitutional motive and malice, and without equal protection or due process.

29.     Levitch has claims against both the City and County under state and federal laws including but not limited to constitutional violations, including but not limited to claims based on 42 U.S.C. §1983 and other due process rights.

30.     Moreover, Levitch' right to freedom from unreasonable seizure as protect by the Fourth Amendment of the United States Constitution and her right to equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution. These claims also include denial of due process, assault and sexual assault and harassment, lack of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), defamation (slander and libel), false light, invasion of privacy and negligence.

31.     Upon information and belief, the City and the County were either aware or should have known that such a mugshot conveys a message of guilt. See *Karantsalis v. US Dept. of Justice*, 635 F.3d 497 (11th Cir. 2011) ("More than just "vivid symbol[s] of criminal *accusation*," booking photos convey *guilt* to the viewer . . . Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries); *United States v. Irorere*, 69 F. App'x 231, 235 (6th Cir. 2003) ("[T]he Sixth Circuit has condemned the practice of showing 'mug shot' evidence to a jury 'as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of

criminality.'" (quoting *Eberhardt v. Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979); see *United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988).

32.     The mugshot and corresponding information were picked up by many unscrupulous websites that posted her photograph, name, and date of birth on the internet.

33.     The County's posting of Levitch's mugshot was done by the County (with the acquiescence of the City) without any due process whatsoever. Upon information and belief, the posting of the mugshot did not advance any legitimate state interest but was motivated by the desire of the County and City law enforcement to promote themselves at the expense of the rights of citizens such as Levitch.

34.     Upon information and belief, both the City and the County are jointly responsible for the posting of this mugshot which appeared on the official MCSO website.  Upon information and belief, the County publishes the mugshots at the expense of those persons arrested, for the sole purpose to promote its organization and to punish those persons who are arrested without the necessity of proving probable cause for the arrest and without the necessity of allowing the defendant and opportunity to prove his or her innocence.

35.     To this day, Levitch continues to suffer from a damaged reputation for the mugshot.  She also had to spend thousands of dollars on legal fees to defend herself from the frivolously filed charges.

36.     As a direct result of the wrongful acts of Maricopa County, acting in concert with the City of Phoenix, Levitch's constitutional rights have been violated and she has and continues to suffer personal injuries, including but not limited to her rights of due process and cruel and unusual punishment.  She continues to suffer from the City and the County's wrongful conduct, including pain and suffering, loss of earning capacity and damage to her reputation, and emotional distress.

37.     Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution.  This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix Police Department.

38.     Plaintiff brings a claim against Sheriff Paul Penzone, individually as well as in his official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages. At all material times, Sheriff Penzone was acting in the course and scope of his duties as the sheriff for MCSO at the time of Levitch's booking.

39. The publishing on the internet of Levitch's mugshot and personal information was unwarranted under the circumstances, and was objectively unreasonable when comparing or balancing the interests of the State.

40. Therefore, by using subjectively and objectively unreasonable methods while acting under color of state law, the City and the County (including the MCSO Sheriff Penzone) violated Plaintiff' rights under the Fourth, Eighth, Fifth and Fourteenth Amendments to the United States Constitution and caused her wrongful injury.

41. In addition, the City of Phoenix and the County of Maricopa are also liable under 42 U.S.C. § 1983 for failing to supervise and train its officers. Upon information and belief, the MCSO and the County had a general policy, pattern and/or practice of not disciplining officers for their conduct, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations. The failure of the MCSO and the County to supervise and train its police officers, and their willful blindness towards the constitutional violations of its employees, constitute gross negligence and/or deliberate and conscious indifference to people's rights, including the right to be free from unreasonable force and seizure.

42. Additionally, counties and cities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure,

practice, or custom of the city or county. Even if the County or City's practices of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy.

43.     Consequently, the County and the City are liable for harm caused to others, such as Plaintiff, as a result of its policies, practices customs and procedures.

44.     Upon information and belief, all Defendants were acting pursuant to an official County and City policy, practice, custom and procedure authorizing the publishing of Plaintiff's mugshot and personal information on the internet without any due process of law.

45.     As a result, punitive damages in an amount to be determined by a jury should be awarded against the City and the County to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT TWO
## (VIOLATION OF 42 U.S.C. § 1983—EQUAL PROTECTION)

46.     At all times material, all officers and staff alleged in this Complaint were acting under color of law and in their capacity as officials and agents of the City of Phoenix and Maricopa County.

47.     The wrongful conduct of Defendants constitutes violations of the United States Constitution, including but not limited to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, in that Plaintiff was deprived of the privileges

and immunities guaranteed to all citizens of the United States, was subjected to an illegal arrest and detention, and had her rights violated with an unconstitutional motive and malice, and without equal protection or due process.

48. Defendants engaged in their conduct for an impermissible motive and with malice due to the fact that the County and the City of Phoenix publishing booking photographs on the MCSO website along with personal information of persons who are supposed to be presumed innocent under the law.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff's constitutional rights were violated, and she has suffered harm as a direct result.

50. The wrongful conduct of Defendants was undertaken with malice and/or with improper and unconstitutional motives in an attempt to interfere with conduct protected by the Constitution. Plaintiff was arrested, deprived of medical attention and intimidated, harassed, and coerced by Defendants for improper unconstitutional motives, and was subjected to improper abuse of process and power for improper motives, all without proper or probable cause, and all with malice and/or with improper and unconstitutional motives.

51. In its totality, Defendants' entire course of conduct against Plaintiff, as set forth in this Complaint, was arbitrary, irrational, extreme, outrageous, unjustified by any governmental interest, beyond all possible realms of decency; such conduct

also shocks the conscience of the Court and constitutes a gross abuse of governmental authority.

52.     The acts and omissions of Defendants Maricopa County and the City of Phoenix, acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

53.     As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants Maricopa County and the City of Phoenix to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT THREE**
**(SLANDER, DEFAMATION**
**FALSE LIGHT, AND INVASION OF PRIVACY)**

54.     Shortly after her arrest, Levitch' personal information and mugshot were posted on the official Maricopa County Sheriff website.

55.     Upon information and relief, the City of Phoenix had knowledge that this information would be posted on the official Maricopa County Sheriff website.

56     Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Here, the following elements occurred to establish a defamation cause of action: (1) a false and defamatory statement concerning Levitch; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher, the County of Maricopa, with

the acquiescence of the City of Phoenix; and (4) resulting injury. Restatement (Second) of Torts §558 (1977). The publication is defamatory because it wrongfully implies to the public that Plaintiff is guilty of a crime, and for no valid reason, discloses her full name and birthdate.

