Daniel L. Kloberdanz, #012231
**KOZUB KLOBERDANZ**
7537 East McDonald Drive
Scottsdale, Arizona 85250
(480) 624-2700
dkloberdanz@bkl-az.com
*Attorney for Plaintiff Julie Levitch*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JULIE LEVITCH, a single woman,<br><br>                    Plaintiff,<br><br>vs.<br><br>MARICOPA COUNTY, ARIZONA; PAUL PENZONE, SHERIFF OF MARICOPA COUNTY, ARIZONA,<br><br>                    Defendants. | Case 2:21-cv-01418-DLR-JZB<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Julie Levitch, a single woman, by and through her undersigned counsel, for her First Amended Complaint against Defendants Maricopa County and Maricopa County Sheriff Paul Penzone, and each of them, alleges as follows:

## PARTIES, VENUE AND JURISDICTION

1.    At all times relevant, Plaintiff was and is an unmarried woman and a resident of Maricopa County, Arizona, and a citizen of the United States of America.

2.    All of the events alleged in this Complaint occurred in the City of Phoenix, Arizona, located within Maricopa County, Arizona.

3.     At all times relevant, Defendant Maricopa County, Arizona ("Maricopa County") is a county organized under the laws of Arizona.  Maricopa County is a political subdivision formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes.

4.     At all times relevant, Defendant Maricopa County Sheriff Paul Penzone ("Penzone") was and is the Sheriff for Maricopa County, also known as the Maricopa County Sheriff's Office (the "MCSO"), which is, upon information and belief,  a non-jural entity and an agency of Maricopa County.  The marital status of Sheriff Penzone is not known to Plaintiff. Therefore, Plaintiff alleges upon information and belief, Defendant Penzone and Defendant Jane Doe Penzone are, and were at all times relevant, a married couple acting for the behalf of their marital community.  Plaintiff brings this action against Penzone in his official capacities as the Sheriff of Maricopa County.

5.     Maricopa County is liable for the practices and policies of the MCSO and Sheriff Penzone which are the subject of this Compliant.  Upon information and belief, Penzone is the final decision maker for the law enforcement operations in Maricopa County with respect to the process and procedures alleged in this Complaint concerning the internet publishing of booking photos, also known as mugshots.

6.      Upon information and belief, Sheriff Penzone acted under color of law during the events described in this Complaint, including with respect to publishing booking photographs and other personal information on the official MCSO website, for certain persons who are booked in the Maricopa County jail system, including persons such as Levitch who are arrested by the Phoenix Police Department and taken into the county jail system.

7.      Specifically, Plaintiff alleges, upon information and belief, that Maricopa County and Penzone are jointly and severally liable for the acts as set forth in this Complaint, including but not limited to the publishing of the mugshot and other personal information of Levitch, all which was performed without any due process of law and in violation of her constitutional rights.

8.      This Court has jurisdiction over the subject matter of this Complaint under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and §1331 (federal question), §1343 (civil rights) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

9.       Venue is proper in this Court pursuant to 28 U.S.C. §1391 and otherwise, in that Maricopa County is a political subdivision that is located in this jurisdiction, and the acts giving rise to this lawsuit occurred within the District of Arizona.

10.     Levitch brings this action against Maricopa County and Penzone under various state and federal claims including, but not limited to, constitutional violations including those based on 42 U.S.C. §1983 *et seq*. and other due process rights and claims under federal and Arizona law.  These claims include but are not limited to, lack of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), and slander.  Levitch also brings this action under §1983, which provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.  Levitch alleges that: (1) she has been deprived of a right secured by the Constitution and the laws of the United States, and (2) the deprivation occurred under color of state law.

## NOTICE OF CLAIM

11.     Levitch has timely complied with the Notice of Claim provisions of A.R.S. §12-821.01, by serving a Notice of Claim upon both Maricopa County and Maricopa County Sheriff Paul Penzone (Maricopa County and Penzone are collectively referred to as the "County" or "Maricopa County").

12.     A true and correct copy of Levitch' Notice of Claim is attached to this Complaint as Exhibit "1."   The factual allegations contained in the attached Notice of Claim are hereby incorporated by reference.

13.     The Notice of Claim was submitted on behalf of Levitch in relation to the actions described in the attached Notice, including but not limited to the Paul Penzone's actions in operating the jail system, including the booking of certain persons arrested by the City of Phoenix.

14.     The Notice of Claim was submitted in relation to the violation of Levitch's civil rights and other federal and state causes of action against the County and Penzone, as described in such Notice, which is incorporated herein by reference.

## FACTUAL BACKGROUND

15.     On the evening of August 22, 2020, Levitch was wrongfully arrested by the Phoenix Police Department and wrongfully charged for criminal damage for an already existing, broken window at the residence of her boyfriend, Daniel Kloberdanz, located in Phoenix, Arizona.  Specifically, Levitch was charged by the Phoenix Police Department with "Criminal Damage – Defacing Property," a misdemeanor.  Levitch's criminal case number is #556170.

16.     Ultimately, Levitch's case was dismissed by the Phoenix Municipal Court, on or about November 19, 2020. Upon information and belief, the City of Phoenix agreed to dismiss the charges because the City understood the charges against Levitch had no merit.

