ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY:   COURTNEY R. GLYNN (023155)
      MAXINE S. MAK (031158)
      Deputy County Attorneys
      glynnc@mcao.maricopa.gov
      makm@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
MCAO Firm No. 00032000

*Attorneys for Defendants Maricopa County,
and Maricopa County Sheriff Paul Penzone*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Julie Levitch, a single woman<br><br>Plaintiff,<br><br>vs.<br><br>Maricopa County, Arizona; Paul Penzone, Sheriff of Maricopa County, Arizona,<br><br>Defendants. | NO. CV21-01418-PHX-DLR (JZB)<br><br>**DEFENDANT MARICOPA COUNTY AND MARICOPA COUNTY SHERIFF PAUL PENZONE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

    Plaintiff was arrested by the City of Phoenix Police Department and booked into the Maricopa County Sheriff's Office Fourth Avenue Jail.  When she was booked, her photograph ("mugshot"), which is a public record, was taken and posted on the Sheriff's Office's public website.  Plaintiff's mugshot and the fact of her arrest is a public record.

1

Posting the mugshot did not violate the United States Constitution or any Arizona law. Because the posting of her mugshot did not violate any federal or state laws, Defendants Maricopa County ("the County") and Sheriff Paul Penzone ("Sheriff Penzone") (collectively "Defendants"), move to dismiss Plaintiff First Amended Complaint ("FAC")(Doc. No. 8), pursuant to Fed.R.Civ.P. 12(b)(6).

A certificate of conferral is separately filed; the parties have not been able to agree on an amendment to cure the identified defects in the First Amended Complaint.

## I.    FACTUAL BACKGROUND

On August 22, 2020, Plaintiff Julie Levitch's ("Plaintiff") was arrested for criminal damage and booked into the Maricopa County Sheriff's Office "(MCSO") Fourth Avenue Jail.  When she was booked into Fourth Avenue Jail, her mugshot was taken and uploaded to the Mugshot Lookup section of the MCSO website.  Plaintiff was ultimately released from MCSO custody on August 23, 2020.

## II.    PROCEDURAL HISTORY

On August 17, 2021, Plaintiff filed her initial Complaint, which contained various allegations against Defendants and the City of Phoenix.  Defendants' counsel and counsel for the City of Phoenix contacted Plaintiff's counsel to conduct a consultation regarding issues in the Complaint prior to filing a Motion to Dismiss pursuant to Local Rule of Civil Procedure 12.1(c).  During that consultation, Plaintiff's counsel expressed his intention to name only the County and Sheriff Penzone and focus solely on issues related to the publication of Plaintiff's mugshot on MCSO's website.  The parties continued to have several conversations regarding this topic, which resulted in Plaintiff's First Amended

Complaint, which was filed on October 25, 2021. The parties continued numerous discussions regarding Plaintiff's allegations in order to enable Defendants to file a Motion to Dismiss on the articulated claims.

## III.   STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court assumes "the truth of the well-pled factual allegations and indulge in all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co*., 218 Ariz. 417, 419 (2008). The motion is granted if the plaintiff "would not be entitled to relief under any facts susceptible of proof in the statement of the claim." *Mohave Disposal, Inc. v. City of Kingman*, 186 Ariz. 343, 346 (1996).

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 579 (2007). The Court in *Twombly* explained that a complaint is read in conjunction with Federal Rule of Civil Procedure 8 (a) (2) which requires a "showing" that the plaintiff is entitled to relief "rather than a blanket assertion of entitlement to relief." *Twombly* at 556. While blanket assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. *Id.*

In *Ashcroft v. Iqbal*, the Supreme Court applied the *Twombly* standard to an action for supervisory liability against government officials in a *Bivens* action. First, the Court emphasized that, while a trial court examining a complaint for sufficiency must accept the factual allegations as true, "threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft,* at 662. The trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft,* at 662. Determining whether a complaint states a plausible claim for relief is a "context-specific task" requiring the court to "draw on its judicial experience and common sense. *Id.* Where well-pleaded facts only "permit the court to infer more than the mere possibility of misconduct", the complaint has not shown that the plaintiff is entitled to relief. *Id.*

## IV.   FAILURE TO STATE A CLAIM

In her FAC, Plaintiff alleges that the publishing of her mugshot to MCSO's website violated her Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights as well as various Arizona state laws.  Plaintiff's stated allegations are not clearly defined as to the basis of liability for each count; rather, the allegations are spread throughout the Factual Background and Counts I-IV and many overlap. (Doc. 8).  Defendants attempt to address each allegation contained in the FAC.

