ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: COURTNEY R. GLYNN (023155)
     MAXINE S. MAK (031158)
     Deputy County Attorneys
     glynnc@mcao.maricopa.gov
     makm@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
MCAO Firm No. 00032000

*Attorneys for Defendants Maricopa County,
and Maricopa County Sheriff Paul Penzone*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Julie Levitch, a single woman,<br><br>Plaintiff,<br><br>vs.<br><br>Maricopa County, Arizona; Paul Penzone, Sheriff of Maricopa County, Arizona;<br><br>Defendants. | NO. CV21-01418-PHX-DLR (JZB)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Defendants Maricopa County and Sheriff Paul Penzone (collectively "Defendants") hereby reply in support of their Motion to Dismiss ("MTD") (Doc. No. 11). Plaintiff uses her Response to Defendants' Motion to Dismiss First Amended Complaint ("Response") (Doc. No. 18), to assert new theories of liability that were not pled in her First Amended Complaint ("FAC") (Doc. No. 8). A response to a motion to dismiss is an inappropriate vehicle by which to raise new theories. Plaintiff cannot informally amend her FAC by asserting new allegations not found in the original FAC in subsequent motions. *See Pryzblyski v. Stumpf*, 2011 WL 31194, at *4 (D. Ariz. Jan. 5, 2011) ("Plaintiff cannot

informally 'amend' the complaint by attempting to supplement his allegations in later motions, or responses thereto."). Should Plaintiff wish to change the theories of liability in this case, she should potentially seek to amend her complaint so that those specific theories can be addressed in a separate Motion to Dismiss, if necessary.

In her Response, Plaintiff addresses, for the first time, violations of public records law, including a bizarre and unfounded claim that Defendants operate the MCSO website for a commercial purpose and pecuniary gain.  Plaintiff did not plead these issues in her FAC, which is the basis for Defendants' MTD. Because of this, she has failed to state a claim upon which relief can be granted.  Plaintiff's arguments on these points should not be considered and should be dismissed or, at the very least, not considered.

## **ARGUMENT**

Plaintiff alleges that Defendants branded her a criminal but at the same time states that a disclaimer on the website that the individuals depicted had not yet been found guilty would not have made a difference. (Doc. No. 8, ¶ 70).  She alleges, for the first time in her Response, claims invoking public records law.  (Doc. No. 18, p. 5, ¶ 2; p. 9, § B; p. 12 § C; p. 14, § IV; and p. 18, § D.  She alleges that she should have been given a trial to determine her guilt prior to this information being published.  (Doc. No. 18, p. 25,§ B; p. 28, § D). What Plaintiff actually wants is for her arrest to never have been available to the general public.  Plaintiff's desire is not rooted in or supported by law.

Arizona Public Records laws are found in Arizona Revised Statues, Title 39. That law is not raised in Plaintiff's FAC.  While this case involves public records, the question here is whether the publication of the records violates Plaintiff's specifically pled constitutional and state law rights.  Any other issue raised is designed solely to distract this Court and create issues where none exist.

In her FAC, Plaintiff asserts that the publication on the MCSO Mugshot Lookup website was a violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, that in publishing the materials Defendants failed to train and supervise their employees, and that publication constituted the state tort claims of slander,

defamation, false light of privacy, and the infliction of emotional stress – intentional, negligent, and reckless.[1]  (Doc. No. 8, Counts I through IV).

As such, Defendants' MTD and thus this Reply focus only on the articulated causes of action in the FAC and Plaintiff's attempts to rebut Defendants' arguments. Defendants maintain that under applicable law, Plaintiff's claims do not state a claim upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6), Federal Rule of Civil Procedure.

### I.  Defendants did not Violate Plaintiff's Constitutional Rights.

Plaintiff makes allegations that Defendants have conceded various points in this case.  Defendants make no such concessions.  Plaintiff inadequately addresses the constitutional arguments contained in Defendants' MTD.  Rather, Plaintiff misapplies the law as it exists and attempts to hold Defendants responsible for what she believes *should be* the law.  Simply put, Defendants' actions did not violate Plaintiff's constitutional rights.

