Daniel L. Kloberdanz, #012231
KOZUB KLOBERDANZ
7537 East McDonald Drive
Scottsdale, Arizona 85250
(480) 624-2700
dkloberdanz@bkl-az.com
*Attorney for Plaintiff Julie Levitch*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Levitch, a single woman,<br><br>                              Plaintiff,<br><br>vs.<br><br>Maricopa County, Arizona; Paul Penzone, Sheriff of Maricopa County, Arizona,<br><br>                              Defendants. | **Case 2:21-cv-01418-DLR-JZB**<br><br>**PLAINTIFF'S COMBINED RESPONSE TO:**<br><br>**(1) (DOC 29) DEFENDANTS' MOTION PURSUANT TO FED.R.CIV.P 56(d) TO DENY OR DEFER PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND**<br>**(2) (DOC 28) DEFENDANTS' MOTION TO STAY DEADLINES PENDING DECISION ON MOTION TO DISMISS**<br><br>(*Oral argument requested by Plaintiff*) |

Plaintiff Julie Levitch ("Levitch") respectfully files her Combined Response to (1) (doc 29) Defendants' Motion Pursuant to Fed.R.Civ.P. 56(d) to Deny or Defer Plaintiff's Motion for Partial Summary Judgment; and (2) (doc 28) Defendants' Motion to Stay Deadlines Pending Decision on Motion to Dismiss.

With respect to Defendants' Fed.R.Civ.P. 56(d) motion, Defendants are not entitled to relief they request because the relief under that subsection is available only where Defendants establish that they "cannot present facts essential to justify its opposition" to the subject motion. As will be explained below, in the matter at hand, the facts necessary

to justify an opposition to Plaintiff's Motion for Partial Summary Judgment are all within Defendants' complete control, i.e., the contents of Defendants' own website (mcso.org).

With respect to Defendants' Motion to Stay, Plaintiff will consent to a reasonable forbearance of the Planning Conference and the filing of the Joint Case Management Report. However, Plaintiff adamantly opposes a blanket stay preventing her from conducting discovery in the meantime.1

## I.    Introduction.

To use an old cliché, Sheriff Penzone and Maricopa County want to have their cake and eat it, too. In their Motion to Dismiss (doc 11), the Defendants want this Court to rule on every aspect of Plaintiff's claims as a matter of law. Yet, they oppose Plaintiff filing her own Motion for Partial Summary Judgment (doc 19). As will be explained below, Plaintiff's Motion for Partial Summary Judgment concerns only two legal issues—both of which can be determined by looking at the content of the Sheriff's own official website. Plaintiff seeks no ruling concerning causation, remedies or damages.

In Defendants' Motion to Deny or Defer (doc 29), Defendants ask this Court to *deny* Plaintiff's Motion for Partial Summary Judgment, or in alternative, to rule that Defendants

---

1 Recently (March 22, 2022), Plaintiff served a records subpoena on Google, LLC to obtain records from Google relating to the MCSO website. The information Plaintiff seeks from Google is records that should be made public anyway by Defendants. It appears Defendants are requesting a stay of all discovery, which would prevent Plaintiff from obtaining records relating to the Sheriff's operation of the mcso.org website, including any revenue received from the Google AdSense ads appearing on the website. Not only are these requested records not subject to any privilege, but such records are public records which any citizen should be entitled to obtain regardless of any pending litigation.

need not file a response to Plaintiff's Motion for Partial Summary Judgment until Defendants' Motion to Dismiss (doc 11) is ruled upon by this Court.  Defendants' stated position is not proper grounds for relief under Rule 56(d) (which is entitled "**When Facts Are Unavailable to the Nonmovant**").  As will be explained below, Defendants' claim that they need to first conduct discovery to respond to Plaintiff's Motion for Partial Summary Judgment is based on an erroneous reading of the relief requested in Plaintiff's Motion.

## II.     This Court Can Take Judicial Notice of the Contents of the MCSO Website.

This Court may take judicial notice of the contents on the official MCSO website. *Kater v. Church Downs Incorp*., 886 F.3d 784, 788 n.3 (9th Cir. 2018) ("We grant Kater's motion to take judicial notice of the slideshow, meeting minutes, and pamphlet because they are publicly available on the Washington government website, and neither party disputes the authenticity of the website nor the accuracy of the information); *Daniels– Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein," citing Fed. R. Evid. 201); see *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128 (9th Cir. 2021) (citing *Kater*).

