RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: COURTNEY R. GLYNN (023155)
MAXINE S. MAK (031158)
Deputy County Attorneys
glynnc@mcao.maricopa.gov
makm@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
MCAO Firm No. 00032000

*Attorneys for Defendants Maricopa County,*
*and Maricopa County Sheriff Paul Penzone*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Levitch, a single woman<br><br>Plaintiff,<br><br>vs.<br><br>Maricopa County, Arizona;Paul Penzone, Sheriff of Maricopa County, Arizona ;<br><br>Defendants. | NO. CV21-01418-PHX-DLR (JZB)<br><br>**DEFENDANTS MARICOPA COUNTY AND SHERIFF PAUL PENZONE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Defendants Maricopa County and Sheriff Paul Penzone ("Defendants"), by and through undersigned counsel, hereby move to dismiss Plaintiff's Second Amended Complaint ("SAC") (Doc. 43), pursuant Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  ("Motion").

This Motion is supported by the following Memorandum of Points and Authorities, and the complete record before this Court.

A certificate of conferral pursuant to LRCiv 12.1(c) is separately filed. The Parties are unable to agree on an amendment that would cure the identified defects in the SAC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  FACTUAL BACKGROUND

Plaintiff was arrested by the City of Phoenix Police Department on August 20, 2020, for criminal damage. (Doc. 43, ¶19). She was booked into the Maricopa County Sheriff's Office Jail on the same day. When she was booked, her mugshot was taken and that along with her name, birthdate, and other information were uploaded to the Mugshot Lookup section of the MCSO website. (*Id*., ¶22). Plaintiff was released from MCSO custody on August 23, 2020, and her criminal charges were ultimately dismissed. (*Id*., ¶20). The information on the Mugshot Lookup website was published for approximately three days. (*Id*., ¶22).

### II.  PROCEDURAL BACKGROUND

On August 17, 2021, Plaintiff filed her initial Complaint (Doc.1). After consultation with the parties to that Complaint, Plaintiff filed her First Amended Complaint. (Doc. 8). On January 24, 2022, Defendants filed their Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 13). The Motion was fully briefed on March 18, 2022. (Doc. 27) and the case was stayed pending resolution of that Motion on May 17, 2022. (Doc. 36). Plaintiff filed three Motions for Partial Summary Judgment while the Motion to Dismiss was pending. (Docs. 19, 37, and 38). In response to each of those Motions for Partial Summary

Judgment, Defendants filed Motions pursuant to Federal Rule of Civil Procedure 56(D). (Docs. 29, 39, and 40).

On August 24, 2022, this Court granted Defendants Motion to Dismiss in part, dismissing Plaintiff's federal claims, and denied it in part as moot as to the remaining state law claims.[1]   (Doc. 42).  Plaintiff's First Amended Complaint was dismissed without prejudice and she was granted leave to amend, which has resulted in her SAC.  (Doc. 43).

## III.   STANDARD OF REVIEW

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) may be based on either "'a lack of cognizable legal theory'" or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  The factual allegations contained in the Complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant.  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

However, conclusory allegations will not survive a motion to dismiss.  *Luca v. Scalzo*, 892 F.2d 83 (9th Cir. 1989).  Legal Conclusions are not entitled to any consideration by this Court as being effective to rebut the arguments in Defendants' Motion.  In fact, to overcome against Defendants' Moton, Plaintiff must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009); see *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[1] The Court declined jurisdiction over Plaintiff's state causes of action because it dismissed her federal causes of action.  (Doc. 42, p. 1, fn 2).

544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV.   LEGAL ARGUMENT

This Court previously granted Defendants' Motion to Dismiss citing Plaintiff's failures in stating a claim as to her federal causes of action.  (Doc. 42).  Plaintiff has now filed a SAC that cures none of the defects previously identified by the Court.

### A.  ARIZONA PUBLIC RECORDS LAWS DO NOT APPLY.

Plaintiff asserts two federal counts and four state law counts. Plaintiff attempts to deeply intertwine Arizona's Public Records Law with all of the counts in her SAC, including her federal claims; therefore, Defendants address it first. Plaintiff's application of the law is sweeping and extends outside the bounds of its authority.

In it's 15-page Order dismissing Plaintiff's FAC, this Court noted that, "at most, Arizona's public records laws only *prohibit* the *withholding* of certain information upon proper request." (Doc. 42, p. 9, fn 7).  This case is not about the withholding of information in response to a Public Records Request or even a FOIA request.  This case is not even about a FOIA or public records request at all.  It is about the provision of a public record to the public.  Plaintiff wants the existence of her arrest to remain private and attempts to contort the law to ease her embarrassment.  In doing so, she has attempted to invoke an inapplicable law.