57. The communication is defamatory because it tends to harm the reputation of another, so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person.

58. Defendants acted with actual malice or other fault, published a false statement with defamatory words and/or meaning, which caused Plaintiff harm.

59. Because Levitch' mugshot and personal information were posted by the County on its website, this information was readily made available to the public, and was easily copied and posted on many websites.

60. As of the date this Complaint is being filed, if one conducts an internet search for the name "Julie Levitch" various forms of her mugshot photograph and information appear near the top of the search results.

61. The publishing of Plaintiff's mugshot and other information by the County, with the City's cooperation and knowledge, was done without any due process to Levitch, and is defamatory because it conveys a false message that she has committed a crime.

62.     The MCSO website is designed to convey the message to any reasonable reader that the persons shown on the website have been properly arrested and charged, and that such person is either guilty of a crime or likely to be guilty of a crime.

63.     Plaintiff alleges that even if the website had contained a disclaimer which states a presumption of innocence, such a disclaimer is inadequate to satisfy such person's constitutional rights. Plaintiff further alleges that, although she adamantly claims her innocence of the charges by the City of Phoenix, even if she had committed a crime, the posting of her mugshot and personal information on the internet violates her constitutional rights.

64.     The posting of such a mugshot and other personal information is libelous on its face.  The website clearly exposes Levitch to hatred, contempt, ridicule, and public disgrace.

65.     The MCSO website is designed to ridicule and punish people who are supposed to be presumed innocent and who have not even been convicted of a crime, including those persons who have not committed a crime and/or those persons who may have been wrongfully arrested, as in the case of Julie Levitch.

66.     The website is designed to convey a defamatory meaning to those who view the site. The website and mugshots are displayed on the MCSO website in a

manner which would reasonably be understood by those who view it in a way which defamed and ridiculed Levitch.

67. The portion of the MCSO website with the mugshots is available to the general public and is promoted by the MCSO on its main website, with a specific link to "Mugshot Lookup."

68. As a proximate result of the above-described publication, Levitch has suffered loss of her reputation, shame, ridicule and mortification, and she has been damaged in an amount to proven at trial.

69. As a further proximate result of the above-described publication, Levitch alleges she has suffered the following special damages for injury to her reputation and her business, trade, profession, or occupation.

70. The above-described mugshot was published by Maricopa County with malice and/or oppression and in reckless disregard of the rights of Levitch, was designed to humiliate those persons arrested and booked at the MCSO jail and to enhance and further the reputation of Sheriff Penzone at the expense of citizens such as Levitch, without regard to any due process of the persons negatively affected thereby.

71. Upon information and belief, the above-described publication was published by the County with full knowledge and acquiescence of the City of

Phoenix with malice and/or oppression, and thus Levitch seeks an award of punitive damages against Penzone and the other Defendants.

72. As a result, punitive damages in an amount to be determined by a jury should be awarded against Penzone, the County and the City, to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT FOUR
## (VIOLATION OF ARIZONA LAW: INFLICTION OF EMOTIONAL DISTRESS -NEGLIGENT, RECKLESS, AND INTENTIONAL)

73. Defendants' acts and/or omissions described in this Complaint, including but not limited to, such things as their callous disregard of Levitch's constitutional rights, constitutes extreme and outrageous conduct that inflicted emotional distress and physical injury and/or harm upon Plaintiff.

74. Defendants' acts and omissions were extreme, outrageous, and beyond all possible realms of decency and should shock the conscience of the Court.

75. Defendants' acts and omissions were intentionally aimed at causing Plaintiff and other persons who are arrested and booked in Maricopa County emotional distress and physical injury and/or harm and were made in reckless disregard of the near certainty that emotional distress would result from their conduct.

76. Defendants' acts and omissions constitute negligent, reckless, and/or intentional infliction of emotional distress.

77. As a direct and proximate cause of Defendants' intentional, reckless, and/or negligent infliction of emotional distress, Plaintiff has suffered emotional distress, and physical injury and/or harm described above, and damages in an amount to be determined at trial.

78. The acts and omissions of the City of Phoenix and Maricopa County (including the MCSO and Sheriff Paul Penzone, acting in their individual capacity and under color of law, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

79. As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## PLAINTIFF'S DAMAGES

80. As a direct result of the wrongful acts of the City of Phoenix and Maricopa County (including the MCSO and Sheriff Penzone), Levitch has suffered damages to be proven at trial.

81. Levitch has suffered and will continue to suffer damages to be proven in court, including pain and suffering, damage to her reputation, emotional distress and continuing adverse health effects.

## PUNITIVE DAMAGES

82.     For the reasons stated above in this Complaint, punitive damages to be determined by the jury should be awarded against all Defendants, jointly and severally, to punish them for their wrongful acts and to deter them and others from similar acts.

## REQUEST FOR ATTORNEY'S FEES

83.     Plaintiff is entitled to recover her attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and for the bad faith of the Defendants. Plaintiff thereby requests that the Court and/or jury award her attorney's fees and costs and expenses.

## REQUEST FOR A JURY TRIAL

84.     Plaintiff respectfully demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following relief against the Defendants Maricopa County, the Maricopa County Sheriff's Office and Sheriff Paul Penzone, and the City of Phoenix, jointly and severally as follows:

A.     Judgment for compensatory damages and general damages in an amount to be proven at trial;

B.     Judgment special damages to Levitch' reputation in an amount to be proven at trial, but which is alleged herein to be no less than $500,000.00;

C.     Judgment for damages for pain and suffering and mental anguish and emotional distress;

D.     An award of Plaintiff's costs and expenses incurred herein, including attorneys' fees and costs pursuant to 42 U.S.C. §1988.

E.     Judgment for punitive damages in an amount to be determined by the Court; and

F.     Such other and further relief as the Court deems just and proper.

**DATED** this 17th day of August 2021.

**KOZUB KLOBERDAN**Z

By:  /s/ Daniel L. Kloberdanz
     Daniel L. Kloberdanz
     7537 East McDonald Drive
     Scottsdale, Arizona 85250
     *Attorneys for Plaintiff Julie Levitch*

-23-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

# EXHIBIT 1

**Levitch' Notice of Claim Letter
to Maricopa County**

mail or Fax Form to:
City of Phoenix
City Clerk Department
200 W. Washington Street, 15th Floor
Phoenix, AZ 85003
Fax: (602) 495-5847

**City of Phoenix**
Claim Form

This claim form is available in alternative formats upon request.
TTY (602) 534-5500

If more space is needed, please attach additional pages.