17.     As additional evidence of any lack of due process with respect to the Sheriff publishing Levitch's mugshot on its website, Levitch was never read her

Miranda rights by the arresting officers for the City of Phoenix, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution.  This violation is evidenced by the contents of the Phoenix Police Department police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix Police Department.  In addition, the County never read Levitch her Miranda rights prior to publishing her mugshot, or at any time afterwards.

18.    Levitch was unconscious, suffering from a heart arrhythmia, when the Phoenix Police were called to the scene by a neighbor who was not witness to any criminal activity, as no criminal activity even occurred.    Rather than obtaining proper medical treatment for Levitch, which she desperately needed at that time, the Phoenix Police Department transported her to the Maricopa County 4th Avenue Jail, where she remained in custody under inhumane conditions and without proper medical care for over 16 hours.

19    Levitch was also unnecessarily exposed to the risk of obtaining COVID because many of the personnel for both the City and the County that came into contact with Levitch were not wearing masks or otherwise following the then in effect rules and protocol of the City and the County in place during the time Levitch was being booked for her mugshot photograph.

20.     At the 4th Avenue Jail, Levitch, wearing only a thin pair of pajamas, was held in a solitary cell and not given a change of clothing or a blanket to cover herself, despite repeated requests. The cell she was held in lacked functioning plumbing, with sewage backing up into the toilet, preventing her access to potable water to drink.  Dehydrated and continuing to suffer from an untreated, irregular heart rhythm, she again lost consciousness, falling to the floor, before personnel transported her in a wheelchair to the jail's medical center. There, she was forced to take a beta blocker medication that her cardiologist had specifically told her not to take due to her low blood pressure.

21.     Levitch' mugshot (which included her full name and birthdate among other information) was posted on the official Maricopa County Sheriff website either while she was in custody or within hours of her release.  Specifically, prior to being released on her own recognizance, the County, through its Sheriff Paul Penzone, who upon information and belief was the final decision-maker for the County's mugshot policy, published Levitch's booking mugshot on the Sheriff's official website, along with over one hundred other individuals who had been arrested on or about that same day.  The photo of Levitch was coupled with personal data, including Levitch's full name, height, weight, and birthdate.

22.     The posting on the website wrongfully implies to the public that Levitch is guilty of a crime.  The MCSO website does not even contain a disclaimer stating

the photos are of individuals who have not been convicted of any crime, nor that such persons are presumed innocent until proven guilty.

23.    The damage to Levitch's reputation in the business community, as well as in her personal life, has been severely and permanently damaged as a result of the wrongful conduct of Penzone and the County in publishing her mugshot without any due process under the law.

24.    As of the date of the filing of this lawsuit, if one conducts an online search of the name "Julie Levitch," her mugshot appears near the top of the search results.

25.    After Levitch's mugshot was posted on the MCSO website, the damage to her reputation expanded exponentially. Within one day of her arrest, numerous online entities scraped the data from the site and republished her mugshot, personal information, and arrest details on a variety of websites indexed by Google and other search engines. The mugshot of Levitch quickly rose to the top of online search results for her name. Soon the daily barrage of spam emails began, flooding Levitch's personal email inbox. with ominous subject lines like "Your Damaging Record," "Reputation Threat Alert," and "Someone Saw Your Criminal Record on Your Profile."

26.    One year later, Levitch continues to be bombarded by ads to purchase reputation management services to clear her name. By posting her mugshot without

any due process, Maricopa County and Sheriff Paul Penzone have damaged her reputation, spawning online harassment and embarrassment in perpetuity - all for a single, dropped misdemeanor charge.

27.     Since the online publishing of her mugshot, Levitch has received hundreds of emails to her personal email account from a variety of reputation management companies that scraped the information from the Penzone and the Maricopa County Sheriff's Office official website.  These emails are designed to frighten the reader and compel such person to take action by paying for reputation management services.  The emails Levitch received after her mugshot was posted include a myriad of alarming subject lines, such as:

- Julie Levitch, 1 criminal Record Found on Your Public Reputation File
- Criminal Record Found on Julie's Public Reputation Profile, Improve your reputation now
- 1+ Criminal record Found on Julie's Public Reputation Profile
- Your Damaging Records
- Negative Record Alert
- Julie Levitch, Your Reputation Score Has Been Viewed by 1257 People
- We Found a Negative Item on Your Reputation Profile
- Your Reputation Score Has Been Negatively Impacted and 1355 People Have Viewed
- Reputation Threat Alert
- Someone Saw Your Criminal Record on Your Profile

28.     Upon information and belief, Penzone and the County were aware that the online publishing of one's mugshot, regardless of a person's guilt or innocence, will result in permanent reputation damage, as well as exposing such person to blackmail and extortion by unscrupulous reputation management companies.

29.     As Levitch was of no risk to the community, there was no justifiable reason for Penzone or the County to publish her mugshot photo online, including her name and birthdate.

30.     Upon information and belief, the mugshot gallery on the website serves the function of promoting law enforcement agencies at the expense of ridiculing and shaming those persons who have yet to be convicted of any crime, including individuals, like Levitch, who ultimately have their cases dismissed.

## LEGAL BASIS FOR CLAIMS

### COUNT ONE
### (42 U.S.C. § 1983 - PEACE OFFICER LIABILITY)

31.     The Civil Rights Act, codified at 42 U.S.C. § 1983, provides as follows:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .*

-10-

32.     Levitch alleges that Defendants Penzone and the County, jointly and severally, deprived Levitch of her constitutional rights, including those rights, privileges, and immunities secured by the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment. Specifically, the wrongful conduct of Defendants constitutes violations of Levitch's rights under the United States Constitution, including but not limited to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, in that Plaintiff was deprived of the privileges and immunities guaranteed to all citizens of the United States, was subjected to an illegal detention, was arrested and booked by the County without proper cause or due process with an unconstitutional motive and malice, and without equal protection or due process.