### A. Plaintiff's Constitutional Rights were Not Violated.

#### 1. Plaintiff has failed to state a claim under the Fourth and Fifth Amendments.

Plaintiff alleges that that Defendants deprived her of her constitutional rights in posting her mugshot on the MCSO website. She loosely alleges that such posting violated her Fourth Amendment rights to be free from unreasonable seizure and the equal protection of the law.  The Fourth Amendment holds that the ultimate measure of the constitutionality of a governmental search [or seizure] is 'reasonableness.' *Jamali v. Maricopa County*, 2013 WL 5705422 (2013), citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).

Defendants did not act unreasonably or unconstitutionally in posting a public record that was obtained incident to a lawful arrest.

It appears that Plaintiff argues that she has a property interest in her likeness and personal information and that her property interest was seized without the requisite due process.   Plaintiff is not entitled to due process for the release of a photograph that is considered public record in Arizona.   Further, Plaintiff has no property interest in her likeness and personal information that would prevent such publication. See *Id.* at *3, citing *Maryland v. King*, 133 S.Ct. 1958, 1975 (2013) (citing *Shaffer v. United States*, 24 App.D.C. 417, 426 (1904) stating that "[u]se of information seized incident to arrest should 'not be unduly restricted upon any fanciful theory of constitutional privilege.'"   Plaintiff's theory that her mugshot should not have been made available to the public via the MCSO website is based on nothing more than a fanciful theory of constitutional privilege.

In support of her argument, Plaintiff alleges that Defendants knew or should have known that posting her mugshot on the internet conveys a message of guilt.   Plaintiff is incorrect.   However, in support of her argument, she cites to out of circuit cases that are distinguishable here.   In *Karantsalis v. US Dept. of Justice*, 635 F.3d 497 (11th Cir. 2011), an 11th Circuit case that found that because the U.S. Marshals Service deemed the booking photographs not available for public dissemination, a personal privacy interested was implicated.   Here, however, mugshots are public records under Arizona law.   *See* A.R.S. § 41-151.   As such, no personal privacy interest is implicated, and Defendants were permitted to provide the mugshot to the public.   Plaintiff simply opposes the method by which it was shared.

Further, the showing of a mugshot to a criminal jury is markedly different from the posting of a mugshot upon arrest.  A criminal jury is empaneled and charged with the determination of guilt or innocence after an individual has been charged with a crime and based on evidence presented to it throughout the course of a criminal proceeding.  Here, posting a public record on MCSO's website showing that an individual has been arrested does not invoke the potential biases that can be raised during a criminal trial, as was the concern in *Karantsalis*. The analogy Plaintiff wishes to make is far too attenuated here.

Plaintiff also relies on another out of circuit case, *United States v. Irorere*, 69 F.App'x 231, 235 (6th Cir. 2007).  Much like in *Karantsalis*, *Irorere* centered on the presentation of a mugshot to a criminal jury.  As the Court in *Irorere* noted, the Sixth Circuit condemned using mugshot evidence in front of a criminal jury.  However, the Court also went on to find that, "the undue prejudice arising from placing a "mug shot" before a jury in a criminal trial is not fully analogous to the use of 'mug shots' in pretrial identification lineups."  *Id*. Here, Plaintiff's case is even further removed from the use that the *Irorere* Court considered permissible. Plaintiff was arrested and her mugshot was published on MCSO's website incident to that arrest.  It was not used in Plaintiff's criminal trial.  In fact, Plaintiff had no criminal trial as the charges against her were dismissed.

Additionally, in *Maryland v. King*, 133 S.Ct. 1958, 1975 (2013) (citing *Shaffer v. United States*, 24 App.D.C. 417, 426 (1904), the Supreme Court held that taking *pictures*, fingerprints, and physical measurements, recording the location of scars and body markings, and obtaining other relevant identifying information from an arrestee is reasonable under the Fourth Amendment for "the safe-keeping of a prisoner, and to prevent his escape, or to