### A. Fourth Amendment and Fifth Amendment

Plaintiff does not refute the constitutional arguments contained in Defendants' MTD. Rather, she relies on cases that are inapplicable and on inadequate interpretations of law.[2]

Plaintiff alleges a violation of the Fourth and Fifth Amendments; however, just as in *Jamali v. Maricopa County*, 2013 WL 5705422 (2013), Plaintiff's Fourth and Fifth Amendment rights were not violated when Defendants published her mugshot and information incident to her arrest. Plaintiff points to no authority that contrary law exists. Instead, Plaintiff attempts to distinguish *Jamali* by pointing out that the plaintiff in that case named as defendants different parties than she has in this case and she fails to address any

---

[1] Plaintiff agrees to the dismissal of her claims under the Eighth Amendment; therefore, Defendants do not address that issue in the instant Reply. Further, Plaintiff fails to address Defendants' argument regarding her claim for failure to train and supervise, thus, that claim must be dismissed. *Conservation Force v. Salazar*, 677 F.Supp.2d 1203, 1211 (N.D. Cal. 2009), aff'd, 646 F.2d 1240 (9th Cir. 2011), ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.")

[2] Plaintiff acknowledges that the rights of privacy recognized under the United States Constitution are different than those that are protected under FOIA.  She requests an overbroad application of those rights without providing any authority for such application other than her personal belief that Sheriff Penzone owed her a duty not defined by law. (Doc. No. 18, p. 18, fn. 5).

3

of the substantive findings of the case. *Jamali*'s differences do not render the case inapplicable or unanalogous. Interestingly, however, Plaintiff cites as a criticism of *Jamali* that the plaintiff did not allege a violation of Arizona's public records laws. (Doc. No. 18, pp. 13-14: 27-1). Neither has Plaintiff.

In *Jamali*, the plaintiff's mugshot and personal details were posted on the MCSO Mugshot Lookup website and other parties took that information and posted it on other websites, opening the plaintiff up to abusive and derogatory comments. These allegations are not dissimilar to those made by Plaintiff in this case. The Court in that case found no Fourth or Fifth Amendment violations and the same holds true here. In finding no constitutional violations, *Jamali* relies on *Maryland v. King*, 133 S.Ct. 1958 (2013), which Plaintiff completely ignores in her Response. *King*, in citing *Shaffer v. United States*, 24 App.D.C. 417, 426 (1904), found that it would be a matter of great regret to have the use of photographic pictures unduly restricted upon any fanciful theory of constitutional privilege. *King*, 133 at 1975. That is what Plaintiff asserts here. She was arrested and the fact of her arrest was published on the internet. Defendants are entitled to exercise discretion in deciding what is necessary in safe-keeping of a prisoner, and to prevent his escape, or to enable them to more readily retake the prisoner if he should escape. *See King* at 1975, citing *State ex rel. Bruns v. Clausmier*, 154 Ind. 599, 601, 603, 57 N.E. 541, 541 (1900). This also includes MCSO's Mugshot Lookup Website.

Plaintiff continues to cling to her belief that the mere publication of the information incident to her arrest conveys a message of guilt and that violates her constitutional rights. However, in urging this argument, she relies on three cases (*Karantsalis v. U.S. Department of Justice*, 635 F.3d 497 (11th Cir. 2011); *World Publishing Co. vs. U.S. Dep't of Justice*, 672 F.3d 825 (10th Cir. 2012); *Detroit Free Press, Inc. v. U.S. Dep't of Justice*, 829 F.3d 478)) that are not only unauthoritative, not only distinguishable in application, but also do not apply because this is not a case about the Freedom of Information Act ("FOIA") or public records law.

All three cases are wholly distinguishable to the case at hand. First, all three cases are from outside the 9th Circuit. Second, Plaintiff's case is not a case about the denial of

4

records pursuant to a FOIA request and whether the records meet the criteria of specific FOIA exemption. All three of her cited cases are. Third, all three of the cited cases center on requests for booking photographs belonging to the U.S. Marshal's Service, which deems its booking photographs not generally available to the public. It is even the *Karantsalis* court that stated that the U.S. Marshal's determination was a factor supporting a privacy interest in the booking photograph. (See *Karantsalis*, 635 F.3d at 503). This point was further echoed by the *World Publishing, Co.* court. (*World Publishing Co.*, 672 F.3d at 829). That factor is glaringly absent in the instant case.

Plaintiff does not address these critical distinctions in her Response. Instead, she attempts to persuade this Court to use these out-of-circuit unanalogous cases to establish constitutional and state law violations. The reliance is misplaced.