By exercising judicial notice of the MCSO website, this Court can see the two essential facts that are the underlying basis of Levitch's Motion for Partial Summary Judgment:

- On the official MCSO website, the Sheriff digitally publishes the mugshot (i.e., the booking photograph) with other personal identifying information of various arrestees, including birthdates, height, weight, hair color and eye color.

- On the official MCSO website, if one types in names or words into the search field shown on the top of the website (among other places), that user is directed to a display of Google AdSense ads, which if clicked, takes the user off of the website and directly to the websites of the advertisers, which are commercial solicitations from private companies.

III.    **Defendants Have Already Had Five Months to Conduct Discovery**.

Over five months ago (on October 25, 2021), Plaintiff Julie Levitch filed her First Amended Complaint (doc 8) against Defendants Maricopa County and Sheriff Penzone. Levitch filed her original complaint (doc 1) on August 16, 2021, which raised a variety of claims against the Defendants and the City of Phoenix. In her First Amended Complaint, however, Plaintiff substantially streamlined her causes of action by eliminating all of her claims against the City and eliminating all her claims against Sheriff Penzone and the County except for the wrongful publication of her mugshot and personal information on Sheriff Penzone's official website, mcso.org.  This case concerns only that publication.

Defendants chose to file a Motion to Dismiss instead of filing an answer. In their Motion, Defendants request that this Court dismiss all of the Plaintiff's claims as a matter of law. Pursuing a motion to dismiss is the prerogative of Defendants. However, Defendants have no right to prevent Plaintiff from filing her own motion for partial summary judgment while Defendants' Motion to Dismiss is pending, nor to prevent Plaintiff from conducting discovery, including serving subpoenas on third parties that mya provide evidence to validate her position.

-4-

Not only has Plaintiff's counsel taken no action to prevent Defendants from conducting discovery in this matter, but counsel has informed Defendants' counsel in the past that he intends to pursue discovery in this matter. On January 18, 2021, both counsels conferred on the phone and agreed they had satisfied the "confer" requirements under Rule 26(f).   Defendants' counsel took the position that Defendants would not agree to a discovery plan until the Court rules on their forthcoming motion to dismiss.  Defendants' counsel also indicated that Defendants may file a stay. Plaintiff's counsel did not consent to forego discovery or to stay anything. [See confirming emails, Exhibit 1 to Kloberdanz Declaration.]  Plaintiff delivered to Defendants her comprehensive Rule 26 Disclosures on March 10, 2022. Again, Defendants choose to do nothing, which is their prerogative. However, Defendants' decision to forego discovery was done at their own peril.

**IV.    Under Rule 56(b), F.R.C.P., Plaintiff Had the Right to File Her Motion for Partial Summary Judgment.**

Fed. R. Civ. P. 56 (b) (Time to File a Motion) states "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery."  Under the applicable rules, Plaintiff certainly has the right to file her own motion for summary judgment.

**V.    The Relief Requested in Plaintiff's Motion for Partial Summary Judgment Is Very Limited and Has Nothing to Do with Damages, Causation of Any Alleged Harm, or Anything Else Not in the Complete Control of Defendants.**

Curiously, the evidence that Defendants truly need to address Plaintiff's Motion for Partial Summary Judgment is 100% under the Defendants' control. The two issues which Plaintiff seeks a ruling in her Motion concern the content of Sheriff Penzone's website

including the Sheriff's ongoing mugshot gallery. Although Plaintiff alleges her business and personal reputation has been harmed by the Sheriff's wrongful publication of her personal information (as she does in detail in her Notice of Claim and her original and amended complaints), **she does not ask for a ruling from this Court** concerning anything concerning the harm she has suffered.  Likewise, she does not request any determination that the acts of the Sheriff caused her harm. Those issues are for subsequent determination.

The limited relief Levitch requests in her Motion for Partial Summary Judgment is clearly spelled out in the introduction and the conclusion sections of her Motion for Partial Summary Judgment, which state as follows:

> Pursuant to Rule 56(a), Federal Rules of Civil Procedure, Julie Levitch ("Levitch") files her Motion for Partial Summary Judgment against Defendants Maricopa County (the "County") and Sheriff Paul Penzone ("Penzone" or the "Sheriff"). Levitch is entitled to a ruling from this Court as a matter of law on two legal issues relating to the Sheriff's digital publication of Levitch's mugshot and criminal justice record on the official MCSO website: (1) the Sheriff's publication of Levitch's birthdate and other personal information violates Arizona's privacy law, and (2) as difficult as this may be to believe, the Sheriff is using his website and the arrestee's mugshots and personal information for a "commercial purpose" through targeted Google AdSense affiliate advertisements shown on his website.