As Plaintiff correctly notes in her SAC, the purpose of Arizona's public records laws is to open government activity to the public.

A.R.S. 39-121.01(B) states that:

> All officers and public bodies shall maintain all records, including records as defined in section 41-151, reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities that are supported by monies from this state or any political subdivision of this state.

The very purpose of the public records laws is to maintain the accessibility of government records.  This case is not about the restriction of what the public is entitled to under the law; rather, Plaintiff seeks to place certain limitations on the law where those do not exist.  The Arizona public records laws do not apply in this instance given that this case is not about a request for public records that has been denied by the government.  It is about the publication of a public record that Plaintiff wishes was not public.  This does not fall within the purview of Arizona public records laws.

However, *assuming arguendo* that Arizona public records law does apply, Plaintiff's claim still fails. Plaintiff attempts to argue that while the information, primarily her date of birth, is a public record, it is confidential by law.  In doing so, she relies on *Scottsdale Unified School District No. 48 of Maricopa County v. KPNX Broadcasting Co.*, 191 Ariz. 297 (1998) for the state-creation of a privacy right.  Plaintiff admits that dates of birth are public record under Arizona law. (Doc. 43, ¶210).  There are instances wherein dates of birth are public; therefore, they cannot be deemed confidential in all matters as a matter of law.  As Defendants pointed out in their initial Motion to Dismiss (Doc. 13, p. 11), the fact that dates of birth are not confidential as a matter of law is further evidenced by the Superior

Court of Maricopa County's own Criminal Court Case Information Lookup website.[2] Not only does the Superior Court allow cases to be looked up by a date of birth (coupled with a first and last initial), even where cases are searched by name alone, the responsive defendants' dates of birth (month and year) appear in the search results. Defendants do not offer this as evidence that dates of birth are available from other public sources. Rather, Defendants use this to show that there are instances where release of dates of birth are permissible. Thus, the dates of birth are not considered confidential at all times as a matter of law. There is no blanket prohibition on the release of an individual's date of birth and *Scottsdale* does not create one. Thus, Plaintiff's claims should be dismissed.

Even if this Court were to find a privacy interest in Plaintiff's date of birth, the question then becomes whether based on the circumstances of the case at issue, the privacy interest is sufficient to outweigh disclosure, which is presumptively required where public records are concerned. *Scottsdale*, 191 Ariz. at 302. Plaintiff relies on her embarrassment about her arrest as evidence that such information should be deemed confidential. As it relates to the constitutional analysis of whether a privacy right exists, Defendants discuss that issue in Section B(i) *infra*.

---

--

---

[2]Judicial Branch of Arizona, Maricopa County, Criminal Case Information website: Docket: Criminal Court Case Information (maricopa.gov). This Court may take judicial notice of government documents on a government website. *Kater v. Church Downs Incorp*., 886 F.3d 784, 788 n.3 (9th Cir. 2018); *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128 (9th Cir. 2021)

**B.  PLAINTIFF'S FEDERAL CLAIMS FAIL TO STATE A CLAIM.**

Plaintiff asserts two federal claims – violation of procedural due process rights and violation of her substantive due process rights.  Defendants take each in turn.

**i.      Plaintiff's Procedural Due Process Rights were not Violated.**

Plaintiff argues that a state-created privacy right was violated when Defendants published her mugshot and information, particularly her mugshot and date of birth, on the Mugshot Lookup website.  She argues that this was a violation of her procedural due process rights through the Fourteenth Amendment.  However, there is no constitutional right to privacy in the information raised in Plaintiff's SAC at a federal or state level and thus, Plaintiff's SAC must be dismissed.

Plaintiff holds out *Scottsdale Unified School District No. 48 of Maricopa County v. KPNX Broadcasting Co.*, 191 Ariz. 297 (1998) for the creation of a state-created privacy right. (Doc. 43, ¶ 163).  Plaintiff admits that dates of birth are public record under Arizona law. (Doc. 43, ¶210). Plaintiff wants *Scottsdale* to establish that all dates of birth are confidential as a matter of law in all matters at all times.  This is inherently incorrect and misapplies the holding in *Scottsdale*.