If you have any questions, please call the Risk Management Division at: (602) 262-5064

This claim form is provided to assist in presenting a claim against the City of Phoenix that complies with the requirements of Arizona Revised Statutes §12-821.01 which defines the requirements for filing a claim against a public entity in the State of Arizona.

The Statute requires, in part, that a claim against a public entity:

- Be filed with the City Clerk Department within 180 days after the cause of action accrues.
- Contain sufficient facts to permit the public entity to understand the basis upon which liability is claimed.
- Contain a specific dollar amount for which the claim can be settled and the facts supporting the amount.
- In order to file suit against a public entity, a proper notice of claim must first be filed. A lawsuit must be filed within one year after the cause of action accrues.

## FEDERAL REGULATION – BODILY INJURY CLAIMS ONLY

If you are presenting a bodily injury claim, you are required to provide the information requested in this section pursuant to Federal Law -- Section 42, United States Code 1395y(b) (7) & (8). For additional information, go to www.cms.hhs.gov/MandatoryInsRep

Injured party name: _Julie Elisabeth Lewitch_
(Show name exactly as it appears on Social Security records)

Injured party social security #: _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_

Injured party gender: ☐ Male ☒ Female   Injured party date of birth: _04_ _13_ _1969_

Medicare, Medicaid (AHCCCS) or SCHIP Health Ins Claim #: _____
(HICN if applicable)

Is the injured party eligible (or will he/she be eligible within the next 36 months) for Medicare, Medicaid (AHCCCS) or the State Children's Health Insurance Program (SCHIP)?   ☐ Yes   ☒ No

**Please continue to the claim form below. Additional information is required.**

1. CLAIMANT INFORMATION *(complete a separate claim form for each person making a claim)*

Claimant Name: _Julie Elisabeth Lewitch_

Name of claimant's representative (if applicable): _n/A_

Relationship to claimant:   ☐ Parent (claimant is a minor)   ☐ Guardian   ☐ Insurance Company
☐ Attorney   ☐ Other_____

Address: _13015 N 49th Place_   Apt.#: _____
City / State: _Scottsdale, Arizona_   ZIP: _85254_
Date of birth: _04_ _13_ _1969_
Phone #s  Home: _(650)773-3231_  Work: _( )_   Cell: _609 773 3231_

Which is the best daytime phone # to reach you? Afternoons

Email address: jelevitch@yahoo.com Fax #: (   )

## 2. OCCURRENCE OR EVENTS GIVING RISE TO THE CLAIM

Date of occurrence: 8|22|2020    Time: 21:45  ☐ A.M.  ☒ P.M.

Location of occurrence: 4383 E St. John Rd. Phoenix, AZ

Describe the specific facts of the occurrence, event, act or omissions that you believe caused your injury or damage and for each theory of liability, explain why you believe the City of Phoenix is at fault.

See attached addendum

List all witnesses, including name(s), address and phone number.

Daniel Kloberdanz
4383 E St. John Rd.
Phoenix, AZ 85032
602-378-0477

Did this occur in a construction area?    ☐ Yes    ☒ No

If yes, what is the construction company's name? N/A

If this is a motor vehicle accident, please provide the following information:

Your vehicle license plate number: _____

Your vehicle:    Year _____    Make: _____    Model: _____

Name of the City driver: _____

City Vehicle Description: _____    City Department: _____

City Vehicle License Plate #: _____    Bus/Equipment #: _____

Bus Route Name/Number: _____    Direction of Travel _____

Was a police report filed?  ☒ Yes  ☐ No    If yes, what agency responded? Phoenix Police

Police report number: 20200138897 1

INCIDENT # 2011000034566

Page 2 of 4

## 3. AMOUNT OF CLAIM

Dollar amount requested to settle your entire **property damage** claim:    $ _____

Dollar amount requested to settle your entire **personal injury** claim:    $ 1,550,000

Dollar amount requested to settle your entire **other damages** claim:    $ 1,000,000

**Total dollar amount requested to settle your entire claim:**    $ 2,550,000

## 4. EXPLANATION OF DAMAGES

Describe the damage to your property (if any) and the specific facts supporting the amount claimed. *(Please attach all receipts and other documentation related to the damage amount claimed.)*

See attached addendum

Describe your personal injuries (if any) and the specific facts supporting the amount claimed. *(Please attach all receipts, medical bills and other documentation related to the injury amount claimed.)*

See attached addendum

Describe your other damages (if any) and the specific facts supporting the amount claimed. *(Please attach all receipts and other documentation related to the damage amount claimed.)*

See attached addendum

By signing your name below, you certify that the information provided is true and correct to the best of your knowledge and belief.

The city's acceptance and subsequent processing of your claim is not a waiver of the city's right to object to the sufficiency of the claim and should not be considered as an acknowledgment by the City that the claim is valid. To the extent city records need to be preserved, you are directed to A.R.S. 39-121, et seq.

Claimant Name: _____
(Signature of Claimant)

Form Completed By: _____
(Print Name of Person Completing Claim Form for Claimant)

Phone Number: 650-773-3231
(Phone # of Person Completing Claim Form for Claimant)

Address: 13015 N 49th Place Scottsdale, AZ 85254
(Address of Person Completing Claim Form For Claimant)

Relationship to Claimant _____

Date: 02/12/2021

## PLEASE KEEP A COPY OF THE COMPLETED FORM FOR YOUR RECORDS

## INSTRUCTIONS FOR FILING YOUR CLAIM

**Arizona Revised Statute §12-821.01** requires that this form *must* be filed with the City Clerk Department. The City Clerk will accept this form if hand-delivered, mailed or faxed as described below, but it is your sole responsibility to confirm that the City Clerk has actually timely received the form.