33.     Levitch has claims against Penzone and the County under state and federal laws including but not limited to constitutional violations, including but not limited to claims based on 42 U.S.C. §1983 and other due process rights.

34.     Moreover, Levitch' right to freedom from unreasonable seizure as protect by the Fourth Amendment of the United States Constitution and her right to equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution.  These claims also include denial of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), defamation (slander and libel), false light, invasion of privacy and negligence.

35.   Upon information and belief, Penzone and the County were either aware or should have known that placing such a mugshot on the internet conveys a wrongful message of guilt.   See *Karantsalis v. US Dept. of Justice*, 635 F.3d 497 (11th Cir. 2011) ("More than just "vivid symbol[s] of criminal *accusation*," booking photos convey *guilt* to the viewer . . . Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries); *United States v. Irorere*, 69 F. App'x 231, 235 (6th Cir. 2003) ("[T]he Sixth Circuit has condemned the practice of showing 'mug shot' evidence to a jury 'as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality.'" (quoting *Eberhardt v. Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979); see *United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988).

36.   The mugshot and corresponding information concerning Levitch were picked up by many unscrupulous websites that re-posted Levitch's photograph, name, and date of birth on the internet, all of which had been placed on the MCSO website without any due process.

37.   Penzone and the County's posting of Levitch's mugshot and personal information were published without any due process whatsoever.

38.   Upon information and belief, the posting of Levitch's mugshot did not advance any legitimate state interest but was motivated by the desire of Sheriff

Penzone and Maricopa County to promote themselves at the expense of the rights of citizens such as Levitch.

39. Upon information and belief, both Penzone and the County are jointly responsible for the posting of this mugshot which appeared on the official MCSO website. Upon information and belief, the County publishes the mugshots at the expense of those persons arrested, for the sole purpose to promote its organization and to punish those persons who are arrested without the necessity of proving probable cause for the arrest and without the necessity of allowing the defendant any opportunity to prove his or her innocence.

40. To this day, Levitch continues to suffer from a damaged reputation for the mugshot information posted on the internet.

41. As a direct result of the wrongful acts of Penzone and Maricopa County, Levitch's constitutional rights have been violated and she has and continues to suffer personal injuries, including but not limited to her rights of due process and cruel and unusual punishment. She continues to suffer from the wrongful conduct of Penzone and the County, including pain and suffering, loss of earning capacity and damage to her reputation, and emotional distress.

42. Plaintiff brings a claim against Sheriff Paul Penzone, individually as well as in his official capacity, pursuant to 42 U.S.C. § 1983 and for punitive

damages. At all material times, Sheriff Penzone was acting in the course and scope of his duties as the Sheriff for Maricopa County at the time of Levitch's booking.

43.     The publishing on the internet of Levitch's mugshot and personal information was unwarranted under the circumstances and was objectively unreasonable when comparing or balancing the interests of the State.

44.     Therefore, by using subjectively and objectively unreasonable methods while acting under color of state law, the Penzone and the County violated Levitch's rights under the Fourth, Eighth, Fifth and Fourteenth Amendments to the United States Constitution and caused her wrongful injury.

45.     In addition, Penzone and the County of Maricopa are also liable under 42 U.S.C. § 1983 for failing to supervise and train the staff and officers of the County who assisted in publishing mugshot information on the official MCSO website.

46.     Upon information and belief, Sheriff Penzone and the County had a general policy, pattern and/or practice of not properly supervising or disciplining officers and staff for their conduct, thereby sanctioning such actions, which amounted to a departmental policy of overlooking constitutional violations. The failure of Penzone and the County to supervise and train its staff, and their willful blindness towards the constitutional violations caused by the mugshots being posted on the Sheriff's website, constitutes gross negligence and/or deliberate and conscious indifference to the rights of persons such as Levitch.

47.   The violations described above include supervising the staff and employees who manage and operate the mugshot website, including but not limited to publishing of mugshots with no due process, and the lack of placing any disclaimer on the mugshot webpage stating that suspects are innocent until proven guilty, or words to that effect.

48.   Counties may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the county.

49.   Plaintiff alleges upon information and belief, Sheriff Penzone is the final policy-maker for Maricopa County with respect to all matters relating to the publishing of mugshots and personal information on the official MSCO website, including but not limited to whether or not such mugshots will be posted on the internet and made available to the general public. Upon information and belief, Penzone and the County were acting pursuant to an official County policy, practice, custom and procedure authorizing the publishing of Plaintiff's mugshot and personal information on the internet without any constitutional protections or any due process of law.

50.   Upon information and belief, even if the County's practices of overlooking constitutional torts was not authorized by an officially adopted policy, the practice is so common and well-settled that it fairly represents the official policy

of Maricopa County, with Sheriff Penzone being the final policy-maker for the County.

51.     Consequently, Penzone and the County are liable for harm caused Levitch as a result of its unconstitutional policies, practices customs and procedures.