enable [law enforcement] the more readily to retake the prisoner if he should escape." *Id.* at 1975 (quoting *State ex rel. Bruns v. Clausmier*, 57 N.E. 541, 542 (Ind. 1900) (emphasis added). Moreover, "government disclosures of arrest records, judicial proceedings, and information contained in police reports do not implicate the right to privacy." *Fugate v. Wickenburg Police Dept.*, 2011 WL 318115, at *3 (D. Ariz. Feb. 1, 2011) (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (citations omitted) (citing *Paul v. Davis*, 424 U.S. 693, 712-14 (1976)); a*ccord Hammons v. Scott*, 423 F.Supp. 625, 628 (N.D. Cal. 1976) (applying *Paul* to hold that the maintenance, use, and dissemination by state and federal officials of arrest records of individuals never convicted of a criminal charge based on the conduct for which they were arrested does not violate right to privacy). Thus, the publication by a law enforcement agency of mugshots and arrest records in public sources such as a newspaper, or here, the internet, is not unconstitutional. *Fugate* at *Id.*

The cases upon which Plaintiff relies are distinguishable and not analogous to the facts of her case. Plaintiff not only ignores the law as established by the United States Supreme Court, she ignores the fact that the very record at the center of her FAC, her mugshot, is in fact a public record. Plaintiff has no property interest in her likeness or personal information and the photograph taken after her arrest is a public record. She is not owed due process where no property interest exists nor is she owed due process in the release of that which is considered a public record. As such, Plaintiff fails to state a claim that Defendants violated her Fourth and Fifth Amendment rights and her FAC should be dismissed.

…

**2. Plaintiff fails to state a claim under the Sixth Amendment.**

Plaintiff asserts vague Sixth Amendment right violations; however, no specific actions are tied to the Sixth Amendment. The Sixth Amendment of the United States Constitutional grants criminal defendants the right to a speedy trial.  Plaintiff ostensibly argues that she was found guilty without benefit of a trial simply by virtue of the posting of her mugshot. Plaintiff was not found guilty of the crimes for which she was arrested.  Her mugshot was posted on the website after her arrest by the COP Police Department.  Her arrest, which is a matter of public record, was truthfully and accurately reported on the website.

Plaintiff appears to equate feared or suspected opinions of random and unidentified members of the public with the deprivation of a speedy trial.  As offensive or embarrassing as Plaintiff may find the posting, it does invoke the 6th Amendment.  Plaintiff's arrest and mugshot was accurately posted by law enforcement and Defendants did not find Plaintiff guilty or declare her guilty.  Rather, Plaintiff's arrest and booking into MCSO Jails, including her mugshot, were reported on the website.  Invoking the 6th Amendment in response to a public mugshot being posted on a website is an attempt to raise issues of constitutional violations where none exist.

Because no articulable allegations invoke the Sixth Amendment, Plaintiff has failed to state a claim.

**3. Plaintiff fails to state a claim under the Eighth Amendment.**

Plaintiff alleges that she was subject to cruel and unusual punishment when her mugshot was published on the MCSO website.  She does not, however, assert that she was

subjected to any physical or psychological force by Defendants or their agents.  Rather, she alleges that the mere publication of the mugshot was cruel and unusual punishment.  While such publication may not be favored or approved by some, it is not cruel and unusual punishment for purposes of an Eighth Amendment violation.  The Eighth Amendment requires that pretrial detainees and other prisoners be afforded "the minimal civilized measure of life's necessities."  See *Jamali v. Maricopa County*, 2013 WL 5705422 (2013) citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Plaintiff fails to cite any authority that her mugshot somehow meets the minimal requirement set forth in *Farmer*.  Again, the Supreme Court has held that information relating to a person's arrest may be publicized without violating his constitutional rights.  *Paul v. Davis*, 424 U.S. 693, 713 (1976).

### 4.  Plaintiff fails to state a claim under the Fourteenth Amendment.

Plaintiff asserts that she was denied due process and equal protection when Defendants published her mugshot on MCSO's website.  As stated supra, Plaintiff was not entitled to due process in the publication of a public record. First, Plaintiff has no property interest in her likeliness or personal information as it relates to the allegations in her FAC. Therefore, no right to due process exists.  Second, the mugshot is a public record.  There is no right to due process in providing that which by law, is public record.  *See Beasley v. Glenn*, 110 Ariz. 438, 439-40 (1974) (the public's interest in preserving arrest records outweighs the individual's privacy concerns; 1989 Ariz. Op. Atty. Gen. 41 (1989) ("arrest records are public records available for public inspection"). *Cf. Phoenix New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 545, ¶¶ 41-44 (App. 2008) (discussing newspaper reporter's public records requests for arrest records and other items); *Carlson v. Pima County*, 141 Ariz. 487,

491 (1984) (discussing public right of inspection found in A.R.S. § 39-121 and concluding that jail records are subject to disclosure under the statute).   Plaintiff fails to state a claim for a due process violation.