Plaintiff further attempts to distinguish United States Supreme Court case *Paul v. Davis*, 424 U.S. 693 (1976), which remains good and applicable law in this Circuit. Nothing Plaintiff cites to diminishes the impact of *Paul* on the instant case. Plaintiff cites to U.*S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 770, 109 S.Ct. 1468, 1480 (1989) for the premise that all criminal "rap sheets" met the criteria for an exemption from *disclosure under a specific exemption of FOIA*. (Doc. No. 18, p. 14: 14-18) (emphasis added). This is a case about whether the publication of Defendants' records violated specific constitutional rights and state laws as identified in Plaintiff's FAC, not whether they were properly denied under the authority of a FOIA or public records request. *Reporters* analyzes whether a specifically created FBI "rap sheet" was exempt under Exemption 7(C) of FOIA. The court specifically analyzed the issue through the lens of a specific exemption under FOIA. The analysis in this case is entirely different. The information that was published in this case was not an FBI "rap sheet" as outlined in *Reporters* nor was it sought pursuant a FOIA request, which was then denied. Plaintiff consistently argues that this case should be analyzed using factually and legally distinguishable cases involving the denial of records pursuant to federal or state public records law. The authority Plaintiff cites to rely on theories not pled in her case and do not apply here.

In *Paul*, the plaintiff's name and photograph appeared on a flyer captioned "Active Shoplifters" that was distributed among merchants by the police. The Supreme Court found that distributing the flyer did not deprive the plaintiff of any liberty or property rights secured by the due process clause nor did the flyer deprive the plaintiff of a right to privacy. Nothing in *Reporters* changes these findings or their application to Plaintiff's case.

Additionally, Plaintiff has failed to establish that she had a liberty, property or even a privacy interest in the information that was published. Rather, she attempts to extrapolate the application of the Fifth Amendment due process requirement to include the publication of public information. Conversely, Defendants have established affirmatively that Plaintiff has no property or privacy interest in the information that was published. (Doc. No. 11, p. 5: 7-15; p. 7: 3-15). Plaintiff attempts to diminish the import of Defendants' citation to *Fugate v. Wickenburg Police Dept.*, 2011 WL 318115, at *3 (D. Ariz. Feb. 1, 2011), by distinguishing that no mugshot or birthdate were published. However, *Fugate's* application is verifiably broader than specific information and/or records. *Fugate*, in fact, states that "government disclosures of arrest records, judicial proceedings, and information contained in police reports do not implicate the right to privacy." *Id*. (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (citations omitted) (citing *Paul v. Davis*, 424 U.S. 693, 712-14 (1976)); a*ccord Hammons v. Scott*, 423 F.Supp. 625, 628 (N.D. Cal. 1976) (applying *Paul* to hold that the maintenance, use, and dissemination by state and federal officials of arrest records of individuals never convicted of a criminal charge based on the conduct for which they were arrested does not violate right to privacy). Plaintiff's desired narrowed interpretation is, by the very reading of the case law, incorrect.

Nothing Plaintiff cites defeats Defendants' arguments that no constitutional violations existed. Therefore, Plaintiff fails to state a claim and her claims should be dismissed.

### B. Sixth Amendment

Plaintiff absurdly alleges that Defendants branded her a criminal by not fulfilling her right to trial before the release of a public record. Plaintiff bases this argument on nothing

more than her own perception.  Defendants did no such labeling and Plaintiff had no right to a trial in this instance.

The Sixth Amendment guarantees a right to a speedy trial.  It does not give Plaintiff a right to a determination of guilt before the public information of her arrest is made available. There is no law that requires such broad application of the Sixth Amendment.  As *U.S. v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497 (1982) holds, the speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce impairment of liberty imposed on the accused.   Plaintiff is guaranteed a right to a speedy trial to ascertain her guilt within the criminal justice system.  The connection between posting her public arrest information and a constitutionally guaranteed right to a speedy trial is much too attenuated.  Defendants have no obligation to and Plaintiff has no right to a trial to determine whether a public record can be made public.   Plaintiff cannot impose an obligation on Defendants that does not exist.  Because no Sixth Amendment violation exists, Plaintiff fails to state a claim for which relief may be granted and her claims should be dismissed.

    **C. Fourteenth Amendment**

        **i. Due Process**

Plaintiff fails to address Defendants' substantive arguments as it relates to her Fourteenth Amendment violations.  Plaintiff was not entitled to due process as it relates to the release of public information.  Again, Plaintiff argues, without support, that she should have been adjudicated guilty prior to the publication of her mugshot and accompanying information.