> ***

> V.   CONCLUSION.

> Levitch is entitled to two rulings as a matter of law: (1) the Sheriff violated Arizona's public records laws by publishing Levitch's personal information, including her birthdate and mugshot, and (2) the Sheriff improperly uses his website and the arrestees' mugshots and personal information for a "commercial purpose" through the use of Google AdSense affiliate advertisements, and therefore, Sheriff Penzone is a "Mugshot website operator" pursuant to Arizona's Mugshot Operator Website Act, A.R.S. § 44-7901 *et seq*.

[Plaintiff's Motion for Partial Summary Judgment (doc 19), pages 1 and 17.]  As this Court can see, Levitch does not ask for any relief in her Motion from this Court which involves the basis of the relief requested in the Declaration of Defendants' counsel (doc 29-1). Again, she does not request any ruling relating to causation of her harm or damages.

**VI.    Plaintiff Properly Alleged the Public Records Issue in her First Amended Complaint, And Also Specifically Alleged that Sheriff Penzone was Improperly Using the Mugshot Website to Promote the Sheriff Without Advancing a Legitimate State Interest to Justify the Publication of Such Personal Data.**

Incredibly, in their Motion to Deny Plaintiff's Motion for Summary judgment (doc 29), Defendants argue Plaintiff did not properly raise the public records issue in her First Amended Complaint. Plaintiff requests that this Court examine some of the expressed allegations made in Plaintiff's First Amended Complaint (doc 8) concerning Defendants' publishing of her mugshot and personal information on the internet:

> 21.    **Levitch' mugshot (which included her full name and birthdate among other information) was posted on the official Maricopa County Sheriff website either while she was in custody or within hours of her release**. Specifically, prior to being released on her own recognizance, the County, through its Sheriff Paul Penzone, who upon information and belief was the final decision-maker for the County's mugshot policy, published Levitch's booking mugshot on the Sheriff's official website, along with over one hundred other individuals who had been arrested on or about that same day.  **The photo of Levitch was coupled with personal data, including Levitch's full name, height, weight, and birthdate.**
>
> ***
>
> 29.    As Levitch was of no risk to the community, **there was no justifiable reason for Penzone or the County to publish her mugshot photo online, including her name and birthdate.**
>
> 30.    Upon information and belief, **the mugshot gallery on the website serves the function of promoting law enforcement agencies at the expense of ridiculing and shaming those persons who have yet to**

**be convicted of any crime**, including individuals, like Levitch, who ultimately have their cases dismissed.

\*\*\*

37.     **Penzone and the County's posting of Levitch's mugshot and personal information were published without any due process whatsoever**.

38.     Upon information and belief, **the posting of Levitch's mugshot did not advance any legitimate state interest but was motivated by the desire of Sheriff Penzone and Maricopa County to promote themselves at the expense of the rights of citizens such as Levitch.**

39.     Upon information and belief, both Penzone and the County are jointly responsible for the posting of this mugshot which appeared on the official MCSO website.  Upon information and belief, **the County publishes the mugshots at the expense of those persons arrested**, **for the sole purpose to promote its organization and to punish those persons who are arrested** without the necessity of proving probable cause for the arrest and without the necessity of allowing the defendant any opportunity to prove his or her innocence.

\*\*\*

43.     **The publishing on the internet of Levitch's mugshot and personal information was unwarranted under the circumstances and was objectively unreasonable when comparing or balancing the interests of the State.**

\*\*\*

55.     **Defendants Penzone and the County engaged in wrongful conduct for an impermissible motive and with malice due to the fact that Penzone, acting as the policy-maker for the County, caused to be published booking [sic] various photographs on the MCSO website along with personal information of persons who are supposed to be presumed innocent under the law.**

\*\*\*

58.     In its totality, Defendants' entire course of conduct against Plaintiff, as set forth in this Complaint, was arbitrary, irrational, extreme, outrageous, **unjustified by any governmental interest**, beyond all possible realms of decency; such conduct also shocks the conscience of the Court and constitutes a gross abuse of governmental authority. **In other words, there is no legitimate state interest in publishing mugshots of persons such as Levitch.**