In the approximately 16 pages wherein she alleges violations of her procedural due process rights, she argues that Defendants violated well-established public records laws and failed to provide her with due process in publishing the mugshot and information.  She asserts, as she did in her FAC and Response to Defendants initial Motion to Dismiss, that she was entitled to some determination of guilt before the information pertaining to her

arrest was made public.  However, she wholly fails to provide any authority for such a proposition.

*Paul v. Davis*, 424 U.S. 693 (1976) is binding precedent in the Ninth Circuit on the issue of the constitutionality of the publication of arrest information.  In *Paul*, the plaintiff's name and photograph appeared on a flyer captioned "Active Shoplifters" that was distributed among merchants by the police.  Paul claimed that his employment opportunities were negatively impacted by this distribution.  The Supreme Court found that distributing the flyer did not deprive the plaintiff of any liberty or property rights secured by the due process clause nor did the flyer deprive the plaintiff of a right to privacy.

As this Court opined, *Paul* requires that "procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of a 'right or status previously recognized by state law.'"  (Doc. 42, p. 8, citing *Paul*, 424 U.S. 693, 711).  This has become known as the "stigma plus" test. *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008).  As such, she must allege that she suffered some "stigma" and that a result of that stigma, "a right or status previously recognized by state law was distinctly altered or extinguished."  *Id.* at 1186.

*Assuming arguendo* that Plaintiff has "a recognized state law privacy interest" pursuant to *Scottsdale* as she purports, she has not sufficiently alleged that anything beyond her reputation has been harmed.  Though this Court advised Plaintiff that mere reputational harm is insufficient, she only claims that she "has suffered special damages for injury to her reputation and to her profession and occupation as a writer on the internet."  (Doc. 43, ¶54). She does not allege any specific damages that have resulted from this reputational harm.

Additionally, as in *Paul*, even though any alleged injury Plaintiff suffered flowed from the publication of the mugshot and information, the injury is incidental to others looking at the internet.  (Doc. 42, p. 9).  As this Court noted, there was no law that *required* Defendants to post her information on the website nor was there any law that required anyone else to view it.  (Doc. 42, p. 9); *See Humphries*, 554 F.3d at 1187.  Plaintiff's alleged injuries are because someone looked at factual information on the internet and formed opinions about it, not because her rights were violated.

To the extent Plaintiff argues that there was no legitimate purpose in publishing the information, Plaintiff is wrong.  Provision of dates of birth in instances such as Plaintiff's allows Defendants to identify with specificity those who are booked into their jails for identification purposes rather than allow confusion among people with same or similar names.  Many people have similar names and even physical descriptions.  Some people have the same name and even the same date of birth.  The information provided gives a more complete picture in order to correctly identify those who have been booked into MCSO jails.

The right to disclose and/or disseminate such information has been recognized and found not to invoke a privacy right.  *Fugate v. Wickenburg Police Dept.*, 2011 WL 318115, at *3 (D. Ariz. Feb. 1, 2011), states that "government disclosures of arrest records, judicial proceedings, and information contained in police reports do not implicate the right to privacy."  *Id*. (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (citations omitted) (citing *Paul v. Davis*, 424 U.S. 693, 712-14 (1976)); a*ccord Hammons v. Scott*, 423 F.Supp. 625, 628 (N.D. Cal. 1976) (applying *Paul* to hold that the maintenance, use,

and dissemination by state and federal officials of arrest records of individuals never convicted of a criminal charge based on the conduct for which they were arrested does not violate right to privacy).

Plaintiff again relies on a series of cases that are not authoritative nor are they factually similar to her case while discarding the United Supreme Court in *Paul*. Plaintiff raises *Karantsalis v. U.S. Department of Justice*, 635 F.3d 497 (11th Cir. 2011); *World Publishing Co. vs. U.S. Dep't of Justice*, 672 F.3d 825 (10th Cir. 2012); *Detroit Free Press, Inc. v. U.S. Dep't of Justice*, 829 F.3d 478)) to support her various allegations. These cases are not only not authoritative, but they also do not apply because this is not a case about the Freedom of Information Act ("FOIA") or the denial of records under public records laws.

All three cases are wholly distinguishable to the case at hand. First, all three cases are from outside the 9th Circuit. Second, Plaintiff's case is not a case about the denial of records pursuant to a public records request or a FOIA request and whether the records meet the criteria of a specific FOIA exemption. All three of her cited cases are. Third, all three of the cited cases center on requests for booking photographs belonging to the U.S. Marshal's Service, which deems its booking photographs not generally available to the public. It is even the *Karantsalis* court that stated that the U.S. Marshal's determination was a factor supporting a privacy interest in the booking photograph. (See *Karantsalis*, 635 F.3d at 503). This point was further echoed by the *World Publishing, Co.* court. (*World Publishing Co.*, 672 F.3d at 829). That factor is absent from Plaintiff's case.