1. If you choose to mail or deliver your completed form, please direct it to:

    City of Phoenix
    City Clerk Department
    200 W. Washington Street, 15th Floor
    Phoenix, AZ 85003

2. If you choose to fax your completed form, please fax it to the City Clerk Department at:

    Fax # (602) 495-5847

City of Phoenix (including Phoenix Police Department)
City Clerk Department
200 West Washington Street
15th Floor
Phoenix, AZ 85003

Maricopa County Board of Supervisors
Clerk of the Board of Supervisors
301 W. Jefferson, 10th Floor
Phoenix, Arizona 85003

Sheriff Paul Penzone
Maricopa County Sheriff's Office
Legal Liaison Section, Compliance Division
550 West Jackson
Phoenix AZ 85003

> **Re:** **Julie Levitch's Notice of Claim to the City of Phoenix and Maricopa County pursuant to A.R.S. §12-821.01**

Dear City of Phoenix and Maricopa County (including the Maricopa County Sheriff),

This Notice of Claim is submitted on behalf of Julie Levitch in relation to the actions described below by (1) the City of Phoenix, including but not limited to the Phoenix Police Department and Phoenix Fire Department (the "City") and (2) Maricopa County, including but not limited to the Maricopa County Sheriff who operates the jail (the "County"), relating to the events beginning on the evening of August 22, 2020.

This Notice of Claim is also submitted on behalf of Julie Levitch with respect to the conduct of certain City and County employees (including but not limited to Phoenix police officers and other City and County personnel at the jail) who were acting with the authority and/or at the direction of either the City or the County

This Notice of Claim is submitted in relation to the violation of Levitch's civil rights and other federal and state causes of action against both the City and the County.

## I. Facts sufficient to permit the City and the County to understand the basis on which liability is claimed.

Julie Levitch is a 51-year-old mother of two teenage children. She is a professional technology writer who has never had any engagement with the police prior to the arrest

described below. Levitch has no criminal history, and in her entire life, has never even been charged with a crime.

On the evening of August 22, 2020, Levitch drove to the residence of her boyfriend, Daniel Kloberdanz. Levitch knocked on the front door to obtain Kloberdanz's attention. When he did not respond, Levitch knocked on the window adjacent to the front door. Kloberdanz has a non-functioning doorbell and a metal security door, covering his front door, which hinders the ability to hear someone who is knocking. Unbeknownst to Levitch, the window she knocked on had a hairline crack in it. When she knocked, it broke.

Kloberdanz heard the knocking on the window and came to the door. Levitch immediately notified him of the window, and they proceeded to have a conversation at the front door. After a dialog lasting several minutes, they concluded their conversation. As Levitch walked back to her vehicle, she began experiencing chest pain and an erratic heart rhythm. She then felt faint, losing consciousness and falling on the driveway.

Kloberdanz heard Levitch cough and witnessed her unconscious on the driveway. Immediately, he began attempting to revive her. This is when the Phoenix Police arrived. Apparently, earlier a neighbor had called the police upon hearing the broken glass.

Kloberdanz immediately requested the police officer to call for medical assistance, explaining to the officers that Levitch had a heart condition. At this time, Levitch was unconscious and suffering a serious episode of atrial fibrillation (AFib). Levitch has a well-documented history of an irregular heartbeat. In the police report, Phoenix Police officer Alireza Davarzan states, "I observed Julie to be laying there with her eyes rolling back of her head."

The police officers did call the Phoenix Fire Department. After diagnostic testing, the paramedics confirmed at the scene that Levitch was experiencing tachycardia – an abnormally fast heart rate indicative of AFib. It was highly apparent at the scene that Levitch was suffering from a serious medical condition, as she was just regaining consciousness and complaining of pain in her chest. Instead of allowing her to receive much needed medical treatment, the police arrested her for breaking a window.

Both Levitch and Kloberdanz clearly explained to the police on multiple occasions that she had a serious heart condition and needed immediate medical treatment. The Phoenix Police and the Phoenix Fire Department both ignored the pleas for Julie to obtain emergency medical treatment.

Instead, Levitch was wrongfully arrested and charged for criminal damage for the already existing broken window at the residence of Kloberdanz, located at 4383 East St. John Road in Phoenix, Arizona. Specifically, Levitch was charged with "Criminal Damage – Defacing Property," a misdemeanor. Levitch's criminal case number is #556170.

Ultimately, Levitch's case was dismissed by the Phoenix Municipal Court, on November 19, 2020.

Levitch did not purposefully or recklessly damage the window of Kloberdanz's residence. There was no indication of domestic violence, nor any crime committed.

Kloberdanz did not call the police, did not press charges, and pleaded with the officers to have Levitch taken to the hospital because of her heart condition. These facts are supported by extensive body cam footage acquired by Levitch when her criminal matter was pending.

Handcuffed and barely conscious, Levitch was transported by the Phoenix Police Department to a nearby substation, where she collapsed again as a result of her heart condition. The paramedics were called to the substation where they confirmed that she was experiencing an AFib attack. This fact is confirmed in the video of Levitch at the substation with the paramedic specifically stating that she was suffering from AFib.

Also, Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution. This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix Police Department.

Rather than enabling Levitch to receive proper medical treatment, which she desperately needed at that time, the City and/or County transported her to the Maricopa County 4th Avenue Jail, where she remained in custody under inhumane conditions and without proper medical care for over 16 hours.

At the 4th Avenue Jail, Levitch, wearing only a thin pair of pajamas, was held in a solitary cell and not given a change of clothing or a blanket to cover herself, despite repeated requests. She again lost consciousness, falling to the floor, before personnel transported her in a wheelchair to the jail's medical center. There, she was forced to take a beta blocker medication that her cardiologist had specifically told her not to take due to her low blood pressure.

In several instances, Levitch informed the paramedics and the police that she was not supposed to take this medication. By denying her access to emergency care and the improper treatment provided in the jail, Levitch continued to suffer from an irregular heart rhythm for weeks afterwards, causing her measurable pain and suffering. Levitch is currently under the care of an electrophysiologist who has suggested that surgery may now be required to treat the condition.

While being held at the 4th Avenue Jail, Levitch's cell had a broken toilet that flooded sewage onto the floor. There was no potable water to drink.

While being processed in jail, Levitch was cavity searched by a female staff member while another detainee stood nearby. This event occurred immediately before she was placed into an isolation cell. Levitch was not told beforehand that she was going to be cavity searched, nor was she given an explanation as to why such a search was performed on her. In addition, while Levitch was being processed, the fingerprinting technician (whose name is not known to Levitch) jokingly touted to another staff member that Levitch was "his type" in clear earshot of Levitch while he was taking her fingerprints. Thus, Levitch is also a victim of sexual harassment and assault, in violation of state law and her constitutional rights.

The 4th Avenue Jail is shamefully maintained. Not providing drinking water, proper medical care or even a blanket is cruel and unusual punishment under any circumstance. Levitch was also subjected to hearing a sheriff calling an inmate an extremely derogatory, racist word, among other inhumane treatment.