52.     As a result, punitive damages in an amount to be determined by a jury should be awarded against Penzone and the County to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT TWO**
**(VIOLATION OF 42 U.S.C. § 1983—EQUAL PROTECTION)**

53.     At all times material, Sheriff Paul Penzone was acting under color of law and in his capacity as an official and agent of Maricopa County, and that Penzone was, upon information and belief, the final policy-maker for the County with respect to the publishing of mugshots on the MSCO website including publishing mugshots of persons who under the law, are supposed to be presumed innocent until proven guilty.

54.     The wrongful conduct of Penzone and the County constitutes violations of the United States Constitution, including but not limited to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, in that Levitch was deprived of the privileges and immunities guaranteed to all citizens of the United States, had her rights violated with an unconstitutional motive and malice by Penzone and the County, and without equal protection or due process.

-16-

55.     Defendants Penzone and the County engaged in wrongful conduct for an impermissible motive and with malice due to the fact that Penzone, acting as the policy-maker for the County, caused to be published booking various photographs on the MCSO website along with personal information of persons who are supposed to be presumed innocent under the law.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff's constitutional rights were violated, and she has suffered harm as a direct result.

57.     The wrongful conduct of Defendants Penzone and the County were undertaken with malice and/or with improper and unconstitutional motives in an attempt to interfere with conduct protected by the Constitution.   Plaintiff was subjected to improper abuse of process and power for improper motives, all without due process.

58.     In its totality, Defendants' entire course of conduct against Plaintiff, as set forth in this Complaint, was arbitrary, irrational, extreme, outrageous, unjustified by any governmental interest, beyond all possible realms of decency; such conduct also shocks the conscience of the Court and constitutes a gross abuse of governmental authority.   In other words, there is no legitimate state interest in publishing mugshots of persons such as Levitch.

-17-

59.     The acts and omissions of Defendants Maricopa County and Penzone, acting in their individual capacity and under color of law, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

60.     As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants Maricopa County and Sheriff Paul Penzone to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

### COUNT THREE
### (SLANDER, DEFAMATION
### FALSE LIGHT, AND INVASION OF PRIVACY)

61.     Shortly after her arrest, Levitch' personal information and mugshot were posted on the official Maricopa County Sheriff website, which is publicly accessible on the internet.

62.     Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Here, the following elements occurred to establish a defamation cause of action: (1) a false and defamatory statement concerning Levitch; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher, the County of Maricopa; and (4) resulting injury.   Restatement (Second) of Torts §558 (1977).

63.     The publication of the mugshot is defamatory in part because it wrongfully implies to the public that Plaintiff is guilty of a crime, and for no valid reason, discloses her photograph, full name and birthdate.

64.     The communication is further defamatory because it tends to harm the reputation of another, so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person.

65.     Defendants Maricopa County and Penzone acted with actual malice or other fault, published a false statement with defamatory words and/or meaning, which caused Levitch harm.

66.     Because Levitch' mugshot and personal information were posted by the Penzone and the County on the official MCSO website, this information was readily made available to the public, and was easily copied and republished on many other websites.

67.     As of the date this Amended Complaint is being filed, if one conducts an internet search for the name "Julie Levitch," various forms of her mugshot photograph and information appear near the top of the search results.

68.     The publishing of Plaintiff's mugshot and other information by the County, was done without any due process to Levitch, and is defamatory because it conveys a false message that she has committed a crime, which she adamantly denies.

-19-

69.    The MCSO website conveys the message to any reasonable reader that the persons shown on the website have been properly arrested and charged, and that such person is either guilty of a crime or likely to be guilty of a crime.

70.    Levitch alleges that even if the website had contained a disclaimer which states a presumption of innocence, such a disclaimer would be inadequate to satisfy such person's constitutional rights.  Levitch further alleges that, although she adamantly claims her innocence of the charges, even if she had committed a crime, the posting of her mugshot and personal information on the internet without due process violates her constitutional rights.

71.    The posting of such a mugshot and other personal information is libelous on its face. The website clearly exposes Levitch to hatred, contempt, ridicule, and public disgrace.

72.    The MCSO website is designed to ridicule and punish people who are supposed to be presumed innocent under the law and who have not been convicted of a crime, including those persons who have not committed a crime and/or those persons who may have been wrongfully arrested, as in the case of Levitch.

73.    The website is designed to convey a defamatory meaning to those who view the site. The website and mugshots are displayed on the MCSO website in a manner which would reasonably be understood by those who view it in a way which defamed and ridiculed Levitch.

74.     The portion of the MCSO website with the mugshots is available to the general public and is promoted by the MCSO on its main website, with a specific link to "Mugshot Lookup."

75.     As a proximate result of the above-described publication, Levitch has suffered loss of her reputation, shame, ridicule and mortification, and she has been damaged in an amount to proven at trial.

76.     As a further proximate result of the above-described publication, Levitch alleges she has suffered special damages for injury to her reputation and her business, trade, profession, or occupation, in amount no less than $500,000.00.

77.     The mugshot of Levitch was published by Maricopa County with malice and/or oppression and in reckless disregard of the rights of Levitch, was designed to humiliate those persons arrested and booked at the MCSO jail and to enhance and further the reputation of Sheriff Penzone and the County at the expense of citizens such as Levitch, without regard to any due process of the persons negatively affected thereby.