Plaintiff also uses language in her FAC that she has been denied equal protection. However, her FAC is devoid of any specific allegations supporting such a claim. She makes no allegations that she was treated differently than similarly situated individuals nor does she allege any specific facts invoking any other area of equal protection.   There are no allegations connected to the acts of Defendants as it relates to the publication of the mugshot that give rise to a sufficient allegation of a violation of her equal protection rights. Plaintiff's threadbare allegations that because the mugshot was published on the website, she was somehow denied equal protection is insufficient to state a claim.

Plaintiff further asserts arguments related to deprivation of her rights, privileges and immunities.   The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Consti. art. IV, § 2, cl. 1. This clause "was designed 'to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Sup.Ct. of Va. v. Friedman,* 487 U.S. 59, 64, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) (quoting *Paul v. Virginia,* 75 U.S. (8 Wall.) 168, 180, 19 L.Ed. 357 (1869)); *see also Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (The Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."). Again, the allegations in Plaintiff's FAC are not sufficient to articulate a claim invoking the

Privileges and Immunities Clause and therefore, it should be dismissed.

**5.  Plaintiff fails to state a claim against Defendants for 42 U.S.C. § 1983 – Failure to Train and Supervise**.

Plaintiff fails to state a claim against Defendants for failure to train and supervise under 42 U.S.C. 1983.  In order for the County to be sued for a failure to train, the alleged unconstitutional conduct is the result of an official policy or pervasive practice *and* when the policy or practice is the "moving force" behind the violation.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).  The same standard applies as to the Sheriff in his individual capacity.  *Connick v. Thompson*, 563 U.S. 51, 58 (2011).

Here, Plaintiff does not point to a specific policy. Rather her claim is based on a practice or custom.  When the claim is based on a pervasive practice, Plaintiff must prove a pattern of similar constitutional violations from which it can be plausibly shown that the challenged practice or custom was the moving force of the constitutional violation and that the municipal decision makers were on notice.  The failure to train must reflect a deliberate or conscious choice by municipal decision maker to disregard citizens' constitutional rights. *Canton*, 489 U.S. at 389-91.

Plaintiff fails to establish both prongs. Here, as established *infra*, posting a mugshot on MCSO's website does not violate Plaintiff's constitutional rights.   Because a constitutional violation cannot be articulated or found, there can be no analysis as to whether a policy or practice resulted in said conduct.

Additionally, assuming arguendo that a violation did exist, in the face of established case law establishing that the taking and posting of the mugshot onto MCSO's website is

not a violation of constitutional law, the municipal decisionmakers could not possibly be on notice that their practice was a moving force of any violative act.  See *Maryland v. King*, 133 S.Ct. 1958, 1975 (2013), *Paul v. Davis*, 424 U.S. 693, 712-14 (1976), *Jamali v. Maricopa County*, 2013 WL 5705422 (2013).

Because Plaintiff cannot establish the requisite basis for a claim for failure to train/supervise, her claim fails and must be dismissed.

### 6.   Defendant Penzone is Entitled to Qualified Immunity.

Defendant Penzone is entitled to qualified immunity in his personal capacity. Qualified immunity examines: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation. *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016). The law on qualified immunity is clear; the doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). A constitutional right is "clearly established" only if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). Clearly established law is not defined at a high level of generality, *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2084 (2011), and while courts do not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,* 563 U.S. 741. This exacting standard "gives government officials breathing room to make reasonable but

mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id.,* at ——, 131 S.Ct., at 2085.

It is Plaintiff's burden to prove "'that the right allegedly violated was clearly established'" at the time of the alleged violation. *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9 Cir. 2014) (quoting *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991)) Here, Plaintiff has failed to identify *any* existing precedent in *any* circuit or the Supreme Court where a court identified that a mugshot that constitutes a public record cannot be published pursuant to an arrest and booking. Plaintiff cites to out-of-circuit cases as persuasive authority; however, as discussed *infra*, those cases are factually and critically distinguishable here. Stated otherwise, Plaintiff has failed to identify any case law that establishes that Defendant Penzone violated a pretrial detainee's clearly established constitutional right against publishing her mugshot photo alerting the public of her arrest.