Plaintiff's due process right does not extend to the publication of public records. There is no right to due process in providing that which by law, is public record. *See Beasley v. Glenn*, 110 Ariz. 438, 439-40 (1974) (the public's interest in preserving arrest records outweighs the individual's privacy concerns); 1989 Ariz. Op. Atty. Gen. 41 (1989) ("arrest records are public records available for public inspection"). *Cf. Phoenix New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 545, ¶¶ 41-44 (App. 2008) (discussing newspaper reporter's public records requests for arrest records and other items); *Carlson v. Pima County*, 141 Ariz. 487

491 (1984) (discussing public right of inspection found in A.R.S. § 39-121 and concluding that jail records are subject to disclosure under the statute).

### ii. Equal Protection

Plaintiff's arguments pertaining to her Equal Protection rights is confusing. In her Response, she makes the argument that she is part of a protected class and thus entitled to equal protection under the law. Plaintiff argues that she belongs to a class of "persons booked by Sheriff Penzone in the Maricopa County Jail system who have suffered from the improper disclosure of their mugshot and personal information on the internet. To the best of Plaintiff's knowledge, Maricopa County does not digitally publish the birthdates of any other class of persons." (Doc. 18, p. 27: 7-11). She goes on to allege that she has stated a valid claim as a member of a protected class. (*Id*. at p. 28: 11-16). It is unclear what class she believes she belongs to or how any such class of individuals is a constitutionally protected class.

The Fourteenth Amendment to the United States Constitution states in pertinent part, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ... nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. Likewise, the Arizona Constitution provides that "[n]o law shall be enacted granting to any citizen, class of citizens ... privileges or immunities which, upon the same terms, shall not equally belong to all citizens[.]" Ariz. Const. art. 2, § 13. "The effects of the federal and state equal protection guarantees are essentially the same ... each generally requiring the law treat all similarly situated persons alike[.]" *State v. Panos*, 239 Ariz. 116, 118, ¶ 7, 366 P.3d 1006, 1008 (App. 2016) (citations and quotation omitted). Equal protection, however, "does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification." *State v. Navarro*, 201 Ariz. 292, 298, ¶ 25, 34 P.3d 971, 977 (App. 2001) (citation omitted).

Plaintiff argues that she belongs to a class where all members of that class were treated the same. There is no fundamental right protected under the Constitution in this instance. Plaintiff's analysis for equal protection is fatally flawed.

Should an argument that Plaintiff is entitled to such equal protection exist, which Defendants do not concede, publishing arrest records and other government records is reasonably related to furthering a legitimate governmental interest. Defendants were entitled to exercise discretion in deciding what was necessary in safe-keeping of a prisoner, and to prevent his escape, or to enable him more readily retake the prisoner if he should escape. *See Maryland v. King*, 133 S.Ct. 1958, 1975, citing *State ex rel. Bruns v. Clausmier*, 154 Ind. 599, 601, 603, 57 N.E. 541, 541 (1900). The government does not have to achieve absolute equality and complete conformity of legislative classifications. *City of Tucson v. Grezaffi*, 200 Ariz. 130, 137, ¶ 18, 23 P.3d 675, 682 (App. 2001) (citation and quotation omitted).

Plaintiff also attempts to argue that because a liberty interest is implicated here, the stigma-plus test discussed in *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185-1186 (9th Cir. 2008) applies. Plaintiff's application of the stigma-plus test relies on the premise that she had a right of privacy under Arizona law in the information that was published on the MCSO Mugshot Lookup website. As Defendants have repeatedly established throughout their Motion to Dismiss and this Reply, she does not. She relies on her unfounded allegation that her arrest information being published was the equivalent of Defendants labeling her a criminal. Defendants did no such labeling. Defendants are not and cannot be responsible for the thoughts, opinions, or even the actions of others when it published that which was deemed public. As noted *supra*, Plaintiff alleges that not even a disclaimer stating those shown on the website are innocent until proven guilty would resolve her allegations. That is because Plaintiff wants the law to exist such that the information of her arrest would not be public unless and until she was adjudicated guilty. This right does not exist and she cannot contort current law to bend to her will.

Plaintiff fails to state a claim under the Equal Protection clause and her claims should be dismissed.