\*\*\*
## COUNT THREE
### (SLANDER, DEFAMATION,
### FALSE LIGHT, AND INVASION OF PRIVACY)

61.     Shortly after her arrest, **Levitch' personal information and mugshot were posted on the official Maricopa County Sheriff website, which is publicly accessible on the internet.**

62.     Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Here, the following elements occurred to establish a defamation cause of action: (1) a false and defamatory statement concerning Levitch; (2) **an unprivileged publication to a third party**; (3) fault (negligence or greater) on the part of the publisher, the County of Maricopa; and (4) resulting injury. Restatement (Second) of Torts §558 (1977).

\*\*\*

66.  **Because Levitch' mugshot and personal information were posted by the Penzone and the County on the official MCSO website, this information was readily made available to the public**, and was easily copied and republished on many other websites.

\*\*\*

68.     **The publishing of Plaintiff's mugshot and other information by the County, was done without any due process to Levitch**, and is defamatory because it conveys a false message that she has committed a crime, which she adamantly denies.

\*\*\*

70.     Levitch alleges that even if the website had contained a disclaimer which states a presumption of innocence, such a disclaimer would be inadequate to satisfy such person's constitutional rights.  Levitch further alleges that, although she adamantly claims her innocence of the charges, even if she had committed a crime, **the posting of her mugshot and personal information on the internet without due process violates her constitutional rights.**

71.     **The posting of such a mugshot and other personal information is libelous on its face.** The website clearly exposes Levitch to hatred, contempt, ridicule, and public disgrace.

\*\*\*

74.     **The portion of the MCSO website with the mugshots is available to the general public and is promoted by the MCSO on its**

**main   website,   with   a   specific   link   to   "Mugshot   Lookup."** (Emphasis added)

In Defendants' Motion to Dismiss (doc 11), Defendants argue *"Posting the mugshot did not violate the United States Constitution or any Arizona law*." Defendants further argue in their Motion to Dismiss, "*Here, however, mugshots are public records under Arizona law . . . As such, no privacy interest is implicated, and Defendants were permitted to provide the mugshot to the public*."  Defendants further argue at page 7, "*She is not owed due process where no property interest exists nor is she owed due process in the release of that which is considered a public record*." [Defendants' Motion to Dismiss, pages 5 and 7]

In Plaintiff's Response (doc 18) to that Motion to Dismiss, Plaintiff asserted the Sheriff's publication of her mugshot and personal information on the internet did in fact violate Arizona law, citing caselaw from both Arizona and other jurisdictions.

Specifically, Plaintiff argued that in *Scottsdale Unified*, the Arizona Supreme Court applied the state interest balancing test for public records and determined that even though the birthdates of teachers are part of the "public record," the privacy interests of individual teachers take precedence over any possible state interest favoring disclosure. *Scottsdale Unified School District No. 48 of Maricopa County v. KPNX Broadcasting Co*., 191 Ariz. 297, 301-03 (1998). The court made such a determination even though the party seeking the information claimed the birthdates were necessary to run criminal background checks on teachers in public schools. *Scottsdale Unified,* 191 Ariz. at 301-03.

Plaintiff further argued that in *Griffis v. Pinal County*, 215 Ariz. 1, 3-4 (2007), the Arizona Supreme Court held "Disclosure of purely private documents does nothing to

advance the purposes underlying the public records law" and to the extent a record is deemed to be public, the court must perform the *Carlson* balancing test to determine whether "privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure."

Apparently unphased by anything the highest court in this State may have held, in Defendants' Reply to Motion to Dismiss (doc 25, at page 12), Defendants again argue that "*. . . there is no authority that dates of birth, as a matter of law, are confidential. As such, the records published on the website were public records without any prohibition on their release*."

Plaintiff Levitch has alleged in her First Amended Complaint, *ad nauseam*, that the Sheriff's publication of Levitch's mugshot and personal information to the public on the internet was done so not only without due process, but also without advancing any legitimate state interests. [FAC, Paragraph 43 - "*The publishing on the internet of Levitch's mugshot and personal information was unwarranted under the circumstances and was objectively unreasonable when comparing or balancing the interests of the State*."]