Plaintiff also cites to *Reporters* for the premise that her information should not have been published because in that case, all criminal "rap sheets" met the criteria for an

exemption from *disclosure under a specific exemption of FOIA*. (Doc. No. 18, p. 14: 14-18) (emphasis added).  This is a case about whether the publication of Defendants' records violated specific constitutional rights and state laws as identified in Plaintiff's SAC, not whether they were *properly denied* under the authority of a FOIA or public records request. *Reporters* analyzes whether a specifically created FBI "rap sheet" was exempt under Exemption 7(C) of FOIA.  The court specifically analyzed the issue through the lens of a specific exemption under FOIA.  The analysis in this case is entirely different.  The information that was published in this case was not an FBI "rap sheet" as outlined in *Reporters* nor was it sought pursuant a FOIA request or a public records request, which was then denied.  Plaintiff consistently argues that this case should be analyzed using factually and legally distinguishable cases involving the denial of records pursuant to federal or state public records law.

Defendants have established that Plaintiff has no privacy interest in the information that was published.  Plaintiff was not entitled to any due process before the publication of a public record.  Her arguments stem from her desire to keep the fact of her arrest private and she attempts to bend the law to achieve her goal.  Plaintiff has failed to state a claim for a violation of her procedural due process rights.

> ii.     **Publication was not a Form a Punishment and no Substantive Due Process Violations Occurred.**

Plaintiff alleges that the publication of her mugshot and information was a form of pretrial punishment.  This claim is not supported by fact or law.  Plaintiff asserts that the publication of this information is meant to punish and humiliate those arrested for crimes.  There is no evidence to support such a spurious claim.  Plaintiff appears to purport that in

order for an *arrest* to be made public knowledge, the individuals should first be adjudicated guilty. There is no authority for this proposition. While Plaintiff may be embarrassed and feel some humiliation as a result of her arrest, Defendants did not report on anything inaccurate or do so in an impermissible way. In fact, Defendants merely published public factual information.

There are two elements to analyze a substantive due process claim:

First, the right alleged to have been violated must be deeply rooted in the Nation's history and tradition such that neither liberty nor justice would exist if it was sacrificed. Second, there must be a careful description of the asserted fundamental liberty interest. *See Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). As this Court noted in its Order, the Supreme Court has cautioned against this doctrine's expansion. (Doc. 42 p. 10), citing *Glucksberg* at 720 (stating that the Court must restrain the expansion of substantive due process "because guideposts for responsible decision-making in this uncharted area are scarce and open-ended" and because judicial extension of constitutional protection for an asserted substantive due process right "place[s] the matter outside the arena of public debate and legislative action" (citations omitted)); *Reno v. Flores,* 507 U.S. 292, 302 (1993) (noting that "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field" (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992))). When evaluating a substantive due process claim, *Glucksberg* instructs that substantive due process requires a "careful description of the asserted fundamental liberty interest." *Glucksberg,* 521 U.S. at 721 (quotation and citations omitted); *see also Flores,* 507 U.S. at 302 (noting that the asserted liberty interest must be construed narrowly

to avoid unintended consequences).  Plaintiff's purported liberty interest is not carefully described nor is it narrowly construed.  Plaintiff argues that mugshot information should not be published even if it is a public record unless or until the arrestee is adjudicated guilty. There is no carefully described right established here.  The application of her purported arguments is also sweeping in nature.  To grant Plaintiff the interpretation she seeks would turn public records, law enforcement, and criminal processes on their heads.

Plaintiff has failed to allege or provide any facts to support that her asserted fundamental liberty interest is "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed."  (Doc. 42, p. 11).  There is no evidence that an individual has a right to privacy in her arrest information that is deeply rooted in history or tradition.  If anything, disclosure and transparency have been the history and tradition courts and legislators have tried to attain.  Plaintiff's arguments are not deeply rooted at all as evidenced by the lack of authority on the issue.  Likewise, she has provided no facts or support in her threadbare allegations that liberty and justice would not exist if her alleged right to privacy in her arrest information was sacrificed.  Because publishing the information was not unconstitutional, no rights are sacrificed and neither liberty nor justice are in danger of being extinguished.