Levitch was finally released on her own recognizance by a judge at approximately 1 p.m. the next afternoon, 16 hours after her arrest. She was simply escorted out the door of the jail without a phone call, no money, no phone, and no I.D., in 115-degree heat. Dehydrated, exhausted, and struggling with her heart condition, it was all Levitch could do to ask a stranger on the street to borrow a cell phone so she could call for transportation.

Levitch' mugshot was posted on the official Maricopa County Sheriff website within hours of her release, wrongfully implying to the public that Levitch is guilty of a crime. Even today, if one conducts an online search of the name "Julie Levitch," several mugshot websites show up on page one of the search results. The damage to Levitch's reputation in the business community, as well as in her personal life, has been severely and permanently damaged as a result of the wrongful conduct of the City and the County.

The Sheriff and the County and the City are well aware that the online publishing of one's mugshot, regardless of a person's guilt or innocence, will result in permanent reputation damage, as well as blackmail and extortion by unscrupulous reputation management companies. As Julie was of no risk to the community, there was no justifiable reason for the City or the County to publish this photo online, including her name and birthdate.

**Aggravating factors against the City and the County:**

- The actions of the City of Phoenix and Maricopa County in posting mugshots, without any due process and without any finding of guilt on the part of the suspect,

is a violation of Levitch's constitutional rights under the United States Constitution and the Constitution of the State of Arizona.

- Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution. This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix P.D.

- The Phoenix PD certainly knew that Levitch was having a medical emergency as they found her unconscious on the driveway. Kloberdanz requested that they call an ambulance. The correct response would have been to call for an ambulance, rather than arrest Levitch and hold her in jail for 16 hours as she suffered through an AFib attack. By doing so, they put her life at grave risk. Atrial fibrillation is a dangerous condition.

- Levitch's treating electrophysiologist will testify that she was at a very high risk of suffering a stroke or heart attack that evening because she was prevented from obtaining appropriate medical treatment.

- The actions of both the City and County were in violation of the City and County's own policies and laws in place at that time for the health and safety of the public. This is in addition to the lack of logic of arresting individuals for petty misdemeanors during a pandemic. The Police Department and Sheriff's Department were actively promoting the spread of COVID-19 - both within the jail and within the community. Following Levitch's arrest, she had to quarantine for two weeks because she was clearly exposed to others, including numerous officers and other personnel with the City and the County who were not wearing masks, in violation of their own policies. These facts are substantiated by both body cam and other video.

- Levitch's criminal case was dropped because there was no evidence, no witness, no victim, and no crime committed. The Phoenix police knew or should have known these facts at the time of her arrest.

- Levitch is now in possession of the body camera footage and other videos that detail many of the facts described above, including the Phoenix paramedics telling the police that Levitch was suffering from tachycardia and AFib.

## II.        Legal Basis for Levitch's Claims

Levitch has claims against the City of Phoenix and the County of Maricopa under a myriad of legal theories and constitutional violations

Levitch has claims against the City and County under state and federal laws including but not limited to constitutional violations including claims based on 42 U.S.C. §1983 and other due process rights and Levitch' right to freedom from unreasonable seizure as protect by the Fourth Amendment of the United States Constitution and her right to equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution. These claims also include denial of due process, false arrest and false imprisonment, assault and sexual assault, lack of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), defamation (slander and libel), false light, invasion of privacy and negligence.

Levitch also has claims against the City for false arrest, abuse of process and malicious prosecution, in the filing and pursuit of the frivolous criminal charges with no probable cause.

As noted above, Levitch's mugshot of her face and personal information was posted on the official Maricopa County Sheriff Paul Penzone website. That website implies that Levitch was guilty of a crime, and quite shockingly, did not even contain a disclaimer that the persons shown on the website are presumed innocent. The City and the County were either aware or should have known that such a mugshot conveys a message of guilt. See *Karantsalis v. US Dept. of Justice*, 635 F.3d 497 (11th Cir. 2011) ("More than just "vivid symbol[s] of criminal *accusation*," booking photos convey *guilt* to the viewer . . . Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries); *United States v. Irorere*, 69 F. App'x 231, 235 (6th Cir. 2003) ("[T]he Sixth Circuit has condemned the practice of showing 'mug shot' evidence to a jury 'as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality.'" (quoting *Eberhardt v.Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979); see *United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988).

The mugshot and corresponding information were picked up by many scrupulous websites that posted her photograph, name and date of birth all over the internet.

The posting of Levitch's mugshot was done without any due process whatsoever and did not advance any legitimate state interest. Upon information and belief, both the City and the County are responsible for the posting of this mugshot although it appears on the official MCSO/Paul Penzone website.

The City and the County should not enjoy qualified immunity for its inhumane treatment of Levitch and for the other violations explained above.

In *Taylor v. Riojas* (2020), the United States Supreme Court issued a qualified immunity decision in which the Court held the government's actions there violated "clearly established law." The Fifth Circuit had upheld a grant of immunity to prison officials who subjected the plaintiff, Trent Taylor, to inhumane prison conditions. Taylor alleges that he was kept for several days in a cell that was covered with feces, preventing him from drinking. He was then moved to a second cell, which was kept at cold temperatures, and where a clogged drain on the floor caused raw sewage to flood the cell. The prison officials were well aware of these conditions. Notwithstanding such inhumane treatment, the Fifth Circuit granted immunity to these officials, because while "the law was clear that prisoners couldn't be housed in cells teeming with human waste for months on end," it had not previously held that confinement in human waste for six days violated the Constitution.

The Supreme Court reversed the Fifth Circuit and reconsidered the doctrine of qualified immunity entirely. While the Court did not agree to take up this fundamental underlying question, it *did* summarily reverse the Fifth Circuit's decision and remanded the case. In its per curiam opinion, the Court recognized that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." In other words, because this constitutional violation was so egregious and obvious, it was unnecessary for Taylor to identify a prior case with functionally identical facts to demonstrate that the defendants violated his clearly established rights.

Based on the principles of vicarious liability, respondeat superior, and municipal liability, the entities and yet to be identified individuals involved in the events noted in this Notice of Claim are liable for the conduct of their employees and their agents. Additional liability is created by the entities and individuals due to their failure to adequately train and supervise their officers and agents.

## III.  Levitch's Damages for Claims and Settlement Amount.

To this day, Levitch continues to struggle with heart issues, sleep disturbances and post-traumatic stress due to the arrest and her treatment including the events occurring at the substation and the 4th Avenue Jail. She continues to suffer from a damaged reputation for the mugshot. She also had to spend thousands of dollars on legal fees to defend herself from the frivolously filed charges.