78.     Upon information and belief, the above-described publication was published by the County with malice and/or oppression, and thus Levitch is entitled to an award of punitive damages against Penzone and the County, to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT FOUR**
**(VIOLATION OF ARIZONA LAW: INFLICTION OF EMOTIONAL**
**DISTRESS - NEGLIGENT, RECKLESS, AND INTENTIONAL)**

79.     The acts and/or omissions of Penzone and the County described in this Complaint constitute extreme and outrageous conduct that inflicted emotional distress and physical injury and/or harm upon Levitch.

80.     The acts and/or omissions of Penzone and the County described in this Complaint were extreme, outrageous, and beyond all possible realms of decency and should shock the conscience of the Court.

81.     The acts and/or omissions of Penzone and the County described in this Complaint were intentionally aimed at causing Plaintiff and other persons who are arrested and booked in the Maricopa County jail system emotional distress and were made in reckless disregard of the near certainty that emotional distress would result from the publishing of the mugshot information.

82.     The acts and/or omissions of Penzone and the County described in this Complaint constitute negligent, reckless, and/or intentional infliction of emotional distress.

83.     As a direct and proximate cause of Defendants' intentional, reckless, and/or negligent infliction of emotional distress, Plaintiff Levitch has suffered emotional distress, in an amount to be determined at trial.

-22-

84.     The acts and omissions of Maricopa County, and Sheriff Paul Penzone, acting in his individual capacity and under color of law, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

85.     As a result, punitive damages in an amount to be determined by a jury should be awarded against Penzone and the County to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## PLAINTIFF'S DAMAGES

86.     As a direct result of the wrongful acts of Maricopa County (including Sheriff Penzone), Levitch has suffered damages to be proven at trial, including special damages which is alleged to be no less than $500,000.00.

87.      Levitch has suffered and will continue to suffer damages to be proven in court, including pain and suffering, damage to her reputation, and emotional distress.

## PUNITIVE DAMAGES

88.     For the reasons stated above in this Complaint, punitive damages to be determined by the jury should be awarded against Penzone and the County, jointly and severally, to punish them for their wrongful acts and to deter them and others from similar acts in the future.

**REQUEST FOR ATTORNEY'S FEES**

89.     Levitch is entitled to recover her attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and for the bad faith of the Defendants.  Plaintiff thereby requests that the Court and/or jury award her attorney's fees and costs and expenses.

**REQUEST FOR A JURY TRIAL**

90.     Plaintiff Levitch respectfully demands a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Julie Levitch respectfully requests that this Court grant her the following relief against the Defendants Maricopa County and Sheriff Paul Penzone, jointly and severally, as follows:

A.     Judgment for compensatory damages and general damages in an amount to be proven at trial;

B.     Judgment special damages to Levitch' reputation in an amount to be proven at trial, but which is alleged herein to be no less than $500,000.00;

C.     Judgment for damages for pain and suffering and mental anguish and emotional distress;

D.     An award of Plaintiff's costs and expenses incurred herein, including attorneys' fees and costs pursuant to 42 U.S.C. §1988.

E.      Judgment for punitive damages in an amount to be determined by the Court; and

F.      Such other and further relief as the Court deems just and proper.

**DATED** this 25th day of October 2021.

**KOZUB KLOBERDAN**Z

By:   /s/ Daniel L. Kloberdanz
        Daniel L. Kloberdanz
        7537 East McDonald Drive
        Scottsdale, Arizona 85250
        *Attorneys for Plaintiff Julie Levitch*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

**Levitch' Notice of Claim Letter**
**to Maricopa County and Sheriff Penzone**



# NOTICE OF CLAIM

| Date of Loss | Time of Loss | Location of Loss |
|---|---|---|
| 8/23/20 | 12:00 ☒ AM ☐ PM | 201 S. 4th Ave, Phoenix, AZ 85003 |

**Person or Entity Against Whom the Claim is Asserted**

Maricopa County Sheriffs Office

| Claimant Last Name | First Name | Date of Birth | Social Security # | If Minor, Give Parent/Guardian Name |
|---|---|---|---|---|
| ~~Levitch~~ Levitch | Julie | 04/13/69 | 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 | |

| Address | City | State | Zip Code | Telephone |
|---|---|---|---|---|
| 13015 N. 49th Place | Scottsdale | AZ | 85254 | (650) 773-3251 |

**Description of Occurrence**

See addendum

**Describe Damage to Property**

See addendum

**If Person(s) Injured, List the following information on all injured parties**

| Name | Address | Description of Injury | Date of Birth | Telephone |
|---|---|---|---|---|
| Julie Levitch | 13015 N. 49th Place Scottsdale, AZ 85254 | See addendum | 04/13/69 | (650) 773-3251 ( ) - |

| Responding Police Agency: | | Police Report #: | |
|---|---|---|---|

**Claimant Vehicle Information**

| Make | Model | Year | License Plate # |
|---|---|---|---|

**County Vehicle Information**

| Unit Number | Department | County Driver | License Plate # |
|---|---|---|---|

**If Witnesses are available, provide the following information**

| Name | Address | Telephone |
|---|---|---|
| See Addendum | | ( ) - |
| | | ( ) - |

Specific amount for which your claim can be settled: $ 2,550,000

Claimant Signature: *Julie Levitch*     Date: 02/15/21

If you have questions about this form or your claim it is your responsibility to seek legal advice on your own and at your expense. Please do not call or otherwise contact any employee of Maricopa County or any employee of its officers, boards or districts, to seek assistance with filing a notice of claim or seek any other assistance with respect to your claim. No officer or employee of Maricopa County is authorized to provide legal advice or assistance with the preparation or filing of your claim. If you rely on any information furnished directly or indirectly by any officer or employee of Maricopa County, you proceed at your own risk.