No constitutional right was violated. Applicable case law establishes that such publication is not unconstitutional. Therefore, Defendant Penzone is entitled to qualified immunity based on the first prong alone. However, looking even further, Plaintiff's right, were one to exist, was not clearly established such that it put Defendant Penzone on notice that his conduct would be in violation of that right. In fact, the opposite is true. Because of established case law, Defendant Penzone reasonably believed that his conduct was within the bounds of permissible action. *See Maryland v. King*, 133 S.Ct. 1958, 1975 (2013), *Paul v. Davis*, 424 U.S. 693, 712-14 (1976), *Jamali v. Maricopa County*, 2013 WL 5705422 (2013).

When no precedent exists that would have made it clear that Defendant Penzone was

violating the constitution, he is entitled to qualified immunity.  *See e.g., Taylor v. Barkes, 135 S. Ct. 2042, 2045, (2015)* ("In short, even if the Institution's suicide screening and prevention measures contained the shortcomings that respondents allege, no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution. Because, at the very least, petitioners were not contravening clearly established law, they are entitled to qualified immunity.").

Because no constitutional right was violated and no right was clearly established at the time of the violation, Defendant Penzone is entitled to qualified immunity.

## V.    STATE LAW CLAIMS

All of Plaintiff's claims are predicated on the illegality of the posting of her mugshot. As established *infra*, posting Plaintiff's mugshot does not violate her rights under federal law.  Plaintiff further fails to state a claim under state law.

### A. Maricopa County cannot be liable for the acts of the Sheriff or his employees.

Under well-settled principles of Arizona law, a county lacks vicarious liability for torts allegedly committed by an independently-elected, constitutionally-created officer and that officer's employees.  *See Fridena, v. Maricopa Cnty*., 18 Ariz. App. 527, 530 (1972) (rejecting application of respondeat superior to county for sheriff's alleged torts); accord *Norton v. Arpaio*, No. CV-15-00087-PHX-SPL, 2015 WL 13759956, at * 6 (D. Ariz. Nov. 20, 2015) (collecting federal district court cases that refused to apply vicarious liability to county for sheriff's state law torts); *Yamamoto v. Santa Cruz Cnty. Bd. of Sup'rs*, 124 Ariz. 538, 540 (App.1979) ("The only acts alleged in the tort counts were those of the clerk and

her deputy, and the justice of the peace. Their duties are imposed by law, not by the county. Having no right of control over either, the county cannot be liable for their torts under the doctrine of respondeat superior." (Emphasis added)).

Here, the mugshot was published on MCSO's website.  The County has no authority over the actions of the Sheriff and/or his employees.  Under *Fridena* and its progeny, the County cannot be held liable for violations of state law for the actions of the Sheriff.

**B.  Plaintiff's claims for slander, defamation, false light, and invasion of privacy are without merit.**

**a.  Slander and Defamation**

Plaintiff claims that the publication of her mugshot was slander and defamation. A private person suing for defamation must prove a defendant (1) published a false and defamatory statement concerning the person, (2) knew the statement was false and defamed the other, and (3) acted in reckless disregard of these matters or negligently failed to ascertain them. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977) (citing Restatement (Second) of Torts § 580B (1975)); *Reynolds v. Reynolds*, 231 Ariz. 313, 317, ¶ 8, 294 P.3d 151, 155 (App. 2013) (quoting *Dube v. Likins*, 216 Ariz. 406, 417, ¶ 35, 167 P.3d 93, 104 (App. 2007)). The "publication must reasonably appear to state or imply assertions of material fact that are provably false." *Yetman v. English*, 168 Ariz. 71, 76, 811 P.2d 323, 328 (1991).

Plaintiff fails to establish the most fundamental element of defamation and that failure is fatal to Plaintiff's claim.  The posting of Plaintiff's mugshot did not disclose a false statement.  Plaintiff may fear that those viewing the mugshot and fact of her arrest will have a negative opinion related to her arrest, but Defendants did not make any such