### D. Qualified Immunity

There is no clearly established law that publication of the information that was posted on the MCSO Mugshot Lookup website was in violation of Plaintiff's rights. Plaintiff urges the Court to determine that her theory of a conveyance of guilt somehow equates to established law. But Plaintiff offers no applicable legal support for her position. She relies on her belief that the publication conveys guilt. That is not enough.

A constitutional right is "clearly established" only if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). Clearly established law is not defined at a high level of generality, *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2084 (2011), and while courts do not require a case directly on point, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Ashcroft,* 563 U.S. 741. (emphasis added). This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id.,* at ——, 131 S.Ct., at 2085

Here, Plaintiff has failed to identify *any* existing precedent in *any* circuit or the Supreme Court where a court identified that a mugshot that constitutes a public record cannot be published pursuant to an arrest and booking. Plaintiff cites to out-of-circuit cases as persuasive authority; however, as discussed *infra*, those cases are factually and critically distinguishable here. Stated otherwise, Plaintiff has failed to identify any clearly established constitutional right against publishing the information that was posted alerting the public of her arrest.

Because no constitutional right was violated and no right was clearly established at the time of the violation, Sheriff Penzone is entitled to qualified immunity.

### II.   Date of Birth

Throughout her Response, while arguing that the dissemination of her mugshot and personal information was in violation of various laws, she focuses specifically on the issue of her date of birth being part of that dissemination. Plaintiff argues that her date of birth,

**though a public record**, is private and confidential. (Doc. No. 18, p. 9, § B) (emphasis added). Plaintiff cites *Scottsdale Unified Sch. Dist. No. 48 of Maricopa Cty. v. KPNX Broad. Co.,* 191 Ariz. 297, 955 P.2d 534 (1998) as her authority. As has been the case throughout her FAC and Response, Plaintiff's view and application of the case law is incorrect. Plaintiff correctly notes that her date of birth is a public record. However, it is not confidential as a matter of law. Plaintiff even cites *Scottsdale Unified* in relevant part,

> With both a name and birth date, one can obtain information about an individual's criminal record, arrest record (which may not include disposition of the charges), driving record, state of origin, political party affiliation, social security number, current and past addresses, civil litigation record, liens, property owned, credit history, financial accounts, and, quite possibly, information concerning an individual's complete medical and military histories, and insurance and investment portfolio.

*Id*. at 539, ¶ 18. The *Scottsdale Unified* court found, through utilizing a balancing test under the framework of public records law, that the teachers' dates of birth at issue under the facts and circumstances of that particular case were confidential, it did not hold that dates of birth are confidential in all matters at all times. The court acknowledged that the dates of birth may be available from other public sources but that in the case before it, it deemed them confidential. The fact that dates of birth are not confidential as a matter of law is further evidenced by the Superior Court of Maricopa County's own Criminal Court Case Information Lookup website.[3] Not only does the Superior Court allow cases to be looked up by a date of birth (coupled with a first and last initial), even where cases are searched by name alone, the responsive defendants' dates of birth (month and year) appear in the search results. Defendants do not offer this evidence that dates of birth are available from other public sources. Rather, Defendants use this to show that there are instances where release of dates of birth are permissible. Thus, the dates of birth are not considered confidential at

---

[3] Judicial Branch of Arizona, Maricopa County, Criminal Case Information website: Docket: Criminal Court Case Information (maricopa.gov). This Court may take judicial notice of government documents on a government website. *Kater v. Church Downs Incorp.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018); *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128 (9th Cir. 2021).

all times as a matter of law. There is no blanket prohibition or finding of confidentiality on the release of an individual's date of birth.

Further, provision of dates of birth in instances such as Plaintiff's allows Defendants to identify with specificity those who are booked into their jails for identification purposes rather than allow confusion among people with same or similar names. Many people have similar names and even physical descriptions. Some people have the same name and even the same date of birth. The information provided gives a more complete picture in order to correctly identify those who have been booked into MCSO jails.

As to Plaintiff's allegations that Defendants' violated MCSO Policy GF-3, to the extent the allegations refer to Plaintiff's argument related to commercial purpose, that allegation was not pled in her FAC and Defendants should not be required to respond to it, for the first time, in a Reply to their MTD.

Further, Policy GF-3 does not provide absolute mandates. Rather, it states that limitations to open disclosure are based on a balancing test of several factors. To compel a finding of a violation of law based on such a policy has no support.