The allegations quoted above from Levitch's First Amended Complaint are *precisely* the balancing test required under Arizona's public records law that Plaintiff advances in her Response to Motion to Dismiss, and to which Defendants attempt to ignore or circumvent.  Levitch has clearly alleged in her First Amended Complaint there is no valid state interest in the Sheriff publishing her mugshot and personal information to the public. [First Amended Complaint, paragraphs 29, 30, 37-39, 43, 58, 72, and 77.]  The law argued in Plaintiff's Response (doc 18) is the law that this Court must apply in this matter.

**VII.   This Court Should Take Judicial Notice of the Google AdSense Ads that Clearly Appear on the Official Mcso.org Website.**

Plaintiff encourages this Court to take judicial notice of the MCSO website (mcso.org). There are several ways to reach the search tool on the website, including from the top of the website's "Mugshot Lookup" page. But the quickest way is to open the mcso.org homepage and right-click the blue magnifying glass search tool icon in the upper right-hand corner, as shown below (note, on a mobile device, the search appears at the top):



Upon clicking the blue box, a search field appears as follows:



1   With virtually any search words, this search field will take the website visitor to a
2   display of Google AdSense ads for private advertisers. Here is a screenshot of the results
3   after typing in the words "Julie E Levitch" (performed on March 23, 2022):
4



17  Notice that the search results show Google AdSense ads, as shown by the word "**Ad**" in
18  the green square next to the URL (uniform resource locator, https://) for the private
19
20  websites.
21   When one right-clicks on any of the ads displayed on the MCSO website, the user
22  is directed from the MCSO website to the private website. In this instance, the ads are for
23
24  two reputation management companies. Here is what happens when one right-clicks the
25  top ad shown on the mcso.org search results (for the private website Truthfinder.com). That
26  user is directly taken to the website that warns it has found a possible criminal record
27
28  associated with the name Julie Levitch:

-13-

In Defendants' Reply to Motion to Dismiss, Defendants refer to Plaintiff's allegations concerning the existence of Google AdSense ads on the MCSO website as "bizarre and unfounded" (doc 25, page 2) and even go so far as to state "it is false" (doc 25, page 16). Of course, Defendants present no evidence to support such a brazen accusation that completely contradicts the contents of its own website.

Because this Court can take judicial notice of the contents of the MCSO website, this Court can (and should) entertain Plaintiff's request for a ruling as a matter of law that the Sheriff's website is being used for a commercial purpose.

**VIII.  Plaintiff Has Sufficiently Alleged in Her First Amended Complaint that the Sheriff Is Improperly Using the Mugshot Website to Promote the Sheriff, with Malice, and Without Advancing Any Legitimate State Interest.**

Plaintiff alleges the Sheriff is using his website for a commercial purpose and thus in violation of the Arizona Mugshot Operator Act, A.R.S. § 44-7901, *et seq.*  Defendants are correct that Plaintiff did not specifically allege a violation *of that statute* in her First

-14-

Amended Complaint. However, as quoted earlier in this response, Plaintiff does allege in her complaint that the Sheriff publishes mugshots "for the sole purpose to promote its organization . . ." and ". . . the mugshot gallery on the website serves the function of promoting law enforcement agencies at the expense of ridiculing and shaming those persons who have yet to be convicted of any crime." Levitch also alleges in her complaint the Sheriff is improperly using the mugshots to promote itself "with malice" and "with an improper motivation" while advancing no legitimate state interests to justify publishing such personal information. [First Amended Complaint (doc 9), paragraphs 29-30, 38-39, 43 and 55.]

The allegations in Plaintiff's First Amended Complaint are more than sufficient to allow Plaintiff to demonstrate to this Court that as part of Sheriff Penzone using mugshots to promote his office, the website is in fact being used for a commercial purpose because *somebody* is generating revenue from the internet traffic on that website. 2

Under applicable law, Levitch is not required to cite a specific statute in her complaint in order to state a valid basis for a § 1983 action under that statute. In *Mulleneaux v. State*, 190 Ariz. 535 (Ariz. App. 1997), citing Ninth Circuit caselaw, the Arizona Court

---

2 For purposes of Plaintiff's Motion for Partial Summary Judgment, it makes no difference how much money the Sheriff is generating from the ads, nor does it matter where that Google AdSense revenue is ultimately being paid. All that matters at this point is that the MCSO website is being used for a commercial purpose. Without any evidence, Defendants simply deny the allegations by calling it "false," presumably hoping this Court will not ever actually look at the website. The fact that Defendants want to stay discovery on this issue (which is all a matter of public record anyway) should make this Court very suspicious as to the true motivation behind Defendants' current motions.