Plaintiff cannot establish that Defendants' actions were imposed for the purpose of punishment as required by *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); (Doc. 42, p. 11). Plaintiff attempts to argue away Defendants' legitimate purposes for publishing the information, attempting to rely on *Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004).  But in

doing so, Plaintiff grossly misstates and misapplies the ruling in that case. In *Demery*, the Court found that live-streaming inmates within the jail and allowing reporters to be present at the execution of a search warrant constituted punishment. Plaintiff's claim that the arguments made in that case are similar to those made here – "that the sheriff has a right to notify the public concerning the activities of the jail" is far afield from the truth. Plaintiff's couching of the argument is highly misrepresentative of not only the holding in *Demery* but the facts and arguments in this case.

Unlike in Demery, here, Defendants published that which was already a public record by law. Plaintiff can point to no authority to refute this. Defendants' actions do not constitute retribution or deterrence, nor do they hold them out to be such. There is no evidence that Defendants actions of providing that which the law mandates it must keep open for the public, is in any way punishment. Again, Plaintiff operates off her own embarrassment and asks that the Court change the law to accommodate it.

Plaintiff relies on the analysis in *Bell* to argue that Defendants' actions amounted to punishment, stating that if publication of the mugshot and information on the internet is not reasonably related to a legitimate nonpunitive goal, then a court can infer that it was punishment. However, Plaintiff puts the cart before the horse. First, the information published was public information. It was subject to dissemination, public records requests, and inspection. Providing that which Defendants are required to maintain and keep public is not a form of punishment. Second, as Defendants cite *supra*, *Paul* has been applied to hold that the maintenance, use, and *dissemination* by state and federal officials of arrest records of individuals never convicted of a criminal charge based on the conduct for which

they were arrested does not violate right to privacy. *Hammons v. Scott*, 423 F.Supp. 625, 628 (N.D. Cal. 1976) (emphasis added).  Finally, Defendants have provided a legitimate purpose in providing public information – the ability to properly identify those who are arrested to avoid confusion with those similarly named and/or described.  Plaintiff is unable to point to how the publication is punishment.

Plaintiff has not alleged how posting her mugshot and information amounted to a "restriction" for the purposes of a substantive due process analysis or that any alleged "punishment" was more than de minimis as is permissible under *Bell*.  *Id*. at 539, n. 21. Plaintiff's threadbare allegations that simply by publishing the information, Defendants have punished her and violated her substantive due process rights is insufficient to state a claim.

### C.  STATE LAW CLAIMS

Plaintiff asserts four counts of state law violations.   Defendants address the applicability of the Arizona Public Records Law *supra* and address the remaining state law arguments here.

### i.      Invasion of Privacy and False Light

In order to state a claim for false light invasion of privacy, Plaintiff must allege that the false light in which she was placed would be "highly offensive to a reasonable person" and that Defendants "published [the matter] with knowledge of the falsity or reckless disregard for the truth." *Godbehere v. Phoenix News., Inc.,* 162 Ariz. 335, 783 P.2d 781, 786 (1989).  "A plaintiff may bring a false light invasion of privacy action even though the publication is not defamatory, and even though the actual facts stated are true." *Id.* at 787.

Here, it is undisputed that the information posted on the MCSO website is true. Plaintiff claims that truthful reporting of her arrest implies her guilt of the crime for which she was arrested.  Plaintiff is wrong.  Defendants are not responsible for trying Plaintiff or determining Plaintiff's guilt.  She was arrested by another law enforcement agency and booked into MCSO's jails.  That information was posted with no commentary as to the guilt of any of the individuals who had been arrested and whose mugshots and information were posted on the website.  It was a publication of factual events.  Plaintiff's interpretation of how this placed her in a false light is not reasonable.  Plaintiff claims that the website conveys to any reasonable reader that the persons on the website were guilty of a crime or likely to be guilty of a crime.  However, no reasonable reader would conclude that every single person listed on a website of arrests is guilty of the crime for which they were arrested.

Further, as it relates to Defendants' knowledge of falsity or reckless disregard for the truth, Plaintiff fails to establish this burden as well.  As Defendants' role does not include determining Plaintiff's guilt, they would not have the knowledge of this false implication, nor would it act with the requisite reckless disregard for the truth.  Their function, in this instance, was to receive an individual who was arrested and book them into their jails.  As part of that booking, Plaintiff's record of arrest was published.  Plaintiff wants to hold Defendants responsible for her embarrassment by attempting to rely on an allegation that a reasonable person would believe the publication of any arrest implies guilt.  This unreasonable view is further supported by Plaintiff's claim that even if a disclaimer of the presumption of innocence accompanied the publication, it would be insufficient to absolve

Defendants. Plaintiff does not want the fact of her arrest publicized.  Her desires do not equate to violations of federal or state law.