As a direct result of the wrongful acts of the Maricopa County Sheriff and the other responsible parties identified above, Levitch's constitutional rights have been violated and

she suffered severe personal injuries, including but not limited to her rights of due process and cruel and unusual punishment. She continues to suffer from symptoms resulting from the City and the County's wrongful conduct, including pain and suffering, loss of earning capacity, damage to her reputation, emotional distress and continuing adverse health effects.

Pursuant to A.R.S. §12-821.01, Levitch will settle her claims with the City and the County for the following amounts. Levitch will accept these amounts as settlement from either the City or the County:

| | |
|---|---|
| Lost earnings/capacity and damage to reputation........................ | $500,000 |
| Physical injury and pain and suffering ..................................... | $1,000,000 |
| Punitive damages ................................................................. | $1,000,000 |
| Estimated Future Medical Expenses ............................... | $50,000 |

The actions of the City and the County here are so egregious that a jury could award a much greater amount if this matter were taken to trial. The majority of Levitch's claims are collaborated with body cam and other videos from the City and County.

If there are any questions about additional information regarding the events or facts underlying this claim, or if there is any need for clarification as to either the facts underlying the claim or the facts supporting the amounts sought, it is expected that such inquiries will be directed within sixty days of your receipt of this letter to the undersigned. Otherwise, all claims will be deemed valid.

This letter is submitted to comply with the Notice of Claim provisions of A.R.S. §12-821.01. Nothing in this letter shall be intended as a limitation to the damages to which Levitch may be entitled or seek recovery, or if additional damages accrue after the date of this letter.

This letter is also subject to Rule 408 of the Arizona Rules of Evidence, and Rule 408 of the Federal Rules of Civil Procedure, and therefore, shall not be admissible in a court of law.

Sincerely,

Julie Levitch, Claimant

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

**EXHIBIT 2**

**Levitch' Notice of Claim Letter
to the City of Phoenix**



## NOTICE OF CLAIM

| Date of Loss | Time of Loss | Location of Loss |
|---|---|---|
| 8/23/20 | 12:00 ☒ AM ☐ PM | 201 S. 4th Ave, Phoenix, AZ 85003 |

**Person or Entity Against Whom the Claim is Asserted**

Maricopa County Sheriffs Office

| Claimant Last Name | First Name | Date of Birth | Social Security # | If Minor, Give Parent/Guardian Name |
|---|---|---|---|---|
| ~~Grimmius~~ Levitch | Julie | 04/13/69 | 570·21·2199 | |

| Address | | City | State | Zip Code | Telephone |
|---|---|---|---|---|---|
| 13015 N. 49th Place | | Scottsdale | AZ | 85254 | (650)773-3231 |

**Description of Occurrence**

See addendum

**Describe Damage to Property**

See addendum

**If Person(s) Injured, List the following information on all injured parties**

| Name | Address | Description of Injury | Date of Birth | Telephone |
|---|---|---|---|---|
| Julie Levitch | 13015 N. 49th Place Scottsdale, AZ 85254 | See addendum | 04/13/69 | (650)773-3231 |
| | | | | ( ) - |

| Responding Police Agency: | | Police Report #: | |
|---|---|---|---|

**Claimant Vehicle Information**

| Make | Model | Year | License Plate # |
|---|---|---|---|
| | | | |

**County Vehicle Information**

| Unit Number | Department | County Driver | License Plate # |
|---|---|---|---|
| | | | |

**If Witnesses are available, provide the following information**

| Name | Address | Telephone |
|---|---|---|
| See addendum | | ( ) - |
| | | ( ) - |

Specific amount for which your claim can be settled: $ 2,550,000

Claimant Signature: _Julie Levitch_    Date: 02/15/21

If you have questions about this form or your claim it is your responsibility to seek legal advice on your own and at your expense. Please do not call or otherwise contact any employee of Maricopa County or any employee of its officers, boards or districts, to seek assistance with filing a notice of claim or seek any other assistance with respect to your claim. No officer or employee of Maricopa County is authorized to provide legal advice or assistance with the preparation or filing of your claim. If you rely on any information furnished directly or indirectly by any officer or employee of Maricopa County, you proceed at your own risk.

If your claim involves a road condition, complete the Road Condition Supplement and mail it with this form.

Notice of Claim rev. 11/20/2014

City of Phoenix (including Phoenix Police Department)
City Clerk Department
200 West Washington Street
15th Floor
Phoenix, AZ 85003

Maricopa County Board of Supervisors
Clerk of the Board of Supervisors
301 W. Jefferson, 10th Floor
Phoenix, Arizona 85003

Sheriff Paul Penzone
Maricopa County Sheriff's Office
Legal Liaison Section, Compliance Division
550 West Jackson
Phoenix AZ 85003

> **Re:** **Julie Levitch's Notice of Claim to the City of Phoenix and Maricopa County pursuant to A.R.S. §12-821.01**

Dear City of Phoenix and Maricopa County (including the Maricopa County Sheriff),

This Notice of Claim is submitted on behalf of Julie Levitch in relation to the actions described below by (1) the City of Phoenix, including but not limited to the Phoenix Police Department and Phoenix Fire Department (the "City") and (2) Maricopa County, including but not limited to the Maricopa County Sheriff who operates the jail (the "County"), relating to the events beginning on the evening of August 22, 2020.

This Notice of Claim is also submitted on behalf of Julie Levitch with respect to the conduct of certain City and County employees (including but not limited to Phoenix police officers and other City and County personnel at the jail) who were acting with the authority and/or at the direction of either the City or the County

This Notice of Claim is submitted in relation to the violation of Levitch's civil rights and other federal and state causes of action against both the City and the County.

**I.     Facts sufficient to permit the City and the County to understand the basis on which liability is claimed.**

Julie Levitch is a 51-year-old mother of two teenage children. She is a professional technology writer who has never had any engagement with the police prior to the arrest

described below. Levitch has no criminal history, and in her entire life, has never even been charged with a crime.

On the evening of August 22, 2020, Levitch drove to the residence of her boyfriend, Daniel Kloberdanz. Levitch knocked on the front door to obtain Kloberdanz's attention. When he did not respond, Levitch knocked on the window adjacent to the front door. Kloberdanz has a non-functioning doorbell and a metal security door, covering his front door, which hinders the ability to hear someone who is knocking. Unbeknownst to Levitch, the window she knocked on had a hairline crack in it. When she knocked, it broke.