If your claim involves a road condition, complete the Road Condition Supplement and mail it with this form.

Notice of Claim rev. 11/20/2014

**Supplement to Julie Levitch' Notice of Claim**

City of Phoenix (including Phoenix Police Department)
City Clerk Department
200 West Washington Street
15th Floor
Phoenix, AZ 85003

Maricopa County Board of Supervisors
Clerk of the Board of Supervisors
301 W. Jefferson, 10th Floor
Phoenix, Arizona 85003

Sheriff Paul Penzone
Maricopa County Sheriff's Office
Legal Liaison Section, Compliance Division
550 West Jackson
Phoenix AZ 85003

> **Re:** **Julie Levitch's Notice of Claim to the City of Phoenix and Maricopa County pursuant to A.R.S. §12-821.01**

Dear City of Phoenix and Maricopa County (including the Maricopa County Sheriff),

This Notice of Claim is submitted on behalf of Julie Levitch in relation to the actions described below by (1) the City of Phoenix, including but not limited to the Phoenix Police Department and Phoenix Fire Department (the "City") and (2) Maricopa County, including but not limited to the Maricopa County Sheriff who operates the jail (the "County"), relating to the events beginning on the evening of August 22, 2020.

This Notice of Claim is also submitted on behalf of Julie Levitch with respect to the conduct of certain City and County employees (including but not limited to Phoenix police officers and other City and County personnel at the jail) who were acting with the authority and/or at the direction of either the City or the County

This Notice of Claim is submitted in relation to the violation of Levitch's civil rights and other federal and state causes of action against both the City and the County.

I.      **Facts sufficient to permit the City and the County to understand the basis on which liability is claimed.**

Julie Levitch is a 51-year-old mother of two teenage children.  She is a professional technology writer who has never had any engagement with the police prior to the arrest

described below. Levitch has no criminal history, and in her entire life, has never even been charged with a crime.

On the evening of August 22, 2020, Levitch drove to the residence of her boyfriend, Daniel Kloberdanz. Levitch knocked on the front door to obtain Kloberdanz's attention. When he did not respond, Levitch knocked on the window adjacent to the front door. Kloberdanz has a non-functioning doorbell and a metal security door, covering his front door, which hinders the ability to hear someone who is knocking. Unbeknownst to Levitch, the window she knocked on had a hairline crack in it. When she knocked, it broke.

Kloberdanz heard the knocking on the window and came to the door. Levitch immediately notified him of the window, and they proceeded to have a conversation at the front door. After a dialog lasting several minutes, they concluded their conversation. As Levitch walked back to her vehicle, she began experiencing chest pain and an erratic heart rhythm. She then felt faint, losing consciousness and falling on the driveway.

Kloberdanz heard Levitch cough and witnessed her unconscious on the driveway. Immediately, he began attempting to revive her. This is when the Phoenix Police arrived. Apparently, earlier a neighbor had called the police upon hearing the broken glass.

Kloberdanz immediately requested the police officer to call for medical assistance, explaining to the officers that Levitch had a heart condition. At this time, Levitch was unconscious and suffering a serious episode of atrial fibrillation (AFib). Levitch has a well-documented history of an irregular heartbeat. In the police report, Phoenix Police officer Alireza Davarzan states, "I observed Julie to be laying there with her eyes rolling back of her head."

The police officers did call the Phoenix Fire Department. After diagnostic testing, the paramedics confirmed at the scene that Levitch was experiencing tachycardia – an abnormally fast heart rate indicative of AFib. It was highly apparent at the scene that Levitch was suffering from a serious medical condition, as she was just regaining consciousness and complaining of pain in her chest. Instead of allowing her to receive much needed medical treatment, the police arrested her for breaking a window.

Both Levitch and Kloberdanz clearly explained to the police on multiple occasions that she had a serious heart condition and needed immediate medical treatment. The Phoenix Police and the Phoenix Fire Department both ignored the pleas for Julie to obtain emergency medical treatment.

Instead, Levitch was wrongfully arrested and charged for criminal damage for the already existing broken window at the residence of Kloberdanz, located at 4383 East St. John Road in Phoenix, Arizona. Specifically, Levitch was charged with "Criminal Damage – Defacing Property," a misdemeanor. Levitch's criminal case number is #556170.

Ultimately, Levitch's case was dismissed by the Phoenix Municipal Court, on November 19, 2020.

Levitch did not purposefully or recklessly damage the window of Kloberdanz's residence. There was no indication of domestic violence, nor any crime committed.

Kloberdanz did not call the police, did not press charges, and pleaded with the officers to have Levitch taken to the hospital because of her heart condition.  These facts are supported by extensive body cam footage acquired by Levitch when her criminal matter was pending.

Handcuffed and barely conscious, Levitch was transported by the Phoenix Police Department to a nearby substation, where she collapsed again as a result of her heart condition. The paramedics were called to the substation where they confirmed that she was experiencing an AFib attack. This fact is confirmed in the video of Levitch at the substation with the paramedic specifically stating that she was suffering from AFib.

Also, Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution.  This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix Police Department.

Rather than enabling Levitch to receive proper medical treatment, which she desperately needed at that time, the City and/or County transported her to the Maricopa County 4th Avenue Jail, where she remained in custody under inhumane conditions and without proper medical care for over 16 hours.