statements. The posting established Plaintiff's full name and birthdate along with other information. (Doc. 8, ¶ 21). Plaintiff admits that she was arrested and booked into the Fourth Avenue Jail for the alleged crime. (Id. at ¶¶ 15, 18 At no point does Plaintiff allege that anything posted on the MCSO website was actually false. Rather, she alleges that the posting implied her guilt of the crime for which she was arrested. Nothing contained in the posting was false or makes any assertion or implication regarding her guilt. But even if it did, which Defendants do not concede that it does, "a statement is not actionable when the speaker expresses a subjective view, interpretation, a theory, conjecture or surmise." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990). Because the statement at issue in this case is objectively true – Plaintiff was arrested and booked into Fourth Avenue Jail and her mugshot was taken incident to that booking (Doc. 8 ¶¶ 15, 18, 21) – Plaintiff's defamation claim fails. Further, if Plaintiff's claim somehow succeeded, Plaintiff would not be entitled to punitive damages as she is required to prove actual malice and to do so, she must show that Defendants knew the statement was false or acted with reckless disregard for its truthfulness. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Again, because the statement was not false, Plaintiff cannot prove actual malice.

Despite Plaintiff's desire that evidence of her arrest not be made public and the fact that posting contained true and publicly available information, such reporting by law enforcement is protected by the First Amendment as it is a matter of public concern. *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 517 (2005) ("When speech is about a matter of public concern, state tort law alone cannot place the speech outside the protection of the First Amendment.").

### b. False Light Invasion of Privacy

Plaintiff alleges that the posting of her mugshot placed gives rise to a claim for false light invasion of privacy. In order to state a claim for false light invasion of privacy, Plaintiff must allege that the false light in which she was placed would be "highly offensive to a reasonable person" and that Defendants "published [the matter] with knowledge of the falsity or reckless disregard for the truth." *Godbehere v. Phoenix News., Inc.,* 162 Ariz. 335, 783 P.2d 781, 786 (1989). "A plaintiff may bring a false light invasion of privacy action even though the publication is not defamatory, and even though the actual facts stated are true." *Id.* at 787.

Here, it is undisputed that the information posted on the MCSO website is true. Plaintiff claims that truthful reporting of her arrest implies her guilt of the crime for which she was arrested. Plaintiff is wrong. Defendants are not responsible for trying Plaintiff or determining Plaintiff's guilt. She was arrested by another law enforcement agency and booked into MCSO's jails. That information was posted with no commentary as to the guilt of any of the individuals who had been arrested and whose mugshots and information were posted on the website. It was a publication of factual events. Plaintiff's interpretation of how this placed her in a false light is not reasonable. Plaintiff claims that the website conveys to any reasonable reader that the persons on the website were guilty of a crime or likely to be guilty of a crime. (Doc. 8 ¶ 69). However, no reasonable reader would conclude that every single person listed on a website of arrests is guilty of the crime for which they were arrested.

Further, as it relates to Defendants' knowledge of falsity or reckless disregard for the

truth, Plaintiff fails to establish this burden as well.  As Defendants' role does not include determining Plaintiff's guilt, they would not have the knowledge of this false implication, nor would it act with the requisite reckless disregard for the truth. Their function, in this instance, was to receive an individual who was arrested and book them into their jails.  As part of that booking, Plaintiff's record of arrest was published. Plaintiff wants to hold Defendants responsible for her embarrassment by attempting to rely on an allegation that a reasonable person would believe the publication of any arrest implies guilt.   This unreasonable view is further supported by Plaintiff's claim that even if a disclaimer of the presumption of innocence accompanied the publication, it would be insufficient to absolve Defendants.  (Doc. 8 ¶ 70)[1].  Plaintiff does not want the fact of her arrest publicized.  Her desires do not equate to violations of federal or state law.

As discussed infra, based on current case law, posting the mugshot and information on the website has been deemed constitutional.  Defendants could not have been on notice of any wrong action when case law dictates their actions were permissible.

## C. Defendants are not liable for infliction of emotional distress – negligent, reckless, and intentional.

### a. Intentional Infliction of Emotional Distress

In order to establish a claim of Intentional Infliction of Emotional Distress ("IIED"), Plaintiff must show that Defendants engaged in "extreme and outrageous conduct; that he or she "either intend[ed] to cause emotional distress or recklessly disregard[ed] the near

---

[1] Plaintiff further states that the disclaimer would not protect her constitutional rights.  As this is interpreted as a state law claim, Defendants address it as such.  As it relates to a claim of violations of constitutional rights, Defendants re-urge their arguments on those points raised in this Motion.

certainty that such distress will result from [the] conduct; and that severe emotional distress…indeed occur[red]. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666 668 (App. 1969) (citation omitted), *overruled on other grounds by Godbehere*, 162 Ariz. 335, 783 P.2d 781. Such conduct "must completely violate human dignity" and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Pankratz v. Willis*, 155 Ariz. 8, 15, 744 P.2d 1182, 1189 (App. 1987) (citation omitted). It does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Duhammel v. Star*, 133 Ariz. 558, 561, 653 P.2d 15, 18 (App. 1982) (citation omitted), *overruled on other grounds by Godbehere*, 1662 Ariz. 335, 783 P.2d 781. "The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief; however, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury." *Johnson v. McDonald*, 197 Ariz. 155, 160, ¶ 23, 3 P.3d 1075, 1080 (App. 1999).