There is no authority that dates of birth, as a matter of law, are confidential. As such, the records published on the website were public records without any prohibition on their release. Plaintiff has failed to establish a claim that release of her date of birth in this instance violates constitutional or state law and as such, Plaintiff's claims should be dismissed.

### III. Defendants did not Violate State Law.
#### A. Maricopa County is Not Liable under *Fridena v. Maricopa County*.

Plaintiff argues that she names the County as a Defendant because Sheriff Penzone is the final policy-maker as it relates to the publication of the mugshot and other information. This is better stated as a *Monell* claim via *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978). *Fridena v. Maricopa Cnty.,* 18 Ariz. App. 527, 530 (1972) does not apply to *Monell* claims. However, in Plaintiff's FAC, her allegations are alleged as against Defendants collectively for both her constitutional claims and her state law

claims, without clear delineation as to how the claims are attributed. As stated specifically in their MTD, to the extent any *state law allegations* can be construed as against the County, the County cannot be held liable. (Doc. No. 11, p. 15: 5-7); *Fridena v. Maricopa Cnty.,* 18 Ariz. App. 527, 530 (1972). Therefore, any state law claims against the County should be dismissed.

### B. Defamation

#### 1. Publication on the Mugshot Lookup Website did not Convey a Message of Guilt.

Plaintiff was booked into MCSO jails under the Arizona criminal code. Sheriff Penzone's listing of the crime under which Plaintiff was booked is far from defamatory. Again, Plaintiff relies on an unfounded interpretation of the publication of her arrest. Sheriff Penzone did not say or publish anything that conveyed Plaintiff's guilt. In fact, there are two headings on columns that relate to booking – because Plaintiff was booked into MCSO jails because she was arrested under the criminal code. Plaintiff's own displeasure and embarrassment that her arrest was made public does not equate to defamation. Sheriff Penzone did not publish any false statements about Plaintiff. She was arrested and booked into MCSO jails for the crime of criminal damage. Sheriff Penzone does not determine guilt. He accepts those arrested into the jails pending their journey through the criminal court system – whatever that journey may be. Plaintiff's self-serving statements and belief that the publication of her mugshot and other information following her arrest conveyed her guilt is unfounded.

Plaintiff grossly mispresents the case law upon which she relies in arguing that the mugshot conveys guilt. Plaintiff holds out *State v. Moore*, 108 Ariz. 215, 218-219 (1972) for the proposition that Arizona has long recognized that a mugshot itself conveys a message of guilt to the public. This is incorrect. *Moore* involves a criminal case where the defendant was on trial for committing a crime. During that trial, an old mugshot, taken before the crime at issue in the criminal case was ever committed, was admitted into evidence and shown to the jury. The testimony regarding that mugshot indicated that it was taken before his arrest. The court in *Moore* found that the admission of an old unrelated

mugshot of a criminal defendant to the jury in the criminal case on his new charges was prejudicial. All of the cases Plaintiff relies on to establish that publishing her mugshot was prejudicial to her are criminal cases involving the prejudice of a defendant's mugshot being shown to his empaneled criminal jury.

As Defendants pointed out in their MTD, the court in *United States v. Irorere*, 69 F.App'x. 231, 235 (6th Cir. 2007), a case that Plaintiff relied on in her FAC but appears to have abandoned in her Response, recognized the difference in the treatment of mugshots stating, the undue prejudice arising from placing a 'mug shot' before a jury in a criminal trial is not fully analogous to the use of 'mug shots' in pretrial identification lineups." It is certainly not analogous to the use of a mug shot following an arrest and booking and Plaintiff points to no authority that it is. Plaintiff was arrested and booked into MCSO jails. The information attendant to that arrest was published. It was factual and correctly relayed. What others thought about or did with the information once published is not Defendants' responsibility nor can they be held liable for such actions.

Plaintiff further misstates the holding in *Paul v. Davis*, 424 U.S. 693 (1976), where she states that Justice Rehnquist in his majority opinion found that the Plaintiff in that case had a claim for defamation against the police. Justice Rehnquist made no such definitive finding. Rather, he stated that imputing criminal behavior is generally considered defamatory per se and then remarked that the plaintiff in *Paul* did not assert a claim for defamation under the laws of Kentucky. He did not go on to say that had the plaintiff brought the claim for defamation under the laws of Kentucky, the Court would have found it viable. Justice Rehnquist simply acknowledged a general principle that would not be considered in the case before him because it was not pled. This distinction, while fine, is crucial to the current analysis. Plaintiff here cannot rely on an opinion that did not analyze a claim as the basis for the existence of her own.