of Appeals held it is not necessary for the plaintiff to state in the complaint the statutory

basis for a claim as long as the underlying facts are alleged:

> The complaint, read broadly, has alleged the deprivation of a constitutional right. A deprivation of a constitutional right is sufficiently pled in a § 1983 action if facts are alleged "which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law...." *Lopez v. Department of Health Servs.*, 939 F.2d 881, 883 (9th Cir.1991). **It is not necessary "to state the statutory or constitutional basis for" a claim as long as the underlying facts are present.** *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir.1990), cert. denied, 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992).

*Mulleneaux v. State*, 190 Ariz. 535, 540 (Ariz. App. 1997) ("He should not be required here

[in the complaint] to plead his evidence."); *Skinner v. Switzer*, 562 U.S. 521, 528, 131 S.Ct.

1289, 1296 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not

pin plaintiff's claim for relief to a precise legal theory."); *Alto v. Black*, 738 F.3d 1111 (9th

Cir. 2013) (A plaintiff "is not required to state the statutory or constitutional basis for his

claim, only the facts underlying it").

Here, although at the time Plaintiff filed her complaint she was not aware Sheriff

Penzone had actually monetized his website with Google AdSense ads, she duly alleged in

her complaint that the Sheriff was improperly using the mugshots on his website for the

Sheriff's own promotion, without advancing any valid state interests. Levitch further duly

alleged in her complaint that Sheriff Penzone, acting as the policy-maker for the County,

engaged in wrongful conduct "for an impermissible motive" and "with malice" by

publishing those mugshots along with personal information on the MCSO website. These

allegations are sufficient to state a constitutional claim based on the improper commercial

use of the Sheriff's website – this commercial use further proves the Sheriff's malice and the lack of a legitimate state interest in publishing that personal information on the internet.

**IX.   Conclusion.**

Julie Levitch is entitled to pursue her own Motion for Partial Summary Judgment to have this Court determine that Defendants have violated Arizona law concerning Levitch's privacy rights relating to the Sheriff's digital publication of her personal information on the internet (including her birthdate), and to determine as a matter of law there is no legitimate state interest for the Sheriff to publish such personal information.

Next, because the Sheriff is undeniably using Google AdSense advertisements on his website, Plaintiff also has the right to request a ruling that Sheriff Penzone is using his website for the anticipation of financial gain, i.e., the Sheriff's website is being used for a commercial purpose including as that term is defined under the Arizona Mugshot Act, A.R.S. § 44-7901, *et seq*.

It is the content of Defendants' website that gives rise to both of the legal issues raised in Plaintiff's Motion for Partial Summary Judgment. Obviously, any facts relating to Defendants' website are readily available to Defendants. Thus, there is no valid reason for Defendants to stay discovery or to preclude this Court from ruling on Plaintiff's Motion.

RESPECTFULLY SUBMITTED this 31st day of March 2022.

**KOZUB KLOBERDANZ**

By:  /s/ Daniel L. Kloberdanz
      Daniel L. Kloberdanz
      7537 East McDonald Drive
      Scottsdale, Arizona 85250
      *Attorneys for Plaintiff Julie Levitch*

1
2

**CERTIFICATE OF SERVICE**

3   I hereby certify that on March 31, 2022, I caused the foregoing document to be

4   electronically transmitted to the District Clerk's Office using the CM/ECF System for

5   filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

6
7   The Honorable Douglas L. Rayes
    United States District Court Judge
8   Sandra Day O'Connor U.S. Courthouse, Ste. 626
    401 West Washington Street, SPC 79
9   Phoenix, AZ 85003-2162

10  The Honorable John Z. Boyle
    United States District Magistrate Judge
11  Sandra Day O'Connor U.S. Courthouse, Ste. 322
    401 West Washington Street, SPC 75
12  Phoenix, AZ 85003-2161
13
14  Maricopa County Attorney
    c/o Courtney R. Glynn and Maxine S. Mak
15  Deputy County Attorneys
    225 West Madison Street
16  Phoenix, Arizona 85003
17
18  By: /s/ Daniel L. Kloberdanz
19
20
21
22
23
24
25
26
27
28