As discussed, based on current case law, posting the mugshot and information on the website has been deemed constitutional.  Defendants could not have been on notice of any wrong action when case law dictates their actions were permissible.

### ii.    Slander and Defamation

Plaintiff's claims that the publication of the mugshot and information was defamatory are not rooted in the law but rather in her personal feelings about her arrest becoming public knowledge.  She goes so far as to allege that Defendants published a "false statement about Levitch with defamatory words and/or meaning…" (Doc. 43, ¶72).  However, nothing published was false.

A private person suing for defamation must prove a defendant (1) published a false and defamatory statement concerning the person, (2) knew the statement was false and defamed the other, and (3) acted in reckless disregard of these matters or negligently failed to ascertain them. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977) (citing Restatement (Second) of Torts § 580B (1975)); *Reynolds v. Reynolds*, 231 Ariz. 313, 317, ¶ 8, 294 P.3d 151, 155 (App. 2013) (quoting *Dube v. Likins*, 216 Ariz. 406, 417, ¶ 35, 167 P.3d 93, 104 (App. 2007)).  The "publication must reasonably appear to state or imply assertions of material fact that are provably false." *Yetman v. English*, 168 Ariz. 71, 76, 811 P.2d 323, 328 (1991).

Plaintiff fails to establish that the information published was false and this is fatal to her claim.  She alleges that they are defamatory because people viewing the information

may think she is guilty when she is not.  Defendants published factual information – Plaintiff was in fact arrested for criminal damage, which Plaintiff does not deny.  (Doc. 43, ¶ 19). Defendants are not responsible for the thoughts or beliefs of those who view the factual information.

Nothing contained in the posting was false or makes any assertion or implication regarding her guilt.  But even if it did, which Defendants do not concede that it does, "a statement is not actionable when the speaker expresses a subjective view, interpretation, a theory, conjecture or surmise." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990).  Because the statement at issue in this case is objectively true – Plaintiff was arrested and booked into Fourth Avenue Jail and her mugshot was taken incident to that booking – Plaintiff's defamation claim fails.  Further, if Plaintiff's claim somehow succeeded, Plaintiff would not be entitled to punitive damages as she is required to prove actual malice and to do so, she must show that Defendants knew the statement was false or acted with reckless disregard for its truthfulness.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Again, because the statement was not false, Plaintiff cannot prove actual malice.

Despite Plaintiff's desire that evidence of her arrest not be made public and the fact that the posting contained true and publicly available information, such reporting by law enforcement is protected by the First Amendment as it is a matter of public concern. *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 517 (2005) ("When speech is about a matter of public concern, state tort law alone cannot place the speech outside the protection of the First Amendment.").

### iii.    Infliction of Emotional Distress – Negligent, Reckless, and Intentional

In order to establish a claim of Intentional Infliction of Emotional Distress ("IIED"), Plaintiff must show that Defendants engaged in "extreme and outrageous conduct; that he or she "either intend[ed] to cause emotional distress or recklessly disregard[ed] the near certainty that such distress will result from [the] conduct; and that severe emotional distress…indeed occur[red].   *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666 668 (App. 1969) (citation omitted), *overruled on other grounds by Godbehere*, 162 Ariz. 335, 783 P.2d 781. Such conduct "must completely violate human dignity" and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Pankratz v. Willis*, 155 Ariz. 8, 15, 744 P.2d 1182, 1189 (App. 1987) (citation omitted).   It does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Duhammel v. Star*, 133 Ariz. 558, 561, 653 P.2d 15, 18 (App. 1982) (citation omitted), *overruled on other grounds by Godbehere*, 1662 Ariz. 335, 783 P.2d 781. "The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief; however, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury." *Johnson v. McDonald*, 197 Ariz. 155, 160, ¶ 23, 3 P.3d 1075, 1080 (App. 1999).

Defendants conduct amounts to its publication of a public record.   However

personally offensive this perceived indignity may have been to Plaintiff; it is neither extreme nor outrageous as contemplated by applicable case law.  It is exercising a function which Defendants were authorized to exercise.  It does not go "beyond the bounds of decency" nor does it "completely violate human dignity."  As such, Defendants could not have intended or recklessly disregarded that such harm would result from the publishing of a public record.