Kloberdanz heard the knocking on the window and came to the door. Levitch immediately notified him of the window, and they proceeded to have a conversation at the front door. After a dialog lasting several minutes, they concluded their conversation. As Levitch walked back to her vehicle, she began experiencing chest pain and an erratic heart rhythm. She then felt faint, losing consciousness and falling on the driveway.

Kloberdanz heard Levitch cough and witnessed her unconscious on the driveway. Immediately, he began attempting to revive her. This is when the Phoenix Police arrived. Apparently, earlier a neighbor had called the police upon hearing the broken glass.

Kloberdanz immediately requested the police officer to call for medical assistance, explaining to the officers that Levitch had a heart condition. At this time, Levitch was unconscious and suffering a serious episode of atrial fibrillation (AFib). Levitch has a well-documented history of an irregular heartbeat. In the police report, Phoenix Police officer Alireza Davarzan states, "I observed Julie to be laying there with her eyes rolling back of her head."

The police officers did call the Phoenix Fire Department. After diagnostic testing, the paramedics confirmed at the scene that Levitch was experiencing tachycardia – an abnormally fast heart rate indicative of AFib. It was highly apparent at the scene that Levitch was suffering from a serious medical condition, as she was just regaining consciousness and complaining of pain in her chest. Instead of allowing her to receive much needed medical treatment, the police arrested her for breaking a window.

Both Levitch and Kloberdanz clearly explained to the police on multiple occasions that she had a serious heart condition and needed immediate medical treatment. The Phoenix Police and the Phoenix Fire Department both ignored the pleas for Julie to obtain emergency medical treatment.

Instead, Levitch was wrongfully arrested and charged for criminal damage for the already existing broken window at the residence of Kloberdanz, located at 4383 East St. John Road in Phoenix, Arizona. Specifically, Levitch was charged with "Criminal Damage – Defacing Property," a misdemeanor. Levitch's criminal case number is #556170.

Ultimately, Levitch's case was dismissed by the Phoenix Municipal Court, on November 19, 2020.

Levitch did not purposefully or recklessly damage the window of Kloberdanz's residence. There was no indication of domestic violence, nor any crime committed.

Kloberdanz did not call the police, did not press charges, and pleaded with the officers to have Levitch taken to the hospital because of her heart condition. These facts are supported by extensive body cam footage acquired by Levitch when her criminal matter was pending.

Handcuffed and barely conscious, Levitch was transported by the Phoenix Police Department to a nearby substation, where she collapsed again as a result of her heart condition. The paramedics were called to the substation where they confirmed that she was experiencing an AFib attack. This fact is confirmed in the video of Levitch at the substation with the paramedic specifically stating that she was suffering from AFib.

Also, Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution. This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix Police Department.

Rather than enabling Levitch to receive proper medical treatment, which she desperately needed at that time, the City and/or County transported her to the Maricopa County 4th Avenue Jail, where she remained in custody under inhumane conditions and without proper medical care for over 16 hours.

At the 4th Avenue Jail, Levitch, wearing only a thin pair of pajamas, was held in a solitary cell and not given a change of clothing or a blanket to cover herself, despite repeated requests. She again lost consciousness, falling to the floor, before personnel transported her in a wheelchair to the jail's medical center. There, she was forced to take a beta blocker medication that her cardiologist had specifically told her not to take due to her low blood pressure.

In several instances, Levitch informed the paramedics and the police that she was not supposed to take this medication. By denying her access to emergency care and the improper treatment provided in the jail, Levitch continued to suffer from an irregular heart rhythm for weeks afterwards, causing her measurable pain and suffering. Levitch is currently under the care of an electrophysiologist who has suggested that surgery may now be required to treat the condition.

3

While being held at the 4th Avenue Jail, Levitch's cell had a broken toilet that flooded sewage onto the floor. There was no potable water to drink.

While being processed in jail, Levitch was cavity searched by a female staff member while another detainee stood nearby. This event occurred immediately before she was placed into an isolation cell. Levitch was not told beforehand that she was going to be cavity searched, nor was she given an explanation as to why such a search was performed on her. In addition, while Levitch was being processed, the fingerprinting technician (whose name is not known to Levitch) jokingly touted to another staff member that Levitch was "his type" in clear earshot of Levitch while he was taking her fingerprints. Thus, Levitch is also a victim of sexual harassment and assault, in violation of state law and her constitutional rights.

The 4th Avenue Jail is shamefully maintained. Not providing drinking water, proper medical care or even a blanket is cruel and unusual punishment under any circumstance. Levitch was also subjected to hearing a sheriff calling an inmate an extremely derogatory, racist word, among other inhumane treatment.

Levitch was finally released on her own recognizance by a judge at approximately 1 p.m. the next afternoon, 16 hours after her arrest. She was simply escorted out the door of the jail without a phone call, no money, no phone, and no I.D., in 115-degree heat. Dehydrated, exhausted, and struggling with her heart condition, it was all Levitch could do to ask a stranger on the street to borrow a cell phone so she could call for transportation.

Levitch' mugshot was posted on the official Maricopa County Sheriff website within hours of her release, wrongfully implying to the public that Levitch is guilty of a crime. Even today, if one conducts an online search of the name "Julie Levitch," several mugshot websites show up on page one of the search results. The damage to Levitch's reputation in the business community, as well as in her personal life, has been severely and permanently damaged as a result of the wrongful conduct of the City and the County.

The Sheriff and the County and the City are well aware that the online publishing of one's mugshot, regardless of a person's guilt or innocence, will result in permanent reputation damage, as well as blackmail and extortion by unscrupulous reputation management companies. As Julie was of no risk to the community, there was no justifiable reason for the City or the County to publish this photo online, including her name and birthdate.

**Aggravating factors against the City and the County:**

- The actions of the City of Phoenix and Maricopa County in posting mugshots, without any due process and without any finding of guilt on the part of the suspect,

is a violation of Levitch's constitutional rights under the United States Constitution and the Constitution of the State of Arizona.

- Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution. This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix P.D.

- The Phoenix PD certainly knew that Levitch was having a medical emergency as they found her unconscious on the driveway. Kloberdanz requested that they call an ambulance. The correct response would have been to call for an ambulance, rather than arrest Levitch and hold her in jail for 16 hours as she suffered through an AFib attack. By doing so, they put her life at grave risk. Atrial fibrillation is a dangerous condition.

- Levitch's treating electrophysiologist will testify that she was at a very high risk of suffering a stroke or heart attack that evening because she was prevented from obtaining appropriate medical treatment.