At the 4th Avenue Jail, Levitch, wearing only a thin pair of pajamas, was held in a solitary cell and not given a change of clothing or a blanket to cover herself, despite repeated requests. She again lost consciousness, falling to the floor, before personnel transported her in a wheelchair to the jail's medical center. There, she was forced to take a beta blocker medication that her cardiologist had specifically told her not to take due to her low blood pressure.

In several instances, Levitch informed the paramedics and the police that she was not supposed to take this medication. By denying her access to emergency care and the improper treatment provided in the jail, Levitch continued to suffer from an irregular heart rhythm for weeks afterwards, causing her measurable pain and suffering. Levitch is currently under the care of an electrophysiologist who has suggested that surgery may now be required to treat the condition.

While being held at the 4th Avenue Jail, Levitch's cell had a broken toilet that flooded sewage onto the floor. There was no potable water to drink.

While being processed in jail, Levitch was cavity searched by a female staff member while another detainee stood nearby. This event occurred immediately before she was placed into an isolation cell.  Levitch was not told beforehand that she was going to be cavity searched, nor was she given an explanation as to why such a search was performed on her.  In addition, while Levitch was being processed, the fingerprinting technician (whose name is not known to Levitch) jokingly touted to another staff member that Levitch was "his type" in clear earshot of Levitch while he was taking her fingerprints. Thus, Levitch is also a victim of sexual harassment and assault, in violation of state law and her constitutional rights.

The 4th Avenue Jail is shamefully maintained.  Not providing drinking water, proper medical care or even a blanket is cruel and unusual punishment under any circumstance. Levitch was also subjected to hearing a sheriff calling an inmate an extremely derogatory, racist word, among other inhumane treatment.

Levitch was finally released on her own recognizance by a judge at approximately 1 p.m. the next afternoon, 16 hours after her arrest.  She was simply escorted out the door of the jail without a phone call, no money, no phone, and no I.D., in 115-degree heat. Dehydrated, exhausted, and struggling with her heart condition, it was all Levitch could do to ask a stranger on the street to borrow a cell phone so she could call for transportation.

Levitch' mugshot was posted on the official Maricopa County Sheriff website within hours of her release, wrongfully implying to the public that Levitch is guilty of a crime.  Even today, if one conducts an online search of the name "Julie Levitch," several mugshot websites show up on page one of the search results.  The damage to Levitch's reputation in the business community, as well as in her personal life, has been severely and permanently damaged as a result of the wrongful conduct of the City and the County.

The Sheriff and the County and the City are well aware that the online publishing of one's mugshot, regardless of a person's guilt or innocence, will result in permanent reputation damage, as well as blackmail and extortion by unscrupulous reputation management companies. As Julie was of no risk to the community, there was no justifiable reason for the City or the County to publish this photo online, including her name and birthdate.

**Aggravating factors against the City and the County:**

- The actions of the City of Phoenix and Maricopa County in posting mugshots, without any due process and without any finding of guilt on the part of the suspect,

4

is a violation of Levitch's constitutional rights under the United States Constitution and the Constitution of the State of Arizona.

- Levitch was never read her Miranda rights, in violation of *Miranda v. Arizona*, in which the United States Supreme Court held that elicited incriminating statements by a suspect not previously informed of these rights violates the Fifth and Sixth Amendments of the Constitution. This violation is evidenced by the contents of the police report, and the lack of any Miranda warnings is proved by the body cam videos of the Phoenix P.D.

- The Phoenix PD certainly knew that Levitch was having a medical emergency as they found her unconscious on the driveway. Kloberdanz requested that they call an ambulance. The correct response would have been to call for an ambulance, rather than arrest Levitch and hold her in jail for 16 hours as she suffered through an AFib attack. By doing so, they put her life at grave risk. Atrial fibrillation is a dangerous condition.

- Levitch's treating electrophysiologist will testify that she was at a very high risk of suffering a stroke or heart attack that evening because she was prevented from obtaining appropriate medical treatment.

- The actions of both the City and County were in violation of the City and County's own policies and laws in place at that time for the health and safety of the public. This is in addition to the lack of logic of arresting individuals for petty misdemeanors during a pandemic. The Police Department and Sheriff's Department were actively promoting the spread of COVID-19 - both within the jail and within the community. Following Levitch's arrest, she had to quarantine for two weeks because she was clearly exposed to others, including numerous officers and other personnel with the City and the County who were not wearing masks, in violation of their own policies. These facts are substantiated by both body cam and other video.

- Levitch's criminal case was dropped because there was no evidence, no witness, no victim, and no crime committed. The Phoenix police knew or should have known these facts at the time of her arrest.

- Levitch is now in possession of the body camera footage and other videos that detail many of the facts described above, including the Phoenix paramedics telling the police that Levitch was suffering from tachycardia and AFib.

II.        **Legal Basis for Levitch's Claims**

Levitch has claims against the City of Phoenix and the County of Maricopa under a myriad of legal theories and constitutional violations

Levitch has claims against the City and County under state and federal laws including but not limited to constitutional violations including claims based on 42 U.S.C. §1983 and other due process rights and Levitch' right to freedom from unreasonable seizure as protect by the Fourth Amendment of the United States Constitution and her right to equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution. These claims also include denial of due process, false arrest and false imprisonment, assault and sexual assault, lack of due process, cruel and unusual punishment, infliction of emotional distress (intentional and negligent), defamation (slander and libel), false light, invasion of privacy and negligence.