Defendants conduct amounts to its publication of a public record.  However personally offensive this perceived indignity may have been to Plaintiff; it is neither extreme nor outrageous as contemplated by applicable case law.  It is exercising a function which Defendants were authorized to exercise.  It does not go "beyond the bounds of decency" nor does it "completely violate human dignity."  As such, Defendants could not

have intended or recklessly disregarded that such harm would result from the publishing of a public record.

**b. Negligent/Reckless Infliction of Emotional Distress.**

For a claim of Negligent Infliction of Emotional Distress ("NIED"), Plaintiff must establish that, "the defendant was negligent; 2) the defendant's negligence created an unreasonable risk of bodily harm to plaintiff; 3) the defendant's negligence was a cause of emotional distress to the plaintiff; 4) the plaintiff's emotional distress resulted in physical injury or illness." *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1020 (D. Ariz. 2011).

To prove that Defendants were negligent, Plaintiff must prove they owed her a duty, breached that duty, were the cause of her damages, and that damages occurred. Plaintiff does not establish that Defendants owed her a duty to not publish what is deemed a public concern and a public record. Plaintiff apparently claims that Defendants owed her a duty to not imply guilt. However, has discussed throughout the instant Motion, Defendants made no such implication. Defendants did not owe a duty to restrict access to the fact of her arrest, which is what Plaintiff ultimately desires. The fact that Plaintiff was arrested and her accompanying mugshot are a matter of public record under Arizona law. Such disclosure was made in line with its statutory obligations.

Because Plaintiff does not and cannot establish that Defendants owed her a duty, Plaintiff's claim for NIED is automatically defeated. However, assuming arguendo a duty is found, Plaintiff does not sufficiently claim or establish that Defendants' supposed negligence created an unreasonable risk of physical harm. It is Plaintiff's expectations that are unreasonable, not Defendants' actions.

Because Plaintiff cannot establish a claim for IIED or NIED, her claims should be dismissed.

## VI.     CLAIMS TO WHICH THE PARTIES STIPULATE DISMISSAL

Plaintiff's FAC (Doc. No. 8), contains factual information that can be perceived as legal theories and/or claims.  It is Plaintiff's intention that her FAC focus solely on the publication of the mugshot.  The parties hereby stipulate that any allegations construed as pertaining to her arrest, her conditions of confinement while in MCSO's Fourth Avenue Jail and claims of sexual harassment or lack of medical care while in MCSO's Fourth Avenue Jail, and any other claims construed that do not relate solely to the issues related to the publication of Plaintiff's mugshot do not require a response and may be dismissed as against Defendants.

## VII.     CONCLUSION

For the various reasons set forth above, Defendants respectfully request that Plaintiff's First Amended Complaint be dismissed in its entirety.

**RESPECTFULLY SUBMITTED** this 21st day of January, 2022.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: */s/Courtney R. Glynn*
COURTNEY R. GLYNN
MAXINE S. MAK
Deputy County Attorneys
*Attorneys for Defendants Maricopa County*
*and Maricopa County Sheriff Paul Penzone*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Douglas L. Rayes
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 626
401 West Washington Street, SPC 79
Phoenix, AZ 85003-2161

Honorable John Z. Boyle
Magistrate Judge
Sandra Day O'Connor U.S. Courthouse, Ste. 322
401 West Washington Street, SPC 75
Phoenix, AZ 85003-2160

COPY mailed to:

Daniel L. Kloberdanz
Kozub Kloberdanz
7537 East McDonald Drive
Scottsdale, AZ 85250
*Attorneys for Plaintiff*

/s/ *J. Barksdale*
S:\CIVIL\CIV\Matters\CJ\2021\Levitch v. MC 2021-0400\Pleadings\Drafts\Defendants' Motion to Dismiss.docx