## 2. The Elements of Defamation are not Satisfied.

The definitive finding of defamation is falsity. Only if the statement is false must Defendants also be found to have either known that the statement was false and that it defames the other, acted in reckless disregard of these matters, or acted negligently in failing

to ascertain them. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977) (citing Restatement (Second) of Torts § 580B (1975)); *Reynolds v. Reynolds*, 231 Ariz. 313, 317, ¶ 8, 294 P.3d 151, 155 (App. 2013) (quoting *Dube v. Likins*, 216 Ariz. 406, 417, ¶ 35, 167 P.3d 93, 104 (App. 2007)).[4] Here, no false statement was made when Plaintiff's mugshot and information was published. Plaintiff makes certain inferences that she wants this Court to adopt. Those inferences, however, are not rooted in fact or law. The information published was identifying information about Plaintiff and her arrest. All of the information was public record and none of it was confidential such that it could not be disseminated as it was. The information published was objectively true. For the reasons stated here and in Defendants' MTD, Plaintiff's claim for defamation fails.

### 3. False Light Invasion of Privacy

Sheriff Penzone had no duty or obligation to determine Plaintiff's guilt prior to the publication of her information. Sheriff Penzone made no false statement or one from which a reasonable person would infer a false statement. Sheriff Penzone did not have reckless disregard for the truth. The information published was factual and true and Sheriff Penzone he makes no findings of guilt of those booked into MCSO jails. Just as if someone requested public records pertaining to any individual's arrest, he released the information. There is no provision that Sheriff Penzone violated any law by publishing the information because the criminal process was not yet complete. Such an argument defies logic. Plaintiff wants to hold Defendants responsible for her embarrassment by attempting to rely on an allegation that a reasonable person would believe the publication of any arrest implies guilt. The unreasonableness of this view is further supported by Plaintiff's claim that even if a disclaimer of the presumption of innocence accompanied the publication, it would be insufficient to absolve Defendants. (Doc. 8 ¶ 70).

As discussed *infra*, based on current case law, posting the mugshot and information on the website has been deemed constitutional. Defendants could not have been on notice

---

[4] Defendants recognize the typo contained in their MTD wherein they cited the elements as conjunctive rather than disjunctive. Defendants apologize for the error but note that it is a difference without distinction as applied to the facts of this case.

of any wrong action when case law dictates their actions were permissible. Plaintiff's claims should be dismissed.

### 4. Infliction of Emotional Distress

Plaintiff's Response relies on an unpleaded and factually incorrect assertion that Sheriff Penzone generates revenue through Google AdSense ads. Not only is this issue not raised in Plaintiff's FAC and as such raising it in her Response is improper, but it is false. Absent any other responsive argument addressing those raised in Defendants' MTD, of which there are none, the claim should be dismissed.

### CONCLUSION

There is no claim in Plaintiff's FAC that states a claim for which relief can be granted. Her attempts to stretch the law to encompass her personal preference should not be considered. For the foregoing reasons, Defendants respectfully request that Plaintiff's FAC be dismissed in its entirety.

**RESPECTFULLY SUBMITTED** this 18th day of March, 2022.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: */s/Courtney R. Glynn*
     COURTNEY R. GLYNN
     MAXINE S. MAK
     Deputy County Attorneys
     *Attorneys for Defendants Maricopa County*
     *and Maricopa County Sheriff Paul Penzone*

### **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Douglas L. Rayes
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 626
401 West Washington Street, SPC 79
Phoenix, AZ 85003-2161

Honorable John Z. Boyle
Magistrate Judge
Sandra Day O'Connor U.S. Courthouse, Ste. 322
401 West Washington Street, SPC 75
Phoenix, AZ 85003-2160

COPY **mailed** to:

Daniel L. Kloberdanz
Kozub Kloberdanz
7537 East McDonald Drive
Scottsdale, AZ 85250
*Attorney for Plaintiff*

/s/ *J. Barksdale*
S:\CIVIL\CIV\Matters\CJ\2021\Levitch v. MC 2021-0400\Pleadings\Drafts\Def Reply ISO MTD Final 03182022.docx