For a claim of Negligent Infliction of Emotional Distress ("NIED"), Plaintiff must establish that, "the defendant was negligent; 2) the defendant's negligence created an unreasonable risk of bodily harm to plaintiff; 3) the defendant's negligence was a cause of emotional distress to the plaintiff; 4) the plaintiff's emotional distress resulted in physical injury or illness." *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1020 (D. Ariz. 2011).

To prove that Defendants were negligent, Plaintiff must prove they owed her a duty, breached that duty, were the cause of her damages, and that damages occurred.  Plaintiff does not establish that Defendants owed her a duty to not publish what is deemed a public concern and a public record.  Plaintiff apparently claims that Defendants owed her a duty to not imply guilt.  However, has discussed throughout the instant Motion, Defendants made no such implication.  Defendants did not owe a duty to restrict access to the fact of her arrest, which is what Plaintiff ultimately desires.  The fact that Plaintiff was arrested and her accompanying mugshot are a matter of public record under Arizona law.  Such disclosure was made in line with its statutory obligations.

Because Plaintiff does not and cannot establish that Defendants owed her a duty, Plaintiff's claim for NIED is automatically defeated.  However, assuming arguendo a duty

is found, Plaintiff does not sufficiently claim or establish that Defendants' supposed negligence created an unreasonable risk of physical harm.  It is Plaintiff's expectations that are unreasonable, not Defendants' actions.

Because Plaintiff cannot establish a claim for IIED or NIED, her claims should be dismissed.

### iv.   Arizona Mugshot Operator Act Does Not Apply.

Plaintiff alleges that Defendants violated the Arizona Mugshot Operator Act ("the Act"), A.R.S. 44-7901, et. seq. This Act does not apply to the case at hand.  The Act states that if a "mugshot website operator publishes a subject individual's criminal justice record for a commercial purpose on a publicly accessible website is deemed to be transacting business in this state." A.R.S. 44-7902(a).  Plaintiff has not established that Defendants posted her mugshot and information for any commercial purpose.  What Plaintiff has provided as her purported evidence is a screenshot showing that the MCSO website had a search box on it that allowed *the internet* to be searched.  Any searches conducted from that box were not powered by or endorsed by Defendants.  Any ads that populated from searches initiated from that box are ads on the search returns on the internet, not on MCSO's website itself.  Defendants did not control that search function or its results.  Defendants did not have a contract with Google nor did it earn funds or income of any kind from any ads.  In fact, Defendants were unaware of that internet search function on its website until the filing of Plaintiff's FAC and subsequent pleadings.  Upon being informed of that function, MCSO immediately contacted its vendor and had that functionality removed.  Plaintiff has been

informed that Defendants did not receive any income or pecuniary gain from any ads as the ads were not placed or agreed upon by Defendants.

### D. SHERIFF PENZONE IS ENTITLED TO QUALIFIED IMMUNTIY

Defendant Penzone is entitled to qualified immunity in his personal capacity. Qualified immunity examines: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation. *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016).  The law on qualified immunity is clear; the doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). A constitutional right is "clearly established" only if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508 (2002).  Clearly established law is not defined at a high level of generality, *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2084 (2011), and while courts do not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,* 563 U.S. 741. This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id.,* at ——, 131 S.Ct., at 2085.

It is Plaintiff's burden to prove "that the right allegedly violated was clearly established' at the time of the alleged violation. *Tarabochia v. Adkins*, 766 F.3d 1115, 1125

(9 Cir. 2014) (quoting *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991)) Here, Plaintiff has failed to identify *any* existing precedent in *any* circuit or the Supreme Court where a court identified that a mugshot that constitutes a public record cannot be published pursuant to an arrest and booking.  Plaintiff cites to out-of-circuit cases as persuasive authority;  however,  as  discussed  *infra*,  those  cases  are  factually  and  critically distinguishable here.  Stated otherwise, Plaintiff has failed to identify any case law that establishes  that  Defendant  Penzone  violated  a  pretrial  detainee's  clearly  established constitutional right against publishing her mugshot photo alerting the public of her arrest.