- The actions of both the City and County were in violation of the City and County's own policies and laws in place at that time for the health and safety of the public. This is in addition to the lack of logic of arresting individuals for petty misdemeanors during a pandemic. The Police Department and Sheriff's Department were actively promoting the spread of COVID-19 - both within the jail and within the community. Following Levitch's arrest, she had to quarantine for two weeks because she was clearly exposed to others, including numerous officers and other personnel with the City and the County who were not wearing masks, in violation of their own policies. These facts are substantiated by both body cam and other video.

- Levitch's criminal case was dropped because there was no evidence, no witness, no victim, and no crime committed. The Phoenix police knew or should have known these facts at the time of her arrest.

- Levitch is now in possession of the body camera footage and other videos that detail many of the facts described above, including the Phoenix paramedics telling the police that Levitch was suffering from tachycardia and AFib.

## II.        Legal Basis for Levitch's Claims

Levitch has claims against the City of Phoenix and the County of Maricopa under a myriad of legal theories and constitutional violations

Levitch has claims against the City and County under state and federal laws including but not limited to constitutional violations including claims based on 42 U.S.C. §1983 and other due process rights and Levitch' right to freedom from unreasonable seizure as protect by the Fourth Amendment of the United States Constitution and her right to equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution. These claims also include denial of due process, false arrest and false imprisonment, assault and sexual assault, lack of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), defamation (slander and libel), false light, invasion of privacy and negligence.

Levitch also has claims against the City for false arrest, abuse of process and malicious prosecution, in the filing and pursuit of the frivolous criminal charges with no probable cause.

As noted above, Levitch's mugshot of her face and personal information was posted on the official Maricopa County Sheriff Paul Penzone website. That website implies that Levitch was guilty of a crime, and quite shockingly, did not even contain a disclaimer that the persons shown on the website are presumed innocent. The City and the County were either aware or should have known that such a mugshot conveys a message of guilt. See *Karantsalis v. US Dept. of Justice*, 635 F.3d 497 (11th Cir. 2011) ("More than just "vivid symbol[s] of criminal *accusation*," booking photos convey *guilt* to the viewer . . . Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries); *United States v. Irorere*, 69 F. App'x 231, 235 (6th Cir. 2003) ("[T]he Sixth Circuit has condemned the practice of showing 'mug shot' evidence to a jury 'as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality.'" (quoting *Eberhardt v.Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979); see *United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988).

The mugshot and corresponding information were picked up by many unscrupulous websites that posted her photograph, name and date of birth all over the internet.

The posting of Levitch's mugshot was done without any due process whatsoever and did not advance any legitimate state interest. Upon information and belief, both the City and the County are responsible for the posting of this mugshot although it appears on the official MCSO/Paul Penzone website.

The City and the County should not enjoy qualified immunity for its inhumane treatment of Levitch and for the other violations explained above.

In *Taylor v. Riojas* (2020), the United States Supreme Court issued a qualified immunity decision in which the Court held the government's actions there violated "clearly established law." The Fifth Circuit had upheld a grant of immunity to prison officials who subjected the plaintiff, Trent Taylor, to inhumane prison conditions. Taylor alleges that he was kept for several days in a cell that was covered with feces, preventing him from drinking. He was then moved to a second cell, which was kept at cold temperatures, and where a clogged drain on the floor caused raw sewage to flood the cell. The prison officials were well aware of these conditions. Notwithstanding such inhumane treatment, the Fifth Circuit granted immunity to these officials, because while "the law was clear that prisoners couldn't be housed in cells teeming with human waste for months on end," it had not previously held that confinement in human waste for six days violated the Constitution.

The Supreme Court reversed the Fifth Circuit and reconsidered the doctrine of qualified immunity entirely. While the Court did not agree to take up this fundamental underlying question, it *did* summarily reverse the Fifth Circuit's decision and remanded the case. In its per curiam opinion, the Court recognized that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." In other words, because this constitutional violation was so egregious and obvious, it was unnecessary for Taylor to identify a prior case with functionally identical facts to demonstrate that the defendants violated his clearly established rights.

Based on the principles of vicarious liability, respondeat superior, and municipal liability, the entities and yet to be identified individuals involved in the events noted in this Notice of Claim are liable for the conduct of their employees and their agents. Additional liability is created by the entities and individuals due to their failure to adequately train and supervise their officers and agents.

### III. Levitch's Damages for Claims and Settlement Amount.

To this day, Levitch continues to struggle with heart issues, sleep disturbances and post-traumatic stress due to the arrest and her treatment including the events occurring at the substation and the 4th Avenue Jail. She continues to suffer from a damaged reputation for the mugshot. She also had to spend thousands of dollars on legal fees to defend herself from the frivolously filed charges.

As a direct result of the wrongful acts of the Maricopa County Sheriff and the other responsible parties identified above, Levitch's constitutional rights have been violated and

she suffered severe personal injuries, including but not limited to her rights of due process and cruel and unusual punishment. She continues to suffer from symptoms resulting from the City and the County's wrongful conduct, including pain and suffering, loss of earning capacity, damage to her reputation, emotional distress and continuing adverse health effects.

Pursuant to A.R.S. §12-821.01, Levitch will settle her claims with the City and the County for the following amounts. Levitch will accept these amounts as settlement from either the City or the County:

| | |
|---|---|
| Lost earnings/capacity and damage to reputation........................ | $500,000 |
| Physical injury and pain and suffering ..................................... | $1,000,000 |
| Punitive damages ................................................................. | $1,000,000 |
| Estimated Future Medical Expenses ............................... | $50,000 |

The actions of the City and the County here are so egregious that a jury could award a much greater amount if this matter were taken to trial. The majority of Levitch's claims are collaborated with body cam and other videos from the City and County.

If there are any questions about additional information regarding the events or facts underlying this claim, or if there is any need for clarification as to either the facts underlying the claim or the facts supporting the amounts sought, it is expected that such inquiries will be directed within sixty days of your receipt of this letter to the undersigned. Otherwise, all claims will be deemed valid.

This letter is submitted to comply with the Notice of Claim provisions of A.R.S. §12-821.01. Nothing in this letter shall be intended as a limitation to the damages to which Levitch may be entitled or seek recovery, or if additional damages accrue after the date of this letter.

This letter is also subject to Rule 408 of the Arizona Rules of Evidence, and Rule 408 of the Federal Rules of Civil Procedure, and therefore, shall not be admissible in a court of law.

Sincerely,

Julie Levitch, Claimant