Levitch also has claims against the City for false arrest, abuse of process and malicious prosecution, in the filing and pursuit of the frivolous criminal charges with no probable cause.

As noted above, Levitch's mugshot of her face and personal information was posted on the official Maricopa County Sheriff Paul Penzone website. That website implies that Levitch was guilty of a crime, and quite shockingly, did not even contain a disclaimer that the persons shown on the website are presumed innocent. The City and the County were either aware or should have known that such a mugshot conveys a message of guilt. See *Karantsalis v. US Dept. of Justice*, 635 F.3d 497 (11th Cir. 2011) ("More than just "vivid symbol[s] of criminal *accusation*," booking photos convey *guilt* to the viewer . . . Indeed, viewers so uniformly associate booking photos with guilt and criminality that we strongly disfavor showing such photos to criminal juries); *United States v. Irorere*, 69 F. App'x 231, 235 (6th Cir. 2003) ("[T]he Sixth Circuit has condemned the practice of showing 'mug shot' evidence to a jury 'as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality.'" (quoting *Eberhardt v.Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979); see *United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988).

The mugshot and corresponding information were picked up by many unscrupulous websites that posted her photograph, name and date of birth all over the internet.

The posting of Levitch's mugshot was done without any due process whatsoever and did not advance any legitimate state interest. Upon information and belief, both the City and the County are responsible for the posting of this mugshot although it appears on the official MCSO/Paul Penzone website.

The City and the County should not enjoy qualified immunity for its inhumane treatment of Levitch and for the other violations explained above.

In *Taylor v. Riojas* (2020), the United States Supreme Court issued a qualified immunity decision in which the Court held the government's actions there violated "clearly established law." The Fifth Circuit had upheld a grant of immunity to prison officials who subjected the plaintiff, Trent Taylor, to inhumane prison conditions. Taylor alleges that he was kept for several days in a cell that was covered with feces, preventing him from drinking. He was then moved to a second cell, which was kept at cold temperatures, and where a clogged drain on the floor caused raw sewage to flood the cell. The prison officials were well aware of these conditions. Notwithstanding such inhumane treatment, the Fifth Circuit granted immunity to these officials, because while "the law was clear that prisoners couldn't be housed in cells teeming with human waste for months on end," it had not previously held that confinement in human waste for six days violated the Constitution.

The Supreme Court reversed the Fifth Circuit and reconsidered the doctrine of qualified immunity entirely. While the Court did not agree to take up this fundamental underlying question, it *did* summarily reverse the Fifth Circuit's decision and remanded the case. In its per curiam opinion, the Court recognized that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." In other words, because this constitutional violation was so egregious and obvious, it was unnecessary for Taylor to identify a prior case with functionally identical facts to demonstrate that the defendants violated his clearly established rights.

Based on the principles of vicarious liability, respondeat superior, and municipal liability, the entities and yet to be identified individuals involved in the events noted in this Notice of Claim are liable for the conduct of their employees and their agents. Additional liability is created by the entities and individuals due to their failure to adequately train and supervise their officers and agents.

### III.   Levitch's Damages for Claims and Settlement Amount.

To this day, Levitch continues to struggle with heart issues, sleep disturbances and post-traumatic stress due to the arrest and her treatment including the events occurring at the substation and the 4th Avenue Jail. She continues to suffer from a damaged reputation for the mugshot. She also had to spend thousands of dollars on legal fees to defend herself from the frivolously filed charges.

As a direct result of the wrongful acts of the Maricopa County Sheriff and the other responsible parties identified above, Levitch's constitutional rights have been violated and

she suffered severe personal injuries, including but not limited to her rights of due process and cruel and unusual punishment.  She continues to suffer from symptoms resulting from the City and the County's wrongful conduct, including pain and suffering, loss of earning capacity, damage to her reputation, emotional distress and continuing adverse health effects.

Pursuant to A.R.S. §12-821.01, Levitch will settle her claims with the City and the County for the following amounts.  Levitch will accept these amounts as settlement from either the City or the County:

| | |
|---|---|
| Lost earnings/capacity and damage to reputation........................ | $500,000 |
| Physical injury and pain and suffering ..................................... | $1,000,000 |
| Punitive damages ................................................................ | $1,000,000 |
| Estimated Future Medical Expenses ............................. | $50,000 |

The actions of the City and the County here are so egregious that a jury could award a much greater amount if this matter were taken to trial.  The majority of Levitch's claims are collaborated with body cam and other videos from the City and County.

If there are any questions about additional information regarding the events or facts underlying this claim, or if there is any need for clarification as to either the facts underlying the claim or the facts supporting the amounts sought, it is expected that such inquiries will be directed within sixty days of your receipt of this letter to the undersigned. Otherwise, all claims will be deemed valid.

This letter is submitted to comply with the Notice of Claim provisions of A.R.S. §12-821.01.  Nothing in this letter shall be intended as a limitation to the damages to which Levitch may be entitled or seek recovery, or if additional damages accrue after the date of this letter.

This letter is also subject to Rule 408 of the Arizona Rules of Evidence, and Rule 408 of the Federal Rules of Civil Procedure, and therefore, shall not be admissible in a court of law.

Sincerely,

Julie Levitch, Claimant