No constitutional right was violated.  Applicable case law establishes that such publication is not unconstitutional.  Therefore, Defendant Penzone is entitled to qualified immunity based on the first prong alone.  However, looking even further, Plaintiff's right, were one to exist, was not clearly established such that it put Defendant Penzone on notice that his conduct would be in violation of that right.  In fact, the opposite is true.  Because of established case law, Defendant Penzone reasonably believed that his conduct was within the bounds of permissible action. *See Maryland v. King*, 133 S.Ct. 1958, 1975 (2013), *Paul v. Davis*, 424 U.S. 693, 712-14 (1976), *Jamali v. Maricopa County*, 2013 WL 5705422 (2013).

When no precedent exists that would have made it clear that Defendant Penzone was violating the constitution, he is entitled to qualified immunity.  *See e.g., Taylor v. Barkes, 135 S. Ct. 2042, 2045, (2015)* ("In short, even if the Institution's suicide screening and prevention measures contained the shortcomings that respondents allege, no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing

a system that violated the Constitution.  Because, at the very least, petitioners were not contravening clearly established law, they are entitled to qualified immunity.").

Because no constitutional right was violated and no right was clearly established at the time of the violation, Defendant Penzone is entitled to qualified immunity.

### E.  CONCLUSION

Defendants did not violate Plaintiff's constitutional or state law rights.  Plaintiff does not have a privacy interest in any of the public information that was disseminated to the public.  The contours of the established law permit Defendants' actions and as such, Plaintiff's SAC should be dismissed in its entirety with prejudice.

**RESPECTFULLY SUBMITTED** this 18th day of October, 2022.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: */s/Courtney R. Glynn*
    COURTNEY R. GLYNN
    MAXINE S. MAK
    Deputy County Attorneys
    *Attorneys for Defendants Maricopa County*
    *and Maricopa County Sheriff Paul Penzone*

### CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Douglas L. Rayes
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 626
401 West Washington Street, SPC 79
Phoenix, AZ 85003-2161
…
…

24

Honorable John Z. Boyle
Magistrate Judge
Sandra Day O'Connor U.S. Courthouse, Ste. 322
401 West Washington Street, SPC 75
Phoenix, AZ 85003-2160

Daniel L. Kloberdanz
Kozub Kloberdanz
7537 East McDonald Drive
Scottsdale, AZ 85250
*Attorney for Plaintiff*

/s/ S. R.
S:\CIVIL\CIV\Matters\CJ\2021\Levitch v. MC 2021-0400\Pleadings\Drafts\Defs MTD SAC.docx

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY:   COURTNEY R. GLYNN (023155)
      MAXINE S. MAK (031158)
      Deputy County Attorneys
      glynnc@mcao.maricopa.gov
      makm@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
MCAO Firm No. 00032000

*Attorneys for Defendants Maricopa County,*
*and Maricopa County Sheriff Paul Penzone*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Levitch, a single woman<br><br>Plaintiff,<br><br>vs.<br><br>Maricopa County, Arizona; Paul Penzone, Sheriff of Maricopa County, Arizona,<br><br>Defendants. | NO. CV21-01418-PHX-DLR (JZB)<br><br>**DEFENDANTS MARICOPA COUNTY AND MARICOPA COUNTY SHERIFF PAUL PENZONE'S LOCAL RULE 12.1(C) CERTIFICATE** |

Pursuant to Federal Rule of Civil Procedure 12(c) and Local Rule 12.1(c), undersigned counsel certifies that prior to the filing of Defendants' Motion to Dismiss, Defendants' counsel has consulted with Plaintiff's counsel to discuss the issues underlying the Motion. Consultation took place on September 28, 2022, in response to Plaintiff's

1

Second Amended Complaint (Doc. 43) Defendants' counsel and Plaintiff's counsel discussed the issues in good faith and at length, but the parties were unable to agree that Plaintiff's Second Amended Complaint was curable by amendment.

RESPECTFULLY SUBMITTED this 18th day of October, 2022.

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: */s/Courtney R. Glynn*
COURTNEY R. GLYNN
MAXINE S. MAK
Deputy County Attorneys
*Attorneys for Defendants Maricopa County*
*and Maricopa County Sheriff Paul Penzone*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Douglas L. Rayes
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 626
401 West Washington Street, SPC 79
Phoenix, AZ 85003-2161

Honorable John Z. Boyle
Magistrate Judge
Sandra Day O'Connor U.S. Courthouse, Ste. 322
401 West Washington Street, SPC 75
Phoenix, AZ 85003-2160

Daniel L. Kloberdanz
Kozub Kloberdanz
7537 East McDonald Drive
Scottsdale, AZ 85250
*Attorneys for Plaintiff*

/s/ *S.R.*